# EXHIBIT A



# EXHIBIT B



# EXHIBIT C

DocuSign Envelope ID: 7956DB8E-B213-4A73-BF67-C1499B7471EE

## MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 6.1



1. **1. THE PARTIES:** Buyer and Seller are hereinafter referred to as the "Parties".
2. Buyer Name(s) *[please print]* Randall Ewing          Yasmany Gomez
3. Seller Name(s) *[please print]* 1645 W Farragut, LLC
4. If Dual Agency Applies, Complete Optional Paragraph 31.

5. **2. THE REAL ESTATE:** Real Estate shall be defined as the property, all improvements, the fixtures and Personal
6. Property included therein. Seller agrees to convey to Buyer or to Buyer's designated grantee, the Real Estate
7. with approximate lot size or acreage of ___29X125_____ commonly known as:
8. 1645 W Farragut Ave , Chicago, Illinois 60640
9. Address                                     City                        State                        Zip
10. ___COOK_____                                     14072300040000
11. County                          Unit # (if applicable)               Permanent Index Number(s) of Real Estate
12. If Condo/Coop/Townhome Parking is included: # of spaces(s) _____; identified as Space(s) # _____;
13. *[check type]* ☐ deeded space, PIN: _____ ☐ limited common element ☐ assigned space.

14. **3. PURCHASE PRICE:** The Purchase Price shall be $ __1,175,000_____. After the payment of
15. Earnest Money as provided below, the balance of the Purchase Price, as adjusted by prorations, shall be paid at
16. Closing in "Good Funds" as defined by law.

17. **4. EARNEST MONEY:** Earnest Money shall be held in trust for the mutual benefit of the Parties by *[check one]:*
18. ☒ Seller's Brokerage; ☐ Buyer's Brokerage; ☐ As otherwise agreed by the Parties, as "Escrowee".
19. Initial Earnest Money of $ __5000_____ shall be tendered to Escrowee on or before _2 buis_ day(s) after Date
20. of Acceptance. Additional Earnest Money of $ __35000_____ shall be tendered by _2 buis days after A/I_ 20 ___.

21. **5. FIXTURES AND PERSONAL PROPERTY AT NO ADDITIONAL COST:** All of the fixtures and included Personal
22. Property are owned by Seller and to Seller's knowledge are in operating condition on the Date of Acceptance,
23. unless otherwise stated herein. Seller agrees to transfer to Buyer all fixtures, all heating, electrical, plumbing,
24. and well systems together with the following items of Personal Property at no additional cost by Bill of Sale at
25. Closing *[Check or enumerate applicable items]:*

| | | | |
|---|---|---|---|
| ☒ Refrigerator | ☒ Central Air Conditioning | ☒ Central Humidifier | ☒ Light Fixtures, as they exist *ℓℓ* |
| ☒ Oven/Range/Stove | ☐ Window Air Conditioner(s) | ☐ Water Softener (owned) | ☒ Built-in or attached shelving |
| ☒ Microwave | ☒ Ceiling Fan(s) *ℓℓ* | ☐ Sump Pump(s) | ☒ All Window Treatments & Hardware |
| ☒ Dishwasher | ☐ Intercom System | ☐ Electronic or Media Air Filter(s) | ☒ Existing Storms and Screens |
| ☐ Garbage Disposal | ☐ Backup Generator System | ☐ Central Vac & Equipment | ☐ Fireplace Screens/Doors/Grates |
| ☐ Trash Compactor | ☐ Satellite Dish | ☐ Security System(s) (owned) | ☐ Fireplace Gas Log(s) |
| ☒ Washer | ☐ Outdoor Shed | ☒ Garage Door Opener(s) | ☐ Invisible Fence System, Collar & Box |
| ☒ Dryer | ☒ Planted Vegetation | x with all Transmitters | ☒ Smoke Detectors |
| ☐ Attached Gas Grill | ☐ Outdoor Play Set(s) | ☒ All Tacked Down Carpeting | ☒ Carbon Monoxide Detectors |

35. Other Items Included at No Additional Cost: _____
36. _____
37. Items Not Included: _____
38. _____

39. Seller warrants to Buyer that all fixtures, systems and Personal Property included in this Contract shall be in
40. operating condition at Possession except: _____
41. A system or item shall be deemed to be in operating condition if it performs the function for which it is
42. intended, regardless of age, and does not constitute a threat to health or safety.
43. If Home Warranty will be provided, complete Optional Paragraph 34.

Buyer Initial _RPE_  Buyer Initial _4G_                    Seller Initial _ℓℓ_  Seller Initial _____
Address: 1645 W Farragut Ave , Chicago, Illinois 60640
Page 1 of 13                                                                          v6.1

DocuSign Envelope ID: 7056DB8E-B213-4A73-BF67-C1499B7471EE

44    6. **CLOSING:** Closing shall be on _October 3_____, 20 _16_ or at such time as mutually agreed by the
45    Parties in writing. Closing shall take place at the escrow office of the title company (or its issuing agent) that will
46    issue the Owner's Policy of Title Insurance, situated nearest the Real Estate or as shall be agreed mutually by the Parties.

47    7. **POSSESSION:** Unless otherwise provided in Paragraph 40, Seller shall deliver possession to Buyer at Closing.
48    Possession shall be deemed to have been delivered when Seller has vacated the Real Estate and delivered keys
49    to the Real Estate to Buyer or to the office of the Seller's Brokerage.

50    8. **MORTGAGE CONTINGENCY:** If this transaction is NOT CONTINGENT ON FINANCING, Optional Paragraph 36 a) OR
51    Paragraph 36 b) MUST BE USED. If any portion of Paragraph 36 is used, the provisions of this Paragraph 8 are NOT APPLICABLE.
52    This Contract is contingent upon Buyer obtaining a [check one] [X] fixed; ☐ adjustable; [check one] [X] conventional;
53    ☐ FHA/VA (if FHA/VA is chosen, complete Paragraph 37); ☑ other _____JUMBO_____ loan for _80_ %
54    of the Purchase Price, plus private mortgage insurance (PMI), if required, with an interest rate (initial rate if an
55    adjustable rate mortgage used) not to exceed _4.5_ % per annum, amortized over not less than _30_ years.
56    Buyer shall pay loan origination fee and/or discount points not to exceed _0_ % of the loan amount. Buyer
57    shall pay usual and customary processing fees and closing costs charged by lender. (Complete Paragraph 35 if
58    closing cost credits apply).

59    Buyer shall make written loan application within five (5) Business Days after the Date of Acceptance; failure to
60    do so shall constitute an act of Default under this Contract. [Complete both a) and b)]:

61    a) Not later than _August 15_____, 20 _15_ (if no date is inserted, the date shall be twenty-one (21) days after
62       the Date of Acceptance) Buyer shall provide written evidence from Buyer's licensed lending institution
63       confirming that Buyer has provided to such lending institution an "Intent to Proceed" as that term is defined
64       in the rules of the Consumer Financial Protection Bureau and has paid all lender application and appraisal
65       fees. If Buyer is unable to provide such written evidence, Seller shall have the option of declaring this
66       Contract terminated by giving Notice to the other Party not later than two (2) Business Days after the date
67       specified herein or any extension date agreed to by the Parties in writing.

68    b) Not later than _September 15_____, 20 _15_ (if no date is inserted, the date shall be sixty (60) days after
69       the Date of Acceptance) Buyer shall provide written evidence from Buyer's licensed lending institution
70       confirming that Buyer has received a written mortgage commitment for the loan referred to above. If Buyer
71       is unable to provide such written evidence either Buyer or Seller shall have the option of declaring this
72       Contract terminated by giving Notice to the other Party not later than two (2) Business Days after the date
73       specified herein or any extension date agreed to by the Parties in writing.

74    A Party causing delay in the loan approval process shall not have the right to terminate under either of the
75    preceding paragraphs. In the event neither Party elects to declare this Contract terminated as of the latter of
76    the dates specified above (as may be amended from time to time), then this Contract shall continue in full
77    force and effect without any loan contingencies.

78    Unless otherwise provided in Paragraph 32, this Contract shall not be contingent upon the sale and/or
79    closing of Buyer's existing real estate. Buyer shall be deemed to have satisfied the financing conditions of this
80    paragraph if Buyer obtains a loan commitment in accordance with the terms of this paragraph even though the
81    loan is conditioned on the sale and/or closing of Buyer's existing real estate.

82    9. **STATUTORY DISCLOSURES:** If applicable, prior to signing this Contract, Buyer:
83    [check one] ☐ has [X] has not received a completed Illinois Residential Real Property Disclosure;
84    [check one] [X] has ☐ has not received the EPA Pamphlet, "Protect Your Family From Lead In Your Home";
85    [check one] ☐ has [X] has not received a Lead-Based Paint Disclosure;
86    [check one] [X] has ☐ has not received the IEMA, "Radon Testing Guidelines for Real Estate Transactions";

Buyer Initial _RPE_    Buyer Initial _UG_          Seller Initial _____    Seller Initial _____
Address: 1045 W Farragut Ave , Chicago, Illinois 60640                      v6.1

DocuSign Envelope ID: 7050DB0E-B213-4A73-BF67-C1480B7471EE

87     *[check one]*☐ has ☒ has not received the Disclosure of Information on Radon Hazards.

88   **10. PRORATIONS:** Proratable items shall include without limitation, rents and deposits (if any) from tenants;
89   Special Service Area or Special Assessment Area tax for the year of Closing only; utilities, water and sewer; and
90   Homeowner or Condominium Association fees (and Master/Umbrella Association fees, if applicable).
91   Accumulated reserves of a Homeowner/Condominium Association(s) are not a proratable item. Seller
92   represents that as of the Date of Acceptance Homeowner/Condominium Association(s) fees are $ _____
93   per _____ (and, if applicable Master/Umbrella Association fees are $ _____ per _____).
94   Seller agrees to pay prior to or at Closing any special assessments (by any association or governmental entity)
95   confirmed prior to the Date of Acceptance. Special Assessment Area or Special Service Area installments due
96   after the year of Closing shall not be proratable items and shall be paid by Buyer. The general Real Estate taxes
97   shall be prorated as of the date of Closing based on 115 % of the most recent ascertainable full year tax bill. All
98   prorations shall be final as of Closing, except as provided in Paragraph 22. If the amount of the most recent
99   ascertainable full year tax bill reflects a homeowner, senior citizen or other exemption, a senior freeze or senior
100   deferral, then Seller has submitted or will submit in a timely manner all necessary documentation to the
101   appropriate governmental entity, before or after Closing, to preserve said exemption(s). The requirements of
102   this Paragraph shall survive the Closing.

103   **11. ATTORNEY REVIEW:** Within five (5) Business Days after Date of Acceptance, the attorneys for the respective
104   Parties, by Notice, may:
105   a)  Approve this Contract; or
106   b)  Disapprove this Contract, which disapproval shall not be based solely upon the Purchase Price; or
107   c)  Propose modifications except for the Purchase Price. If within ten (10) Business Days after the Date of
108       Acceptance written agreement is not reached by the Parties with respect to resolution of the proposed
109       modifications, then either Party may terminate this Contract by serving Notice, whereupon this Contract
110       shall be null and void; or
111   d)  Propose suggested changes to this Contract. If such suggestions are not agreed upon, neither Party may
112       declare this Contract null and void and this Contract shall remain in full force and effect.

113   Unless otherwise specified, all Notices shall be deemed made pursuant to Paragraph 11 c). If Notice is not
114   served within the time specified herein, the provisions of this paragraph shall be deemed waived by the
115   Parties and this Contract shall remain in full force and effect.

116   **12. PROFESSIONAL INSPECTIONS AND INSPECTION NOTICES:** Buyer may conduct at Buyer's expense (unless
117   otherwise provided by governmental regulations) any or all of the following inspections of the Real Estate by
118   one or more licensed or certified inspection services: home, radon, environmental, lead-based paint, lead-based
119   paint hazards or wood-destroying insect infestation.
120   a)  Buyer agrees that minor repairs and routine maintenance items of the Real Estate do not constitute defects
121       and are not a part of this contingency. The fact that a functioning major component may be at the end of
122       its useful life shall not render such component defective for purposes of this paragraph. Buyer shall
123       indemnify Seller and hold Seller harmless from and against any loss or damage caused by the acts of
124       negligence of Buyer or any person performing any inspection. The home inspection shall cover only the
125       major components of the Real Estate, including but not limited to central heating system(s), central cooling
126       system(s), plumbing and well system, electrical system, roof, walls, windows, doors, ceilings, floors,
127       appliances and foundation. A major component shall be deemed to be in operating condition if it performs
128       the function for which it is intended, regardless of age, and does not constitute a threat to health or safety. If
129       radon mitigation is performed, Seller shall pay for any retest.

Buyer Initial [RPE] Buyer Initial [46]          Seller Initial [EL] Seller Initial _____
Address: 1665 W Farragut Ave , Chicago, Illinois 60640
Page 3 of 13                                                 v6.1

DocuSign Envelope ID: 7956DB8E-B213-4A73-BF67-C1499B7471EE

130 b) Buyer shall serve Notice upon Seller or Seller's attorney of any defects disclosed by any inspection for which
131 Buyer requests resolution by Seller, together with a copy of the pertinent pages of the inspection reports
132 within five (5) Business Days (ten (10) calendar days for a lead-based paint or lead-based paint hazard
133 inspection) after the Date of Acceptance. If within ten (10) Business Days after the Date of Acceptance
134 written agreement is not reached by the Parties with respect to resolution of all inspection issues, then either
135 Party may terminate this Contract by serving Notice to the other Party, whereupon this Contract shall be
136 null and void.

137 c) Notwithstanding anything to the contrary set forth above in this paragraph, in the event the inspection
138 reveals that the condition of the Real Estate is unacceptable to Buyer and Buyer serves Notice to Seller
139 within five (5) Business Days after the Date of Acceptance, this Contract shall be null and void. Said Notice
140 shall not include any portion of the inspection reports unless requested by Seller.

141 d) Failure of Buyer to conduct said inspection(s) and notify Seller within the time specified operates as a
142 waiver of Buyer's rights to terminate this Contract under this Paragraph 12 and this Contract shall remain
143 in full force and effect.

144 **13. HOMEOWNER INSURANCE:** This Contract is contingent upon Buyer obtaining evidence of insurability for an
145 Insurance Service Organization HO-3 or equivalent policy at standard premium rates within ten (10) Business
146 Days after the Date of Acceptance. If Buyer is unable to obtain evidence of insurability and serves Notice
147 with proof of same to Seller within time specified, this Contract shall be null and void. If Notice is not
148 served within the time specified, Buyer shall be deemed to have waived this contingency and this Contract
149 shall remain in full force and effect.

150 **14. FLOOD INSURANCE:** Buyer shall have the option to declare this Contract null and void if the Real Estate is
151 located in a special flood hazard area. If Notice of the option to declare contract null and void is not given to
152 Seller within ten (10) Business Days after the Date of Acceptance or by the time specified in Paragraph 8 b),
153 whichever is later, Buyer shall be deemed to have waived such option and this Contract shall remain in full
154 force and effect. Nothing herein shall be deemed to affect any rights afforded by the Residential Real Property
155 Disclosure Act.

156 **15. CONDOMINIUM/COMMON INTEREST ASSOCIATIONS:** (If applicable) The Parties agree that the terms
157 contained in this paragraph, which may be contrary to other terms of this Contract, shall supersede any
158 conflicting terms.

159 a) Title when conveyed shall be good and merchantable, subject to terms, provisions, covenants and conditions
160 of the Declaration of Condominium/Covenants, Conditions and Restrictions ("Declaration/CCRs") and all
161 amendments; public and utility easements including any easements established by or implied from the
162 Declaration/CCRs or amendments thereto; party wall rights and agreements; limitations and conditions
163 imposed by the Condominium Property Act; installments due after the date of Closing of general
164 assessments established pursuant to the Declaration/CCRs.

165 b) Seller shall be responsible for payment of all regular assessments due and levied prior to Closing and for all
166 special assessments confirmed prior to the Date of Acceptance.

167 c) Seller shall notify Buyer of any proposed special assessment or increase in any regular assessment between
168 the Date of Acceptance and Closing. The Parties shall have three (3) Business Days to reach agreement
169 relative to payment thereof. Absent such agreement either Party may declare the Contract null and void.

170 d) Seller shall, within five (5) Business Days from the Date of Acceptance, apply for those items of disclosure
171 upon sale as described in the Illinois Condominium Property Act, and provide same in a timely manner, but
172 no later than the time period provided for by law. This Contract is subject to the condition that Seller be able

*Buyer Initial* RPF *Buyer Initial* UG   *Seller Initial* GL *Seller Initial* _____
*Address:* 1645 W Farragut Ave , Chicago, Illinois 60640                                    *v6.1*
*Page 4 of 13*

DocuSign Envelope ID: 7956DD6E-B213-4A73-BF57-C1499B7471EE

173    to procure and provide to Buyer a release or waiver of any right of first refusal or other pre-emptive rights to
174    purchase created by the Declaration/CCRs. In the event the Condominium Association requires the personal
175    appearance of Buyer or additional documentation, Buyer agrees to comply with same.

176  e) In the event the documents and information provided by Seller to Buyer disclose that the existing
177    improvements are in violation of existing rules, regulations or other restrictions or that the terms and
178    conditions contained within the documents would unreasonably restrict Buyer's use of the premises or
179    would result in financial obligations unacceptable to Buyer in connection with owning the Real Estate, then
180    Buyer may declare this Contract null and void by giving Seller Notice within five (5) Business Days after the
181    receipt of the documents and information required by this Paragraph, listing those deficiencies which are
182    unacceptable to Buyer. If Notice is not served within the time specified, Buyer shall be deemed to have
183    waived this contingency, and this Contract shall remain in full force and effect.

184  f) Seller shall not be obligated to provide a condominium survey.

185  g) Seller shall provide a certificate of insurance showing Buyer and Buyer's mortgagee, if any, as an insured.

186  **16. THE DEED:** Seller shall convey or cause to be conveyed to Buyer or Buyer's Designated grantee good and
187  merchantable title to the Real Estate by recordable Warranty Deed, with release of homestead rights, (or the
188  appropriate deed if title is in trust or in an estate), and with real estate transfer stamps to be paid by Seller
189  (unless otherwise designated by local ordinance). Title when conveyed will be good and merchantable, subject
190  only to: covenants, conditions and restrictions of record and building lines and easements, if any, provided they
191  do not interfere with the current use and enjoyment of the Real Estate; and general real estate taxes not due and
192  payable at the time of Closing.

193  **17. MUNICIPAL ORDINANCE, TRANSFER TAX, AND GOVERNMENTAL COMPLIANCE:**

194  a) The Parties are cautioned that the Real Estate may be situated in a municipality that has adopted a pre-
195  closing inspection requirement, municipal Transfer Tax or other similar ordinances. Transfer taxes required
196  by municipal ordinance shall be paid by the Party designated in such ordinance.

197  b) The Parties agree to comply with the reporting requirements of the applicable sections of the Internal
198  Revenue Code and the Real Estate Settlement Procedures Act of 1974, as amended.

199  **18. TITLE:** At Seller's expense, Seller will deliver or cause to be delivered to Buyer or Buyer's attorney within
200  customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a title
201  commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended coverage by
202  a title company licensed to operate in the State of Illinois, issued on or subsequent to the Date of Acceptance,
203  subject only to items listed in Paragraph 16. The requirement to provide extended coverage shall not apply if the
204  Real Estate is vacant land. The commitment for title insurance furnished by Seller will be presumptive evidence
205  of good and merchantable title as therein shown, subject only to the exceptions therein stated. If the title
206  commitment discloses any unpermitted exceptions or if the Plat of Survey shows any encroachments or other
207  survey matters that are not acceptable to Buyer, then Seller shall have said exceptions, survey matters or
208  encroachments removed, or have the title insurer commit to either insure against loss or damage that may
209  result from such exceptions or survey matters or insure against any court-ordered removal of the
210  encroachments. If Seller fails to have such exceptions waived or insured over prior to Closing, Buyer may elect
211  to take title as it then is with the right to deduct from the Purchase Price prior encumbrances of a definite or
212  ascertainable amount. Seller shall furnish Buyer at Closing an Affidavit of Title covering the date of Closing, and
213  shall sign any other customary forms required for issuance of an ALTA Insurance Policy.

214  **19. PLAT OF SURVEY:** Not less than one (1) Business Day prior to Closing, except where the Real Estate is a
215  condominium (see Paragraph 15) Seller shall, at Seller's expense, furnish to Buyer or Buyer's attorney a Plat of

*Buyer Initial* [RPE] *Buyer Initial* [UG]          *Seller Initial* _____ *Seller Initial* _____
*Address:* 1645 W Farragut Ave , Chicago, Illinois 60640                             *v6.1*
*Page 5 of 13*

DocuSign Envelope ID: 7960DB8E-B213-4A73-BF57-C1409B7471EE

216  Survey that conforms to the current Minimum Standard of Practice for boundary surveys, is dated not more
217  than six (6) months prior to the date of Closing, and is prepared by a professional land surveyor licensed to
218  practice land surveying under the laws of the State of Illinois. The Plat of Survey shall show visible evidence of
219  improvements, rights-of-way, easements, use and measurements of all parcel lines. The land surveyor shall set
220  monuments or witness corners at all accessible corners of the land. All such corners shall also be visibly staked
221  or flagged. The Plat of Survey shall include the following statement placed near the professional land surveyor's
222  seal and signature: "This professional service conforms to the current Illinois Minimum Standards for a
223  boundary survey." A Mortgage Inspection, as defined, is not a boundary survey and is not acceptable.

224  **20. DAMAGE TO REAL ESTATE OR CONDEMNATION PRIOR TO CLOSING:** If prior to delivery of the deed the
225  Real Estate shall be destroyed or materially damaged by fire or other casualty, or the Real Estate is taken by
226  condemnation, then Buyer shall have the option of either terminating this Contract (and receiving a refund of
227  earnest money) or accepting the Real Estate as damaged or destroyed, together with the proceeds of the
228  condemnation award or any insurance payable as a result of the destruction or damage, which gross proceeds
229  Seller agrees to assign to Buyer and deliver to Buyer at Closing. Seller shall not be obligated to repair or replace
230  damaged improvements. The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois
231  shall be applicable to this Contract, except as modified by this paragraph.

232  **21. CONDITION OF REAL ESTATE AND INSPECTION:** Seller agrees to leave the Real Estate in broom clean
233  condition. All refuse and personal property that is not to be conveyed to Buyer shall be removed from the Real
234  Estate at Seller's expense prior to delivery of Possession. Buyer shall have the right to inspect the Real Estate,
235  fixtures and included Personal Property prior to Possession to verify that the Real Estate, improvements and
236  included Personal Property are in substantially the same condition as of the Date of Acceptance, normal wear
237  and tear excepted.

238  **22. REAL ESTATE TAX ESCROW:** In the event the Real Estate is improved, but has not been previously taxed for
239  the entire year as currently improved, the sum of three percent (3%) of the Purchase Price shall be deposited in
240  escrow with the title company with the cost of the escrow to be divided equally by Buyer and Seller and paid at
241  Closing. When the exact amount of the taxes to be prorated under this Contract can be ascertained, the taxes
242  shall be prorated by Seller's attorney at the request of either Party and Seller's share of such tax liability after
243  proration shall be paid to Buyer from the escrow funds and the balance, if any, shall be paid to Seller. If Seller's
244  obligation after such proration exceeds the amount of the escrow funds, Seller agrees to pay such excess
245  promptly upon demand.

246  **23. SELLER REPRESENTATIONS:** Seller's representations contained in this paragraph shall survive the Closing.
247  Seller represents that with respect to the Real Estate Seller has no knowledge of nor has Seller received any
248  written notice from any association or governmental entity regarding:
249  a) zoning, building, fire or health code violations that have not been corrected;
250  b) any pending rezoning;
251  c) boundary line disputes;
252  d) any pending condemnation or Eminent Domain proceeding;
253  e) easements or claims of easements not shown on the public records;
254  f) any hazardous waste on the Real Estate;
255  g) any improvements to the Real Estate for which the required initial and final permits were not obtained;
256  h) any improvements to the Real Estate which are not included in full in the determination of the most recent tax assessment; or
257  i) any improvements to the Real Estate which are eligible for the home improvement tax exemption.
258  Seller further represents that:

Buyer Initial: RPE   Buyer Initial UG      Seller Initial U   Seller Initial _____
Address: 1645 W Farragut Ave , Chicago, Illinois 60640        v6.1
Page 6 of 13

DocuSign Envelope ID: 7966DB9E-B213-4A73-BF57-C1499B7471EE

259   There [check one] ☐ is ☒ is not a pending or unconfirmed special assessment
260   affecting the Real Estate by any association or governmental entity payable by Buyer after the date of Closing.
261   The Real Estate [check one] ☐ is ☒ is not located within a Special Assessment Area or
262   Special Service Area, payments for which will not be the obligation of Seller after the year in which the Closing occurs.
263   All Seller representations shall be deemed re-made as of Closing. If prior to Closing Seller becomes aware of
264   matters that require modification of the representations previously made in this Paragraph 23, Seller shall
265   promptly notify Buyer. If the matters specified in such Notice are not resolved prior to Closing, Buyer may
266   terminate this Contract by Notice to Seller and this Contract shall be null and void.

267   **24. BUSINESS DAYS/HOURS:** Business Days are defined as Monday through Friday, excluding Federal
268   holidays. Business Hours are defined as 8:00 A.M. to 6:00 P.M. Chicago time.

269   **25. FACSIMILE OR DIGITAL SIGNATURES:** Facsimile or digital signatures shall be sufficient for purposes of
270   executing, negotiating, and finalizing this Contract, and delivery thereof by one of the following methods shall
271   be deemed delivery of this Contract containing original signature(s). An acceptable facsimile signature may be
272   produced by scanning an original, hand-signed document and transmitting same by facsimile. An acceptable
273   digital signature may be produced by use of a qualified, established electronic security procedure mutually
274   agreed upon by the Parties. Transmissions of a digitally signed copy hereof shall be by an established, mutually
275   acceptable electronic method, such as creating a PDF ("Portable Document Format") document incorporating
276   the digital signature and sending same by electronic mail.

277   **26. DIRECTION TO ESCROWEE:** In every instance where this Contract shall be deemed null and void or if this
278   Contract may be terminated by either Party, the following shall be deemed incorporated: "and Earnest Money
279   refunded upon the joint written direction by the Parties to Escrowee or upon an entry of an order by a court of
280   competent jurisdiction."
281   In the event either Party has declared the Contract null and void or the transaction has failed to close as
282   provided for in this Contract and if Escrowee has not received joint written direction by the Parties or such court
283   order, the Escrowee may elect to proceed as follows:
284   a)  Escrowee shall give written Notice to the Parties as provided for in this Contract at least fourteen (14) days
285      prior to the date of intended disbursement of Earnest Money indicating the manner in which Escrowee
286      intends to disburse in the absence of any written objection. If no written objection is received by the date
287      indicated in the Notice then Escrowee shall distribute the Earnest Money as indicated in the written Notice
288      to the Parties. If any Party objects in writing to the intended disbursement of Earnest Money then Earnest
289      Money shall be held until receipt of joint written direction from all Parties or until receipt of an order of a
290      court of competent jurisdiction.
291   b)  Escrowee may file a Suit for Interpleader and deposit any funds held into the Court for distribution after
292      resolution of the dispute between Seller and Buyer by the Court. Escrowee may retain from the funds
293      deposited with the Court the amount necessary to reimburse Escrowee for court costs and reasonable
294      attorney's fees incurred due to the filing of the Interpleader. If the amount held in escrow is inadequate to
295      reimburse Escrowee for the costs and attorney's fees, Buyer and Seller shall jointly and severally indemnify
296      Escrowee for additional costs and fees incurred in filing the Interpleader action.

297   **27. NOTICE:** Except as provided in Paragraph 32 c) 2) regarding the manner of service for "kick-out" Notices, all
298   Notices shall be in writing and shall be served by one Party or attorney to the other Party or attorney. Notice to
299   any one of the multiple person Party shall be sufficient Notice to all. Notice shall be given in the following manner:
300   a)  By personal delivery; or

Buyer Initial _RPE_ Buyer Initial _46_      Seller Initial _____ Seller Initial _____
Address: 1645 W Farragut Ave , Chicago, Illinois 60640
Page 7 of 13                                 v6.1

DocuSign Envelope ID: 7056DB8E-B213-4A73-BF67-C1499B7471EE

301   b)  By mailing to the addresses recited herein by regular mail and by certified mail, return receipt requested. Except
302       as otherwise provided herein, Notice served by certified mail shall be effective on the date of mailing; or
303   c)  By facsimile transmission. Notice shall be effective as of date and time of the transmission, provided that the
304       Notice transmitted shall be sent on Business Days during Business Hours. In the event Notice is transmitted
305       during non-business hours, the effective date and time of Notice is the first hour of the next Business Day after
306       transmission; or
307   d)  By e-mail transmission if an e-mail address has been furnished by the recipient Party or the recipient Party's
308       attorney to the sending Party or is shown in this Contract. Notice shall be effective as of date and time of e-mail
309       transmission, provided that, in the event e-mail Notice is transmitted during non-business hours, the effective
310       date and time of Notice is the first hour of the next Business Day after transmission. An attorney or Party may
311       opt out of future e-mail Notice by any form of Notice provided by this Contract; or
312   e)  By commercial overnight delivery (e.g., FedEx). Such Notice shall be effective on the next Business Day
313       following deposit with the overnight delivery company.

314   28. PERFORMANCE: Time is of the essence of this Contract. In any action with respect to this Contract, the Parties
315   are free to pursue any legal remedies at law or in equity and the prevailing party in litigation shall be entitled to
316   collect reasonable attorney fees and costs from the non-prevailing party as ordered by a court of competent jurisdiction.

317   29. CHOICE OF LAW AND GOOD FAITH: All terms and provisions of this Contract including but not limited to the
318   Attorney Review and Professional Inspection paragraphs shall be governed by the laws of the State of Illinois and
319   are subject to the covenant of good faith and fair dealing implied in all Illinois contracts.

320   30. OTHER PROVISIONS: This Contract is also subject to those OPTIONAL PROVISIONS initialed by the Parties
321   and the following additional attachments, if any: The house will be finished and construction budgets set according
322   to the level of finishes and amenities at 1651 W. Farragut.  It is understood that buyer can make changes to
      construction plans.  Changes will be charged at cost (net of any savings for work not performed or materials
323   not used) plus 10%.                OPTIONAL PROVISIONS (Applicable ONLY if initialed by all Parties)

324   [initials] _____ 31. CONFIRMATION OF DUAL AGENCY: The Parties confirm that they have previously
325   consented to _____ (Licensee) acting as a Dual Agent in providing
326   brokerage services on their behalf and specifically consent to Licensee acting as a Dual Agent with regard to the
327   transaction referred to in this Contract.

328   _____ 32. SALE OF BUYER'S REAL ESTATE:
329   a)  REPRESENTATIONS ABOUT BUYER'S REAL ESTATE: Buyer represents to Seller as follows:
330       1)  Buyer owns real estate (hereinafter referred to as "Buyer's real estate") with the address of:
331       _____
332   Address                              City                State              Zip
333       2)  Buyer [check one] [ ] has [ ] has not entered into a contract to sell Buyer's real estate.
334           If Buyer has entered into a contract to sell Buyer's real estate, that contract:
335           a)  [check one] [ ] is [ ] is not subject to a mortgage contingency.
336           b)  [check one] [ ] is [ ] is not subject to a real estate sale contingency.
337           c)  [check one] [ ] is [ ] is not subject to a real estate closing contingency.
338       3)  Buyer [check one] [ ] has [ ] has not listed Buyer's real estate for sale with a licensed real estate broker and
339           in a local multiple listing service.
340       4)  If Buyer's real estate is not listed for sale with a licensed real estate broker and in a local multiple listing
341           service, Buyer [check one]:

Buyer Initial [RPE] Buyer Initial [46]            Seller Initial [VC] Seller Initial _____
Address: 1651 W Farragut Ave , Chicago, Illinois 60640

DocuSign Envelope ID: 7050DB6E-B213-4A73-BF67-C1499B7471EE

342     a) ☐ Shall list real estate for sale with a licensed real estate broker who will place it in a local multiple
343     listing service within five (5) Business Days after Date of Acceptance.
344     *[For information only]* Broker: _____
345     Broker's Address: _____ Phone: _____
346     b) ☐ Does not intend to list said real estate for sale.
347 b) **CONTINGENCIES BASED UPON SALE AND/OR CLOSING OF REAL ESTATE:**
348     1) This Contract is contingent upon Buyer having entered into a contract for the sale of Buyer's real estate that
349     is in full force and effect as of _____, 20 _____. Such contract should provide for a closing
350     date not later than the Closing Date set forth in this Contract. If Notice is served on or before the date set
351     forth in this subparagraph that Buyer has not procured a contract for the sale of Buyer's real estate, this
352     Contract shall be null and void. If Notice that Buyer has not procured a contract for the sale of Buyer's
353     real estate is not served on or before the close of business on the date set forth in this subparagraph,
354     Buyer shall be deemed to have waived all contingencies contained in this Paragraph 32, and this
355     Contract shall remain in full force and effect. (If this paragraph is used, then the following paragraph *must*
356     be completed.)
357     2) In the event Buyer has entered into a contract for the sale of Buyer's real estate as set forth in Paragraph 32
358     b) 1) and that contract is in full force and effect, or has entered into a contract for the sale of Buyer's real
359     estate prior to the execution of this Contract, this Contract is contingent upon Buyer closing the sale of
360     Buyer's real estate on or before _____, 20 _____. If Notice that Buyer has not closed the sale
361     of Buyer's real estate is served before the close of business on the next Business Day after the date set
362     forth in the preceding sentence, this Contract shall be null and void. If Notice is not served as described
363     in the preceding sentence, Buyer shall have deemed to have waived all contingencies contained in this
364     Paragraph 32, and this Contract shall remain in full force and effect.
365     3) If the contract for the sale of Buyer's real estate is terminated for any reason after the date set forth in
366     Paragraph 32 b) 1) (or after the date of this Contract if no date is set forth in Paragraph 32 b) 1)), Buyer shall,
367     within three (3) Business Days of such termination, notify Seller of said termination. Unless Buyer, as part
368     of said Notice, waives all contingencies in Paragraph 32 and complies with Paragraph 32 d), this Contract
369     shall be null and void as of the date of Notice. If Notice as required by this subparagraph is not served
370     within the time specified, Buyer shall be in default under the terms of this Contract.
371 c) **SELLER'S RIGHT TO CONTINUE TO OFFER REAL ESTATE FOR SALE:** During the time of this contingency,
372 Seller has the right to continue to show the Real Estate and offer it for sale subject to the following:
373     1) If Seller accepts another bona fide offer to purchase the Real Estate while contingencies expressed in
374     Paragraph 32 b) are in effect, Seller shall notify Buyer in writing of same, Buyer shall then have _____
375     hours after Seller gives such Notice to waive the contingencies set forth in Paragraph 32 b), subject to
376     Paragraph 32 d).
377     2) Seller's Notice to Buyer (commonly referred to as a 'kick-out' Notice) shall be in writing and shall be served
378     on Buyer, not Buyer's attorney or Buyer's real estate agent. Courtesy copies of such 'kick-out' Notice should
379     be sent to Buyer's attorney and Buyer's real estate agent, if known. Failure to provide such courtesy copies
380     shall not render Notice invalid. Notice to any one of a multiple-person Buyer shall be sufficient Notice to all
381     Buyers. Notice for the purpose of this subparagraph only shall be served upon Buyer in the following manner:
382     a) By personal delivery effective at the time and date of personal delivery; or
383     b) By mailing to the address recited herein for Buyer by regular mail and by certified mail. Notice shall be
384     effective at 10:00 A.M. on the morning of the second day following deposit of Notice in the U.S. Mail; or

*Buyer Initial* RPE *Buyer Initial* 4G        *Seller Initial* GL *Seller Initial* _____
*Address:* 1645 W Farragut Ave , Chicago, Illinois 60640
*Page 9 of 13*                                         *v6.1*

DocuSign Envelope ID: 7066DB6E-B213-4A73-9F67-C1499B7471EE



385       c) By commercial delivery overnight (e.g., FedEx). Notice shall be effective upon delivery or at 4:00 P.M,
386          Chicago time on the next delivery day following deposit with the overnight delivery company,
387          whichever first occurs.
388     3) If Buyer complies with the provisions of Paragraph 32 d) then this Contract shall remain in full force and effect.
389     4) If the contingencies set forth in Paragraph 32 b) are NOT waived in writing, within said time period by
390       Buyer, this Contract shall be null and void,
391     5) Except as provided in Paragraph 32 c) 2) above, all Notices shall be made in the manner provided by
392       Paragraph 27 of this Contract.
393     6) Buyer waives any ethical objection to the delivery of Notice under this paragraph by Seller's attorney or
394       representative.
395  d) **WAIVER OF PARAGRAPH 32 CONTINGENCIES:** Buyer shall be deemed to have waived the contingencies in
396    Paragraph 32 b) when Buyer has delivered written waiver and deposited with the Escrowee additional earnest
397    money in the amount of $ _____ in the form of a cashier's or certified check within the time
398    specified. If Buyer fails to deposit the additional earnest money within the time specified, the waiver shall be
399    deemed ineffective and this Contract shall be null and void.
400  e) **BUYER COOPERATION REQUIRED:** Buyer authorizes Seller or Seller's agent to verify representations contained
401    in Paragraph 32 at any time, and Buyer agrees to cooperate in providing relevant information.
402  _____ 33. **CANCELLATION OF PRIOR REAL ESTATE CONTRACT:** In the event either Party has entered
403 into a prior real estate contract, this Contract shall be subject to written cancellation of the prior contract on or before
404 _____, 20____. In the event the prior contract is not cancelled within the time specified, this
405 Contract be null and void. Seller's notice to the purchaser under the prior contract should not be served
406 until after Attorney Review and Professional Inspections provisions of this Contract have expired, been
407 satisfied or waived.
408 _RPE__ _46_ 34. **HOME WARRANTY:** Seller shall provide at no expense to Buyer a Home Warranty at a cost
409 of $ builder's warranty Evidence of a fully pre-paid policy shall be delivered at Closing. _el_
410 _RPE__ _46_ 35. **CREDIT AT CLOSING:** Provided Buyer's lender permits such credit to show on the HUD-1
411 Settlement Statement or Closing Disclosure, and if not, such lesser amount as the lender permits, Seller agrees to
412 credit $ 25,000 to Buyer at Closing to be applied to prepaid expenses, closing costs or both.
413 _____ 36. **TRANSACTIONS NOT CONTINGENT ON FINANCING:** IF EITHER OF THE FOLLOWING
414 ALTERNATIVE OPTIONS IS SELECTED, THE PROVISIONS OF THE MORTGAGE CONTINGENCY PARAGRAPH 8
415 SHALL NOT APPLY [CHOOSE ONLY ONE]:
416  a) _____ Transaction With No Mortgage (All Cash): If this selection is made, Buyer will pay at closing,
417    in the form of "Good Funds" the difference (plus or minus prorations) between the Purchase Price and the
418    amount of the Earnest Money deposited pursuant to Paragraph 4 above. Buyer represents to Seller, as of the
419    Date of Offer, that Buyer has sufficient funds available to satisfy the provisions of this paragraph. Buyer agrees
420    to verify the above representation upon the reasonable request of Seller and to authorize the disclosure of such
421    financial information to Seller, Seller's attorney or Seller's broker that may be reasonably necessary to prove the
422    availability of sufficient funds to close. Buyer understands and agrees that, so long as Seller has fully complied
423    with Seller's obligations under this Contract, any act or omission outside of the control of Seller, whether
424    intentional or not; that prevents Buyer from satisfying the balance due from Buyer at closing, shall constitute a
425    material breach of this Contract by Buyer. The Parties shall share the title company escrow closing fee equally.
426    Unless otherwise provided in Paragraph 32, this Contract shall not be contingent upon the sale and/or
427    closing of Buyer's existing real estate.

Buyer Initial __RPE__ Buyer Initial __46__          Seller Initial __el__ Seller Initial _____
Address: 1645 W Farragut Ave , Chicago, Illinois 60640                        v6.1
Page 10 of 13

DocuSign Envelope ID: 7055DB8E-B213-4A73-BF57-C1490B7471EE

428 b) _____ Transaction, Mortgage Allowed: If this selection is made, Buyer will pay at closing, in the
429 form of "Good Funds" the difference (plus or minus prorations) between the Purchase Price and the amount of
430 the Earnest Money deposited pursuant to Paragraph 4 above. Buyer represents to Seller, as of the Date of Offer,
431 that Buyer has sufficient funds available to satisfy the provisions of this paragraph. Buyer agrees to verify the
432 above representation upon the reasonable request of Seller and to authorize the disclosure of such financial
433 information to Seller, Seller's attorney or Seller's broker that may be reasonably necessary to prove the
434 availability of sufficient funds to close. Notwithstanding such representation, Seller agrees to reasonably and
435 promptly cooperate with Buyer so that Buyer may apply for and obtain a mortgage loan or loans including but
436 not limited to providing access to the Real Estate to satisfy Buyer's obligations to pay the balance due (plus or
437 minus prorations) to close this transaction. Such cooperation shall include the performance in a timely manner
438 of all of Seller's pre-closing obligations under this Contract. This Contract shall NOT be contingent upon
439 Buyer obtaining financing. Buyer understands and agrees that, so long as Seller has fully complied with
440 Seller's obligations under this Contract, any act or omission outside of the control of Seller, whether intentional
441 or not, that prevents Buyer from satisfying the balance due from Buyer at Closing shall constitute a material
442 breach of this Contract by Buyer. Buyer shall pay the title company escrow closing fee. Unless otherwise
443 provided in Paragraph 32, this Contract shall not be contingent upon the sale and/or closing of Buyer's
444 existing real estate.

445 _____ 37. VA OR FHA FINANCING: If Buyer is seeking VA or FHA financing, required FHA or VA
446 amendments and disclosures shall be attached to this Contract. If VA, the Funding Fee, or if FHA, the Mortgage
447 Insurance Premium (MIP) shall be paid by Buyer and *(check one)* ☐ shall ☐ shall not be added to the mortgage loan amount.

448 _____ 38. WELL OR SANITARY SYSTEM INSPECTIONS: Seller shall obtain at Seller's expense a well
449 water test stating that the well delivers not less than five (5) gallons of water per minute and including a bacteria
450 and nitrate test and/or a septic report from the applicable County Health Department, a Licensed Environmental
451 Health Practitioner, or a licensed well and septic inspector, each dated not more than ninety (90) days prior to
452 Closing, stating that the well and water supply and the private sanitary system are in operating condition with no
453 defects noted. Seller shall remedy any defect or deficiency disclosed by said report(s) prior to Closing, provided that
454 if the cost of remedying a defect or deficiency and the cost of landscaping together exceed $3,000.00, and if the
455 Parties cannot reach agreement regarding payment of such additional cost, this Contract may be terminated by
456 either Party. Additional testing recommended by the report shall be obtained at the Seller's expense. If the report
457 recommends additional testing after Closing, the Parties shall have the option of establishing an escrow with a
458 mutual cost allocation for necessary repairs or replacements, or either Party may terminate this Contract prior to
459 Closing. Seller shall deliver a copy of such evaluation(s) to Buyer not less than ten (10) Business Days prior to
460 Closing.

461 _____ 39. WOOD DESTROYING INFESTATION: Notwithstanding the provisions of Paragraph 12,
462 within ten (10) Business Days after the Date of Acceptance, Seller at Seller's expense shall deliver to Buyer a written
463 report, dated not more than six (6) months prior to the Date of Closing, by a licensed inspector certified by the
464 appropriate state regulatory authority in the subcategory of termites, stating that there is no visible evidence of
465 active infestation by termites or other wood destroying insects. Unless otherwise agreed between the Parties, if the
466 report discloses evidence of active infestation or structural damage, Buyer has the option within five (5) Business
467 Days of receipt of the report to proceed with the purchase or to declare this Contract null and void.

468 _____ 40. POST CLOSING POSSESSION: Possession shall be delivered no later than 11:59 P.M. on the
469 date that is _____ days after the date of Closing ("the Possession Date"). Seller shall be responsible for all
470 utilities, contents and liability insurance, and home maintenance expenses until delivery of possession. Seller shall

Buyer Initial [RPE] Buyer Initial [4G]    Seller Initial [____]  Seller Initial _____
Address: 1645 W Farragut Ave , Chicago, Illinois 60640
Page 11 of 13                                                                    v6.1

DocuSign Envelope ID: 7050DB8E-B213-4A73-BF67-C1480B7471EE

471 deposit in escrow at Closing with _____ [check one] □ one percent (1%)
472 of the Purchase Price or □ the sum of $ _____ to be paid by Escrowee as follows:
473   a) The sum of $ _____ per day for use and occupancy from and including the day after Closing to
474      and including the day of delivery of Possession, if on or before the Possession Date;
475   b) The amount per day equal to three (3) times the daily amount set forth herein shall be paid for each day after
476      the Possession Date specified in this paragraph that Seller remains in possession of the Real Estate; and
477   c) The balance, if any, to Seller after delivery of Possession and provided that the terms of Paragraph 21 have been
478      satisfied. Seller's liability under this paragraph shall not be limited to the amount of the possession escrow
479      deposit referred to above. Nothing herein shall be deemed to create a Landlord/Tenant relationship between the Parties.

480           **41. "AS IS" CONDITION:** This Contract is for the sale and purchase of the Real Estate in its "As
481 Is" condition as of the Date of Offer. Buyer acknowledges that no representations, warranties or guarantees with
482 respect to the condition of the Real Estate have been made by Seller or Seller's Designated Agent other than those
483 known defects, if any, disclosed by Seller. Buyer may conduct an inspection at Buyer's expense. In that event, Seller
484 shall make the Real Estate available to Buyer's inspector at reasonable times. Buyer shall indemnify Seller and hold
485 Seller harmless from and against any loss or damage caused by the acts of negligence of Buyer or any person
486 performing any inspection. In the event the inspection reveals that the condition of the Real Estate is
487 unacceptable to Buyer and Buyer so notifies Seller within five (5) Business Days after the Date of Acceptance,
488 this Contract shall be null and void. Buyer's notice SHALL NOT include a copy of the inspection report, and
489 Buyer shall not be obligated to send the inspection report to Seller absent Seller's written request for same.
490 Failure of Buyer to notify Seller or to conduct said inspection operates as a waiver of Buyer's right to terminate
491 this Contract under this paragraph and this Contract shall remain in full force and effect. Buyer acknowledges
492 that the provisions of Paragraph 12 and the warranty provisions of Paragraph 5 do not apply to this Contract.

493 _____ _____ **42. SPECIFIED PARTY APPROVAL:** This Contract is contingent upon the approval of the Real
494 Estate by _____
495 Buyer's Specified Party, within five (5) Business Days after the Date of Acceptance. In the event Buyer's Specified
496 Party does not approve of the Real Estate and Notice is given to Seller within the time specified, this Contract shall
497 be null and void. If Notice is not served within the time specified, this provision shall be deemed waived by the
498 Parties and this Contract shall remain in full force and effect.

499 _____ _____ **43. INTEREST BEARING ACCOUNT:** Earnest money (with a completed W-9 and other
500 required forms), shall be held in a federally insured interest bearing account at a financial institution designated
501 by Escrowee. All interest earned on the earnest money shall accrue to the benefit of and be paid to Buyer. Buyer
502 shall be responsible for any administrative fee (not to exceed $100) charged for setting up the account. In
503 anticipation of Closing, the Parties direct Escrowee to close the account no sooner than ten (10) Business Days
504 prior to the anticipated Closing date.

505 _____ _____ **44. MISCELLANEOUS PROVISIONS:** Buyer's and Seller's obligations are contingent upon the
506 Parties entering into a separate written agreement consistent with the terms and conditions set forth herein, and
507 with such additional terms as either Party may deem necessary, providing for one or more of the following [check applicable boxes]:

508 □ Articles of Agreement for Deed      □ Assumption of Seller's Mortgage      □ Commercial/Investment
509    or Purchase Money Mortgage      □ Cooperative Apartment      □ New Construction
510 □ Short Sale      □ Tax-Deferred Exchange      □ Vacant Land

Buyer Initial RPE    Buyer Initial 4G            Seller Initial GL    Seller Initial _____
Address: 1645 W Farragut Ave , Chicago, Illinois 60640
Page 12 of 13                                                v6.1

DocuSign Envelope ID: 7956DB6E-B213-4A73-BF57-C1409B7471EE

| 511 | THIS DOCUMENT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY ALL PARTIES AND DELIVERED TO THE PARTIES OR THEIR AGENTS. |

512  THE PARTIES REPRESENT THAT THE TEXT OF THIS COPYRIGHTED FORM HAS NOT BEEN ALTERED AND IS IDENTICAL TO THE OFFICIAL
513  MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 6.1.

514  4/17/2016

515  Date of Offer                                                    4/17/16
                                                                       DATE OF ACCEPTANCE

516  _Bodahay_ (signature)                                             _Erik Carrier on Behalf_
517  Buyer Signature(s)...                                             Seller Signature
                                                                       _of 1645 W Farragut, LLC_
518  _Yasmany Gomez_
519  Buyer Signature(s)...                                            Seller Signature

520  Randall Ewing               Yasmany Gomez                        ERIK CARRIER
521  Print Buyer's Name(s) (Required)                                 Print Seller(s) Name(s) (Required)

522
523  Address                                                          1658 N Milwaukee Ave, Suite 107
                                                                       Address
524
525  City              State          Zip                            Chicago,          IL         60647
                                                                      City              State      Zip
526
527  Phone             E-mail                                        773-234-9524
                                                                      Phone             E-mail
528                                                                   ecarrier@red star property management.com

529  Redfin Corporation                        FOR INFORMATION ONLY  PApHla Properties 86404
530  Buyer's Brokerage        MLS#      State License #               Seller's Brokerage    MLS#    State License #
531  1200 N. Ashland Suite 600  Chicago  60622                        1732 W Hubbard,  Chicago, IL  60622
532  Address                City        Zip                           Address              City     Zip
533  Tim Zielonka            176341                                   ERIK CARRIER              352874
534  Buyer's Designated Agent  MLS#     State License #               Seller's Designated Agent  MLS#  State License #
535  (773) 789-7349
536  Phone                    Fax                                     Phone                        Fax
537  tim.zielonka@redfin.com; tim_zielonka@redfin.com
538  E-mail                                                           E-mail
539
540  Buyer's Attorney        E-mail                                   Seller's Attorney            E-mail
541
542  Address       City      State      Zip                           Address       City   State   Zip
543
544  Phone                   Fax                                      Phone                        Fax
545
546  Mortgage Company        Phone                                    Homeowner's/Condo Association (if any)  Phone
547
548  Loan Officer            Phone/Fax                                Management Co./Other Contact  Phone
549
550  Loan Officer E-mail                                              Management Co./Other Contact E-mail

551  Illinois Real Estate License Law requires all offers be presented in a timely manner. Buyer requests verification that this offer was presented.
552  Seller rejection This offer was presented to Seller on _____, 20 ___ at ___: ___ A.M./P.M., and rejected on _____, 20 ___ at ___: ___ A.M./P.M.
553  20 ___ at ___: ___ A.M./P.M.        [Seller Initials]

554  © 2015, Illinois Real Estate Lawyers Association. All rights reserved. Unauthorized duplication or alteration of this form or any portion thereof is prohibited. Official form available at
555  www.rela.net (website) locality of Illinois Real Estate Lawyers Association). Approved by the following organizations, September 2015: Illinois Real Estate Lawyers Association • DuPage County Bar Association •
556  McHenry County Bar Association • Northwest Suburban Bar Association • Will County Bar Association • Belvidere Board of REALTORS® • Chicago Association of REALTORS® • Heartland REALTOR®
557  Organization • Mainstreet Association of REALTORS® • Illini Valley Association of REALTORS® • Kankakee-Iroquois-Ford County Association of REALTORS® • Mainstreet Organization of
558  REALTORS® • North Shore-Barrington Association of REALTORS® • Oak Park Area Association of REALTORS® • REALTOR® Association of the Fox Valley, Inc. • Three Rivers Association of
559  REALTORS®

Buyer Initial _RPE_ Buyer Initial _YG_        Seller Initial _(initials)_ Seller Initial _____
Address: 1645 W Farragut Ave , Chicago, Illinois 60640

Page 13 of 13                                                                        v6.1

# EXHIBIT D

DocuSign Envelope ID: 341C1F90-0528-43DB-91DD-B46D3E4FC493

# 1645 WEST FARRAGUT AVENUE
## SINGLE FAMILY HOME
## PURCHASE AND SALE AGREEMENT

DEVELOPER / SELLER:    1645 W Farragut, an Illinois Limited Liability Company

PURCHASER(S):    Randall Ewing and Yasmany Gomez

HOME ADDRESS:    408 N.E. 8th Avenue, Ft. Lauderdale, FL 33301

WORK ADDRESS: 205 North Michigan Avenue Suite 1950 Chicago, IL 60601-5947

PURCHASER(S) PHONE:    HOME: (312)219-0177 (RE); (954)702-4247 (YG)

AGREED MODIFICATION OF APRIL 17, 2016 EXECUTED MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 6.1. TO THE EXTENT A SUBJECT IS NOT SPECIFICALLY AND EXPRESSLY ADDRESSED HEREIN, THE PARTIES SHALL REFER TO THE APPLICABLE PROVISION IN THE APRIL 17, 2016 CONTRACT.

1.    DESCRIPTION.    SELLER agrees to sell and Purchaser agrees to purchase the Single Family Home in the City of Chicago, County of Cook, State of Illinois identified above. The address of said Property (the "Property") is 1645 West Farragut, Chicago, IL 60640-2009. The Property, if not already completed, will be constructed in substantial compliance with the plans on file with the City of Chicago Department of Buildings. The following exhibits are attached to this Agreement and are a part thereof: Exhibit A, Upgrade List; Exhibit B, Certificate of Warranty; and Exhibit C, Change Order Form, and Exhibit D, Disclosure of Information on Radon Hazards.

The Total Purchase Price below equals the Base Purchase Price of the Property plus the amount of the Total Upgrades to be purchased. After the date of this Agreement, the Total Purchase Price shall be adjusted by the total amount of all upgrades and changes made, which upgrades and changes shall be requested on the Change Order Form (Exhibit C). As of the date of this Agreement, the Purchase Price of the Property and terms of payment are as follows:

| | | |
|---|---|---|
| Base Purchase Price of Property | $ | 1,175,000.00 |
| Add: Total Upgrades | $ | To be Determined |
| Total Purchase Price (Base plus Total Upgrades) | $ | 1,175,000.00 |
| Less: Initial Earnest Money Paid On This Date | $ | 5,000.00 |
| BALANCE MUST be paid within 2 business days of Seller's acceptance | $ | 112,500.00 |
| Balance to be paid at Closing by Cashier's or Title Company check | $ | 1,057,500.00 |

1

DocuSign Envelope ID: 34101F09-0520-430B-01DD-B46D3B4FC403

2.    **PURCHASER'S MORTGAGE.** This Agreement is contingent upon the ability of Purchaser to secure, by August 15, 2016, a mortgage commitment for $940,000.00, or such lesser sum as Purchaser shall accept, with a rate of interest not to exceed 4.5 %, amortized over 30 years with points/origination charges, if any, of 0%. Purchaser shall pay the usual and customary charges imposed by the lending institution; including but not limited to credit and appraisal fees. Purchaser shall make timely application or applications for and shall make every reasonable effort to obtain such commitment, and shall take no action or omission after the date hereof which would tend to damage Purchaser's creditworthiness or ability to pay such mortgage loan. Purchaser shall provide a copy of said commitment to Seller. If Purchaser is unable to obtain such firm commitment, Purchaser shall notify Seller thereof in writing by 5:00 p.m. on the date set forth immediately above. If Seller is not so notified, it shall be conclusively presumed that Purchaser has secured such commitment or will purchase the Property without mortgage financing. If Seller is so notified, Seller may, at Seller's option, within sixty (60) days after such notice, secure a commitment on behalf of Purchaser on the same terms as above. Purchaser agrees to pay an application fee and to furnish Seller all requested credit information and to sign customary papers relating to the application for securing of said commitment. If Purchaser notifies Seller as aforesaid, and Seller is unable or unwilling to secure such commitment as above provided, this Agreement shall be null and void and the earnest money shall be returned to Purchaser. Purchaser shall be responsible for taking all actions necessary and bear all costs in order to keep said commitment in full force and effect until Closing, including the costs of any interest rate lock and related extensions of such lock. Should Purchaser not close for any reason, not through fault of Seller, including inability to obtain a mortgage and Purchaser has made selections, upgrades and/or change orders, Seller reserves the right to back-charge the earnest money, prior to releasing the balance to Purchaser in order to rectify, if necessary, Purchaser's selections. A party causing delay in the loan approval process shall not have the right to terminate under this paragraph.

3.    **COMPLETION, CLOSING AND TITLE INSURANCE.** The estimated date of substantial completion of the Property is October 3, 2016. Closing of the sale (the "Closing") shall be on such date after the Property has been substantially completed as Seller shall designate by notice to Purchaser provided that, if substantial completion is delayed due to fire, labor disputes, shortages or unavailability of labor, materials or transportation, Acts of God, acts of governmental authorities, weather conditions or any other cause beyond Seller's reasonable control, as determined at Seller's sole discretion, said date shall be extended by the length of such delay. Seller shall not be liable to Purchaser for damages of any kind, including secondary, incidental or consequential damages, resulting from any delay of the Closing resulting from the aforementioned causes. Any dispute between Purchaser and Seller concerning completion shall be arbitrated by the Architect. Further, if a temporary or a permanent Certificate of Occupancy by the City of Chicago is provided to Purchaser, or if a Certificate of Substantial Completion by the Architect is provided to Purchaser, such shall then be conclusive with respect to substantial completion of the Property. Seller shall be entitled to the full Total Purchase Price at Closing. In the event that the Closing shall occur prior to completion of any work, Seller shall not be released from the obligation to perform such work in conformity with this Agreement and to complete any so-called Punchlist items remaining on the date of Closing.

Purchaser acknowledges that title to and possession of the Property prior to Closing is solely in Seller and that Purchaser shall have no right of entry to the Property unless accompanied by Seller's representative as hereinafter described. For liability purposes, Purchaser may not access the Property unless Seller permits same, and it shall be a material default of Purchaser to gain access unaccompanied by Seller's representative. In no event shall Purchaser be permitted to occupy the Property or be given keys thereto until all monies due Seller, including any extras, or optional items ordered, have been paid in full to Seller. The Closing, the payment of the balance of the Total Purchase Price, payment of all other sums due from Purchaser and delivery of deed shall be through an agency-escrow closing with Chicago Title Insurance Company as Escrowee, in accordance with a form of escrow agreement consistent with the provisions of this Agreement.

At Seller's expense, Seller will deliver or cause to be delivered to Purchaser or Purchaser's attorney within customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a title commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended coverage by a title

2

DocuSign Envelope ID: 341C1F99-0526-43BB-910D-B46D3E4FC403

company licensed to operate in the State of Illinois, issued on or subsequent to the Date of Acceptance, subject only to the items listed in Paragraph 4. The commitment for title insurance furnished by the Seller will be presumptive evidence of good and merchantable title as therein shown, subject only to the exceptions therein stated. If the title commitment discloses any unpermitted exceptions or if the Plat of Survey shows any encroachments or other survey matters that are not acceptable to Purchaser, then Seller shall have said exceptions, survey matters or encroachments removed, or have the title insurer commit to either insure against loss or damage that may result from such exceptions or survey matters or insure against any court-ordered removal of encroachments. If Seller fails to have such exceptions waived or insured prior to Closing, Purchaser may elect to take title as it then is with the right to deduct from the Purchase Price prior encumbrances of a definite or ascertainable amount. Seller shall furnish Purchaser at Closing an Affidavit of Title covering the date of Closing, and shall sign any other customary forms required for the issuance of an ALTA Insurance policy.

4. **CONVEYANCE.** Seller shall convey or cause to be conveyed to Purchaser or Purchaser's Designated Grantee good and merchantable title to the Real Estate by recordable Warranty Deed, with release of homestead rights (or the appropriate deed if title is in trust or in an estate). Title when conveyed will be good and merchantable, subject only to: covenants, conditions and restrictions of record and building lines and easements, if any, provided they do not interfere with the current use and enjoyment of the Real Estate; general real estate taxes not due and payable at the time of Closing; and Seller's right to enter the Property to complete construction. Seller shall pay the stamp tax required under the Real Estate Transfer Tax Act of the State of Illinois, Cook County, and the City's so-called CTA portion, and Purchaser shall pay the local real estate transfer imposed by the City of Chicago. If Purchasers are married, title shall be conveyed to them in tenancy by the entireties unless Seller is directed otherwise no later than fourteen (14) days prior to Closing.

5. **PLAT OF SURVEY:** Not less than one (1) Business Day prior to Closing, Seller shall, at Seller's expense, furnish to Buyer or Buyer's attorney a Plat of Survey that conforms to the Minimum Standard of Practice for boundary surveys, is dated not more than six (6) months prior to the date of Closing, and is prepared by a professional land surveyor licensed to practice land surveying under the laws of the State of Illinois. The Plat of Survey shall show visible evidence of improvements, rights of way, easements, use and measurements of all parcel lines. The land surveyor shall set monuments or witness corners at all accessible corners of the land. All such corners shall also be visibly staked or flagged. The Plat of Survey shall include the following statement placed near the professional land surveyor's seal and signature: "This professional service conforms to the current Illinois Minimum Standards for a boundary survey." A Mortgage Inspection, as defined, is not a boundary survey and is not acceptable.

6. **SELLER REPRESENTATIONS:** Seller's representations contained in this paragraph shall survive the Closing. Seller represents that with respect to the Property that Seller has no knowledge of nor has Seller received any written notice from any association or governmental entity regarding:

    a) Zoning, building, fire or health code violation that have not been corrected;
    b) Any pending rezoning;
    c) Boundary line disputes;
    d) Any pending condemnation or Eminent Domain proceeding;
    e) Easements or claims of easements not shown on the public records;
    f) Any hazardous waste on the Property;
    g) Any improvements to the Property for which the required initial and final permits were not obtained;
    h) Any improvements to the Property which were not included in full in the determination of the most recent tax assessment; or
    i) Any improvements to the Property which are eligible for the home improvement tax exemption.

Seller further represents that:

There is not a pending or unconfirmed special assessment affecting the Property by any association or governmental entity payable by Buyer after the date of Closing. The Property is not located within a Special Assessment Area or Special Service Area, payments for which will not be the obligation of Seller after the year in which the Closing occurs.

3

DocuSign Envelope ID: 341C1F99-0528-43BB-91DD-B46D3E4FC493

All Seller representations shall be deemed re-made as of Closing. If prior to Closing Seller becomes aware of matters that require modification of the representations previously made herein, Seller shall promptly notify Purchaser. If the matters specified in such Notice are not resolved prior to Closing, Buyer may terminate this Contract by notice to Seller and this Contract shall be null and void.

7. **REAL ESTATE TAXES.** All real estate taxes shall be current at closing and shall have been paid by Seller. Seller shall pay all 2015 taxes when due. Seller holds Purchaser harmless from any obligation to pay 2015. The 2016 taxes from January 1, 2016 to the date of Closing, shall be prorated 110% of the most current Assessed Value. Alternatively, Seller reserves the right in its sole discretion to escrow the proration in the event that a tax protest is not completed and issue prorations to Purchaser after the completion of the 2015 protest, and the parties shall prorate the 2016 protest fee. If the amount of the most recent ascertainable full year tax bill reflects a homeowner, senior citizen or other exemption, a senior freeze or senior deferral, then Seller has submitted or will submit in a timely manner all necessary documentation to the appropriate governmental entity, before or after Closing, to preserve said exemption(s). The requirements of this Paragraph shall survive the Closing.

8. **PUNCHLIST INSPECTIONS.** Purchaser shall be entitled to inspect the property, with an Illinois licensed home inspector if Purchaser so chooses. The inspection should be at such time as the property is nearing substantial completion. If Purchaser employs a private home inspection company, the inspector's role is to assist in preparation of the Closing Punchlist, not to create a contingency to the contract. A "Closing Punchlist" of incomplete items shall be prepared, which Closing Punchlist shall be signed by both Purchaser and a representative of Seller. All items on the revised Closing Punchlist shall be completed either prior to Closing or no later than thirty (30) days after Closing. Seller's obligation to complete the items on the Closing Punchlist shall survive the Closing. In the event the inspection under this paragraph reveals a material defect in the central heating system, central cooling system, plumbing and well system, electrical system, roof, walls, windows, doors, ceilings, floors, appliances and foundation, and Seller is unable to resolve any material defects to the reasonable satisfaction of Purchaser, then Purchaser shall have right to terminate the contract.

9. **DEFAULT.** Time is of the essence of this Agreement. In any action with respect to this contract, the Parties are free to pursue any legal remedies at law or in equity. If Purchaser materially defaults on any of the terms and conditions contained in this Purchase and Sale Agreement, then all payments made by Purchaser shall be retained by Seller as liquidated damages, and not as a penalty, and this Agreement shall thereupon become null and void.

10. **SELECTIONS, MATERIALS AND CONSTRUCTION CHANGES.** Purchaser shall select colors, finishes and materials promptly whenever Seller shall give Purchaser the option of such choice. In the event of failure of Purchaser to make selections within fifteen (15) days after being so requested to do so by Seller, Purchaser hereby authorizes Seller to complete the Property with such selections as Seller deems suitable. Purchaser shall make such selections from the samples and on the forms Seller provides; such selections shall be made in writing and shall bind the Purchaser. SELLER IS NOT BOUND BY ANY SELECTIONS, CHANGE ORDERS AND/OR UPGRADES UNLESS SPECIFICALLY AGREED TO AND SIGNED BY THE SELLER (AS OPPOSED TO SELLER'S AGENTS, REALTOR(S), ETC.). AND SUCH AGREEMENT WILL NOT BE UNREASONABLY WITHHELD. Seller does not assume any responsibility for grain and color variations in wood, marble, granite, ceramic tile and carpet dye lot variations, or any color variations from existing samples and Purchaser understands that these products will vary and are outside of Seller's control. If any of Purchaser's selections become unavailable, Seller may require Purchaser to make new selections. Seller reserves the right to require that any upgrades or changes, as mutually agreed upon by the parties, shall be paid for by Purchaser's deposit of additional earnest money. Purchaser requests changes to the Standard Specifications by completing the Upgrade List (Exhibit A) at the time of Contract and the Change Order Form (Exhibit C) after execution of this Contract but prior to Closing. Seller reserves the right to require fifty (50%) of the cost of any Change Order to be paid to Seller directly, and to be applied as additional earnest money at the time of Closing.

4

DocuSign Envelope ID: 34101F99-0528-43BB-91DD-B46D3E4FC403

**11.    ALTERNATIVE MATERIALS.**    In the event of the inability of Seller to obtain certain materials, Seller shall have the right to substitute other materials or brand names of equal quality, utility or color. Seller reserves the right to make such changes in construction as may be required by material shortages or such other situations as may, in Seller's judgment, be necessary or desirable.

**12.    BROKER.**    Purchaser warrants that no brokers, other than those set forth below, were involved in this transaction, and agrees to indemnify and hold Seller harmless from any claim asserted by any other broker.

Listing Broker:

Erik Carrier
D'Aprile Properties
1732 W. Hubbard
Chicago, IL 60622
(773) 234-9524
ecarrier@redstarpropertymanagment.com

Cooperating Broker:

Name Tim Zielonka

Firm Redfin

Address  1200 N Ashland #500
           Chicago, IL 60622
Phone 773 789-7349
Facsimile

E-mail tim.zielonka@redfin.com

**13.  MISCELLANEOUS PROVISIONS.**

a.    **Mediation.**    In the event of a dispute between the parties hereto with respect to the property, and expressly prior to any litigation involving any party to this Purchase and Sales Agreement, the purchased home, and/or the parties' obligations hereunder, the parties will engage a mediator from a firm offering alternative dispute resolution services in Chicago.

b.    **Partial Invalidity.**    In the event that any term or provision of this contract shall be held to be illegal, unenforceable or inoperative as a matter of law, the remaining terms and provisions shall not be affected thereby, but each such term shall remain valid and shall remain in full force and effect.

c.    **Waiver.**    No covenant, term or condition of this contract shall be deemed waived unless such waiver is in writing and signed by the party and no alleged failure of performance shall relieve the other party of full performance under this contract.

d.    **Recording.**    Purchaser shall not record this Agreement or any memorandum thereof, and any such recording will constitute a default under this Agreement by Purchaser.

e.    **Errors.**    All Parties agree, if requested, to fully cooperate in correcting any errors as may appear in this Purchase and Sale Agreement.

f.    **Request for Taxpayer Identification Number and Certification (W-9).**    In lieu of a separate W-9 form (standard Rider 5 from the Chicago Association of Realtors), Purchaser must enter Purchaser's social security number below, and by signing this Agreement certifies the following:

**Certification:**    Under penalties of perjury, I certify that: (1) The Number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be assigned to me), and (2) I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by Internal Revenue Service (IRS) that I am subject to backup withholding as a result to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding (does not apply to real estate transactions, mortgage interest paid, the acquisition or abandonment of secured property,

5

DocuSign Envelope ID: 341C1F99-0620-43BB-91DD-B46D3E4FC493

contributions to an individual retirement arrangement (IRA), and payments and payments other than interest and dividends). Purchaser's social security number for W-9 purposes is:



SSN: ▓▓▓▓▓▓▓ ── ▓▓ ── ▓▓▓▓   Name: Randall Ewing
Yasmany Gomez

g.   **Approximate Square Footage.**   Purchaser understands and acknowledges that the square footage calculations of any Property are approximate and Seller makes no guarantee as to the exact square footage of any Property.

h:   **Sales Brochure, Collateral Material and Advertising.**   Any information illustrated in the Sales Office, if any, or in any brochures, renderings, and advertisements, if any, may not conform to actual plans and specifications and may be prepared and presented for dramatic or illustrative purposes only. Seller makes no representations regarding such materials and Purchaser should base its decision to purchase solely on its own investigation of the Property. PURCHASER UNDERSTANDS AND ACKNOWLEDGES THAT SELLER ASSUMES NO RESPONSIBILITY FOR ANY ERRORS, OMMISSIONS OR MISREPRESENTATIONS MADE BY BROKER(S), OR SELLER'S AGENT(S) IN ANY SALES MATERIALS SUCH AS ADVERTISING BROCHURES, MARKETING MATERIALS, MULTIPLE LISTING SERVICE ETC., OR THROUGH VERBAL COMMUNICATION(S). One of the Seller's Members holds a broker's license in the state of Illinois.

i.   **Digital Signatures.**   A facsimile, scanned version or DocuSign transmission signed by the Parties hereto, or signed in counterparts, shall at all times be considered by the Parties to be the same as an original. No Party shall raise the defense of fax transmission to the validity of this Agreement, or to any Riders or Amendments thereto.

j.   **Material Destruction.**   If, prior to Closing, the Property shall be destroyed or materially damaged by fire or other casualty, this Purchase and Sale Agreement shall, at the option of either the Seller or the Purchaser, exercised by notice within thirty (30) days after such destruction or damage, be null and void and any earnest money deposited hereunder, with all interest earned thereon, shall be refunded to Purchaser. If neither party elects to terminate this Purchase and Sale Agreement as aforesaid, then neither party shall be relieved of their duties and obligations hereunder; unless said damage to the Property is not restored or repaired by Seller to the original condition within three (3) months from the date of said fire or other casualty, in which event Purchaser shall have the right to terminate this Purchase and Sale Agreement by notice to Seller within ten (10) days after the expiration of said three (3) month period. In the event of damage other than material damage, Seller agrees to correct said damage prior to Closing. Closing shall be delayed a reasonable period of time to allow Seller to correct said damage.

14.   **NOTICES.**   All notices and demands herein required shall be in writing and shall be deemed sufficient if delivered by hand to the addressee for whom it is intended as noted on the face of this agreement or on the date of postmark by United States registered or certified mail, return receipt requested. Notices may be sent by facsimile transmission to Seller's Attorney and Purchaser's Attorney without the need for proof of transmission to be sent by mail.

15.   **ASSIGNMENT.**   This Agreement shall be binding upon, inure to the benefit of, and be enforceable by the parties hereto, and their respective heirs, devisees, successors, personal representatives and assigns, provided that Purchaser shall make no assignment of this Agreement or of any Purchaser's rights hereunder without Seller's express written consent.

16.   **PURCHASER'S STATUS.**   Purchaser represents and warrants there is nothing in Purchaser's status which could or might preclude or prevent Purchaser from consummating this transaction as herein set forth.

17.   **WARRANTY.**   Seller shall repair, correct, or replace any item that is covered by the Warranty for a period of one (1) year only from the date of conveyance and Closing, provided Seller is notified in writing via certified mail,

DocuSign Envelope ID: 341C1F99-0528-43BB-01DD-B40D3E4FC403

return receipt requested, of the warranty claim, as specified in the Certificate of Warranty to be provided to Purchaser at Closing, a specimen copy of which is attached as Exhibit B. All manufacturers' warranties for the appliances, roof, mechanical components and other separately warranted items shall be assigned to Purchaser at the time of Closing. Seller does not assume the responsibility for any secondary, incidental or consequential damage. Other specific warranty provisions are found in the specimen Certificate of Warranty (Exhibit D).

SELLER DOES NOT WARRANT ANY ITEM CHANGED, ADDED OR RECONFIGURED BY PURCHASER(S) AFTER CLOSING.

18.     ENTIRE AGREEMENT.     This Agreement, with all riders and exhibits attached hereto, which are hereby incorporated herein and made a part hereof, constitute the entire agreement between the parties. NO REPRESENTATIONS, WARRANTIES, UNDERTAKING OR PROMISES, WHETHER ORAL, EXPRESSED OR IMPLIED, HAVE BEEN MADE BY SELLER OR ANY EMPLOYEE, SALESPERSON OR AGENT OF SELLER, TO INDUCE PURCHASER TO ACT, OR SHALL BE CONSIDERED A PART OF THIS TRANSACTION, UNLESS OTHERWISE EXPRESSLY STATED HEREIN.  No amendment, modification or supplement to this Agreement shall be effective unless it is in writing and signed by both parties.

19.     FIRM OFFER.     This Agreement, once executed by Purchaser, shall be considered a firm and irrevocable offer by Purchaser to purchase the Property, which offer shall remain open in consideration of the Seller reserving the Property for Purchaser for a period of seven (7) days from the date hereof, and may be accepted by Seller at any time during such period.

20.     NO RESERVATION.     The submission by Seller of this Purchase Agreement to a prospective purchaser for examination does not constitute an offer by Seller to sell, or a reservation of or an option for the Property. This instrument shall not become a contract until executed and delivered by Purchaser and Seller in the manner set forth herein.

21.     MODEL.     In all cases, where the amenities and/or the level of finishes are not set forth herein, the parties shall look to the property at 1651 West Farragut Avenue as a model for such amenities and finishes.

22.     ADDENDUM #1.     Attached hereto and made a part hereof is Addendum #1, Material Allowances for this Home.

23.     ADDENDUM #2.     Attached hereto and made a part hereof is Addendum #2, a list of customized features for which Purchasers' earnest money will be used (in the event Purchasers do not close for any reason, including their inability to obtain a mortgage) to rectify the customized feature.

AGREED:

Purchaser/Co-Purchaser:

Purchaser/Co-Purchaser:

AGREED:
1645 W Farragut, LLC,
an Illinois Limited Liability Company

By

Seller's Duly Authorized Agent

5/1/16

Date of Seller's Acceptance

7

DocuSign Envelope ID: 341C1F99-0520-43BB-91DD-B40D3E4FC403

## EXHIBIT A
### 1645 WEST FARRAGUT, CHICAGO, ILLINOIS

Seller's Specifications shall be upgraded with a cost as set forth next to each upgrade below, which cost represents the *differential* or the net amount due over the cost of the base model or item, determined at Seller's cost. The Total Upgrade amount, below, shall be added to Base Purchase Price. The Total Upgrade amount is due in full no later than Closing.

| ITEM | UPGRADE | COST |
|------|---------|------|
| 1. Fencing | | $ |
| 2. Cabinets | | $ |
| 3. Appliances | See Addendum #2 | $ |
| 4. Paint | | $ |
| 5. Landscaping | | $ |
| 6. Garage | | $ |
| 7. Electrical Fixtures | | $ |
| 8. Hardwood Flooring | | $ |
| 9. Plumbing | | $ |
| 10. Other Upgrade | | $ |

TOTAL UPGRADES (from this sheet)       $ _____

TOTAL PURCHASE PRICE
(Base Purchase Price plus this sheet)       $ See Addendum #2

AGREED:                                    AGREED:
                                           1645 W Farragut, LLC,
                                           an Illinois Limited Liability Company

_____           BY: _____
Purchaser                                      Seller's Duly Authorized Agent

_____           _____
Purchaser                                  Date

_____
Date

*NOTE: THIS IS AN EXAMPLE OF THE WARRANTY ONLY-*

*(ORIGINAL TO BE SIGNED AT CLOSING)*

**EXHIBIT B**
**CERTIFICATE OF WARRANTY**
**1645 WEST FARRAGUT, CHICAGO, ILLINOIS**

THIS CERTIFICATE OF WARRANTY, for valuable consideration acknowledged from one party to the other, is a part of the Real Estate Purchase and Sales Agreement dated April 30, 2016 by 1645 W Farragut, LLC, an Illinois Limited Liability Company, as Seller and Randall Ewing and Yasmany Gomez, as Purchaser(s) of 1645 W. Farragut, Chicago, IL 60640.

In addition to any other rights and privileges which you may have under any warranties of various manufacturers, equipment suppliers and others who have supplied materials used in the construction of your home, SELLER WARRANTS the following for a period of one year after closing, unless a shorter period is hereinafter specified:

1.      Seller will cause to be corrected any defect due to faulty construction and/or defective materials brought to Seller's attention by written notice for one (1) year from the date of Closing, except as otherwise stated herein.

2.      Seller does not assume responsibility for any secondary, incidental, or consequential damage caused by or due to any defect. No steps taken by Seller to correct defects shall act to extend the warranty period beyond the initial term of one year. The warranty is applicable only to the matters warranted herein, and only if the noted defects are reported in writing before the end of the warranty year.

3.      For a period of thirty (30) days only from Closing, the following items will be free from defects in materials and workmanship hardware, electric switches, outlets, light fixtures, vanities and kitchen cabinets. All claims for correction of defects in these items must be filed in writing with Seller not later than thirty (30) days after Closing.

**CERTAIN CONDITIONS NOT COVERED BY WARRANTY**

4.      Seller does not warrant against the normal effects of settlement, expansion, contraction or warping of materials that may occur in walls, floors, ceilings, doors, windows, etc. Nail pops and cracks in the drywall will occur as the result of the natural shrinking and drying out of the framing materials.

5.      Seller does not warrant against smudges in painted surfaces, plastic laminates, paneling, chipping of porcelain in any item of equipment, chipping or cracking of tile, cracking of grout, torn screens or broken glass, or glass blocks, spots or stains on flooring readily visible to the human eye, stains or marks on granite or marble countertops, which are not noted for correction at the time of final inspection by Purchaser before Closing, and are thus excluded from this warranty.

6.      Seller will not warrant against cracking or scaling of the concrete flatwork unless the crack exceeds 1/4 inch, and Seller is not able to warranty pop-outs of concrete aggregate whatsoever. Cracks of foundation walls, if any, will be repaired only if infiltration of free flowing water exists.

7.      This warranty does not cover ordinary wear and tear, Purchaser's misuse, neglect or general maintenance connected with home ownership.

8.      Seller does not warrant and assumes no responsibility for the following:

a. defects which are the result of characteristics common to material used;

b. damage, loss or injury caused in any way by Acts of God, including flash floods;

c. damage, loss or injury caused in any way by back-up or overflowing of the City of Chicago sewer system;

d. damage, loss or injury caused in any way by the Property Owner's lack of regular maintenance.

9. This warranty terminates if the property is sold, or ceases to be occupied by the original purchaser to whom this warranty is issued. This warranty terminates as to any item changed, repaired or replaced by any persons other than the Seller or Seller's authorized agents.

10. The provisions of this warranty shall not apply if there is any sum owed to Seller, unless such sum is the subject of a properly executed escrow agreement. If the sum in escrow is not promptly released after Seller's substantial completion of the items covered by said escrow agreement, then this Warranty is likewise voided. The Warranty does not cover any condition which existed on the date of closing and which was not made part of a so-called "Punchlist" prior to closing. All such unnoted conditions are considered to be Amerged into the deed for the Property.

11. **Heating and Cooling.** In the first winter and summer, you may find that certain rooms are too warm and others are too cool. You must adjust the air flow by regulating the dampers on the heat registers. For seasonal changes, rooms farthest from the thermostat location will vary in temperature from the exact setting on the dial. The amount of sunlight to a specific room will also affect its temperature. As a general rule, never set your thermostat below 55 degrees. The humidifier must be set at the proper level according to the instructions which accompany the unit/controls. Improper settings will result in abnormal shrinkage of wood trim and flooring, while too high of a setting may result in condensation and possible water damage.

12. **Appliances.** All appliances have been carefully installed. The instruction pamphlets supplied by the manufacturer should be read for proper operation. As with any piece of equipment, defects may occasionally arise when the appliance is first used. All appliances are purchased with factory warranties. The term of any manufacturer's warranty commences at the time Seller purchases any such appliance or item of equipment from the supplier thereof. No action on the part of Seller shall be deemed to extend or modify the terms of any such manufacturers' warranty or warranties. All warranty cards have been delivered to the Purchaser. EXCEPT FOR THESE ITEMS AND AS TO ANY OTHER CONSUMER PRODUCT (AS THAT TERM MAY BE DEFINED UNDER APPLICABLE FEDERAL AND STATE LAWS) WHICH MAY BE CONTAINED IN THE PURCHASED HOME, SELLER NEITHER MAKES NOR ADOPTS ANY WARRANTY OF ANY NATURE REGARDING SUCH APPLIANCES, FIXTURES, PLUMBING AND AIR CONDITIONING SYSTEMS, HOT WATER HEATERS AND OTHER CONSUMER PRODUCTS.

13. **Roof.** The new roof and roof flashing are to be free from leaks, except where such conditions are caused by acts or circumstances beyond Seller's control or by Purchaser's misuse. A separate roof warranty is available from the roofing contractor in favor of the owner which covers the roofing material.

14. **Plumbing.** The plumbing system is to be in proper working order and free from defects in workmanship and material. Failures caused by the negligence of Purchaser, or the failure to keep foreign material out of the system are excluded from this warranty. The home has a large hot water heater and the time that it takes for your water to get hot is directly related to the distance between the plumbing fixture and the hot water heater. Seller will repair dripping faucets and make bath fixture adjustments for a period of ninety (90) days only from the date of Closing.

15. **Concrete Slabs, Concrete Floors, and Mortar Joints.** Occasionally, due to shrinkage and/or expansion and contraction, an expected physical characteristic of concrete, small cracks may appear in concrete slabs. The concrete slabs are carefully constructed under controlled conditions, utilizing the best plant-mixed materials. Such cracks do not affect the structural soundness of the wall or flatwork. Our warranty does not cover cracks in concrete. Salt or other de-icing materials used in the first season after pouring of concrete can cause scaling or spalling. Seller suggests occasionally washing down these areas during thaw periods to minimize this damage. Scaling or spalling is not warranted.

16. **Condensation.** If you move into your residence prior to having on the furnace on for one heating season, you may see some condensation in the basement (if applicable). This is caused by moisture laden air striking a cold wall or floor surface on hot, humid days. The foundation of your residence is backfilled with clay or dirt left over from the excavating. This backfill tends to retain small air pockets until all settlement occurs. Although drain tile is installed around the foundation, these air pockets may permit the collection of water next to the foundation and produce minor amount of dampness in the basement corners during the Warranty Period. This dampness will disappear as the settlement of the backfill occurs. This condition and all water leakage of any variety is not covered by this Warranty (unless free flowing water is continuously present).

17. **Sole and Exclusive Warranty.** THE PROVISIONS OF THIS CERTIFICATE OF WARRANTY ARE THE SOLE AND EXCLUSIVE REMEDY AVAILABLE TO PURCHASER(S) AND ARE IN LIEU OF ALL OTHER WARRANTIES OF SELLER OR DEVELOPER, EITHER EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTY OF HABITABILITY OR MAGNUSON-MOSS OR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER IMPLIED WARRANTY APPLICABLE IN THE FUTURE. IN THE EVENT OF RESALE OF THIS SINGLE FAMILY HOME, PURCHASER SHALL INFORM THEIR SUCCESSOR OF THIS WAIVER AND ASSIGN THIS WAIVER TO PURCHASER'S BUYER AND HOLD SELLER HARMLESS IN THE EVENT THAT PURCHASER'S SUCCESSOR IS NOT INFORMED OF AND BOUND BY THIS WAIVER.

18. **Warranty Claim Procedures.** Should any problem which is covered by this warranty arise, you are required to contact the Seller in writing, specifically and in detail describing the problem, sent via certified mail, return receipt requested, to 1645 W FARRAGUT, LLC., c/o Daniel G. Lauer & Associates, P.C., 1424 West Division Street, Chicago, Illinois, 60642. Only Warranty Claims submitted in writing, by certified mail, return receipt requested, shall be recognized as valid.

After expiration of this Warranty period, no verbal agreement will be honored and all warranties of Seller shall then expire, except those separate manufacturers' warranties relating to certain equipment.

AGREED:                                    AGREED:

SPECIMEN

                                           45 W Warranty, LLC.,
                                           Illinois limited liability company

_____        BY: _____
Purchaser                              Seller's Duly Authorized Agent


_____              _____
Purchaser                              Date


_____
Date

DocuSign Envelope ID: 341C1F09-0628-43BB-01DD-B46D3E4FC403

<u>EXHIBIT C</u>

## CHANGE ORDER FORM
### AMENDMENT TO PURCHASE AND SALE AGREEMENT
### 1645 WEST FARRAGUT AVENUE, CHICAGO, ILLINOIS

Change Order #: _____

Agreement Date: _____     Change Order Date: _____

Purchaser: _____

Purchaser: _____

To:     1645 W Farragut, LLC, an Illinois Limited Liability Company, Seller

You are directed to make the following changes to the Agreement:

The original Total Purchase Price was........................................................................... $_____

The net amount of previous Change Orders is.............................................................. $_____

The Total Purchase Price prior to this Change Order is............................................... $_____

The Total Purchase Price will be (Increased) (decreased) by this Change Order by. $_____

The Total Purchase Price Including this Change Order is............................................ $_____

The Contract Time will be (Increased) (decreased) (unchanged) by.......................... (        ) days

The Date of Completion as of the date of this Change Order therefore is...........................

AGREED:                                         AGREED:
                                                1645 W Farragut, LLC,
                                                an Illinois Limited Liability Company

_____     By: _____
Purchaser                                       Seller's Duly Authorized Agent

_____     _____
Purchaser                                       Date

_____
Date

DocuSign Envelope ID: 341C1F99-0528-43BB-91DD-B40D3E4FC403

### EXHIBIT D

### DISCLOSURE OF INFORMATION ON RADON HAZARDS
### (FOR RESIDENTIAL REAL PROPERTY SALES OR PURCHASES)
### 1645 WEST FARRAGUT AVENUE, CHICAGO, ILLINOIS

Property Address 1645 West Farragut Avenue, Chicago, Illinois 60640
Seller's Name: 1645 W Farragut, LLC, an Illinois Limited Liability Company

**Radon Warning Statement**

Every buyer of any interest in residential real property is notified that the property may present exposure to dangerous levels of indoor radon gas that may place the occupants at risk of developing radon-induced lung cancer. Radon, a Class-A human carcinogen, is the leading cause of lung cancer in non-smokers and the second leading cause overall. The Seller of any interest in residential real property is required to provide the buyer with any information on radon test results of the dwelling showing elevated levels of radon in the seller's possession.

The Illinois Emergency Management Agency (IEMA) strongly recommends ALL homebuyers have an indoor radon test performed prior to purchase or taking occupancy, and mitigated if elevated levels are found. Elevated radon concentrations can easily be reduced by a qualified, licensed radon mitigator.

**Seller's Disclosure**

Initial each of the following that applies:

a._____ Elevated radon concentrations (above EPA or IEMA recommended Radon Action Level) are known to be present within the dwelling. (Explain.) _____

b._____ Seller has provided the purchaser with all available records and reports pertaining to elevated radon concentration within the dwelling.

c._____ Seller has no knowledge of elevated radon concentrations in the dwelling.

d._____ Seller has no records or reports pertaining to elevated radon concentrations within the dwelling.

**Purchaser's Acknowledgment**

Initial each of the following that applies:

e._____ Purchaser has received copies of all information listed above.

f._____ Purchaser has received the IEMA approved Radon Disclosure Pamphlet.

**Agent's acknowledgement**

Initial, if applicable:

g._____ Agent has informed the seller of the seller's obligations under Illinois law.

**Certification of Accuracy**

The following parties have reviewed the information above and each party certifies, to the best of his or her knowledge, that the information he or she provided is true and accurate.

_____   5/1/16
Seller                                      Date

_____   _____      _____      _____
Purchaser                   Date                Purchaser            Date

_____   5/2/16
Listing Agent                          Date

DocuSign Envelope ID: 341C1F99-0528-43AB-91DD-B40D3E4FC4D3

1645 West Farragut Avenue
Addendum 1
Material Allowances

- Cabinetry (Kitchen, Wet Bar & 4 Bathrooms) $20K *materials only*
- Appliances (Kitchen & Laundry) $18K *materials only*
- Kitchen/Bathroom Fixtures (7 Faucets, 2 bath/shower, 1 master shower) $4K *materials only*
- Millwork (Doors & Trim) $6.5K *materials only*
- Hardware (cabinet pulls & door handles) $1.5K *materials only*
- Fireplaces (2): $5K *materials only*
- Flooring (Hardwood/Carpet) $20K *materials and labor*
- Tile (3 bathrooms & backsplash) $5K *materials only*
- Countertops (Kitchen, Wet Bar & 4 Bathrooms) $10K *materials and labor*
- Light Fixtures (2 Chandeliers & 3 Pendants) $3K *materials only*
- Garage (20x20 Unfinished w/ Opener) $10K *materials and labor*
- Landscaping (including brick patio) $5K *materials and labor*
- Insulation $5.5K *materials and labor*
- Sinks: $800 *materials only*
- Toilets w/ Seats: $1.5K *materials only*
- Soaking Tub: $1.5K *materials only*
- Exterior Masonry Alterations: $10K + $25K Credit *materials and labor*
- Low Voltage Wiring (Stereo in 6 Rooms + Exterior, 5.1 Surround in 2 Rooms, Telephone Jack in 2 Rooms, Cad5 in 4 Rooms) $1.4K *materials and labor*

*Seller represents that the allowances set forth herein are equivalent to or exceed the costs to Seller of completing the Seller's property at 1651 W. Farragut Avenue, Chicago, IL, and, to the extent any items are not specified herein, the parties should look to 1651 W. Farragut as representative of the quality and type of materials provided for in the allowances.*

DocuSign Envelope ID: 341C1F99-0528-43BB-01DD-B46D3E4FC493

1645 West Farragut Avenue
Addendum #2
List of Customized Features

The following represents a list of the highly customized items which Purchasers have selected and which are included in the purchase price on page 1 of this Contract.

In the event that Purchasers should not close for any reason, including their inability to get a mortgage loan, Seller will use the earnest money to remove or reconfigure or rectify these customizations in order to be able to re-market the Home to a third-party:

1. Configuring Basement as "dog park", with turf, floor drains, separate ventilation, etc.
   Value $ _TBD_

2. Configuring rear bedrooms into a movie room for video gaming (does not include electronics)
   Value $ _TBD_

3. Installation of a dog exercise pool
   Value $ _NA ⟶ Not Part of Scope_

4. Re-facing the front of the building
   Value $ _Buyer Credited $25K Allowance for Work & TBD_