DocuSign Envelope ID: 341C1F99-0528-43BB-91DD-B46D3E4FC493

# 1645 WEST FARRAGUT AVENUE
## SINGLE FAMILY HOME
## PURCHASE AND SALE AGREEMENT

DEVELOPER / SELLER:    1645 W Farragut, an Illinois Limited Liability Company

PURCHASER(S):    Randall Ewing and Yasmany Gomez

HOME ADDRESS: _____ 408 N.E. 8th Avenue, Ft. Lauderdale, FL 33301

WORK ADDRESS: 205 North Michigan Avenue Suite 1950 Chicago, IL 60601-5947

PURCHASER(S) PHONE:    HOME: (312)219-0177 (RE); (954)702-4247 (YG)

**AGREED MODIFICATION OF APRIL 17, 2016 EXECUTED MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 6.1. TO THE EXTENT A SUBJECT IS NOT SPECIFICALLY AND EXPRESSLY ADDRESSED HEREIN, THE PARTIES SHALL REFER TO THE APPLICABLE PROVISION IN THE APRIL 17, 2016 CONTRACT.**

1.  **DESCRIPTION.**    SELLER agrees to sell and Purchaser agrees to purchase the Single Family Home in the City of Chicago, County of Cook, State of Illinois identified above. The address of said Property (the "Property") is 1645 West Farragut, Chicago, IL 60640-2009. The Property, if not already completed, will be constructed in substantial compliance with the plans on file with the City of Chicago Department of Buildings. The following exhibits are attached to this Agreement and are a part thereof: Exhibit A, Upgrade List; Exhibit B, Certificate of Warranty; and Exhibit C, Change Order Form, and Exhibit D, Disclosure of Information on Radon Hazards.

The Total Purchase Price below equals the Base Purchase Price of the Property plus the amount of the Total Upgrades to be purchased. After the date of this Agreement, the Total Purchase Price shall be adjusted by the total amount of all upgrades and changes made, which upgrades and changes shall be requested on the Change Order Form (Exhibit C). As of the date of this Agreement, the Purchase Price of the Property and terms of payment are as follows:

| | | |
|---|---|---|
| Base Purchase Price of Property | $ | 1,175,000.00 |
| Add: Total Upgrades | $ | To be Determined |
| Total Purchase Price (Base plus Total Upgrades) | $ | 1,175,000.00 |
| Less: Initial Earnest Money Paid On This Date | $ | 5,000.00 |
| *BALANCE MUST* be paid within 2 business days of Seller's acceptance | $ | 112,500.00 |
| Balance to be paid at Closing by Cashier's or Title Company check | $ | **1,057,500.00** |

1

DocuSign Envelope ID: 341C1F99-0528-43BB-91DD-B46D3E4FC493

2.     **PURCHASER'S MORTGAGE.**   This Agreement is contingent upon the ability of Purchaser to secure, by **August 15, 2016**, a mortgage commitment for **$940,000.00**, or such lesser sum as Purchaser shall accept, with a rate of interest not to exceed 4.5 %, amortized over 30 years with points/origination charges, if any, of 0%. Purchaser shall pay the usual and customary charges imposed by the lending institution; including but not limited to credit and appraisal fees. Purchaser shall make timely application or applications for and shall make every reasonable effort to obtain such commitment, and shall take no action or omission after the date hereof which would tend to damage Purchaser's creditworthiness or ability to pay such mortgage loan. Purchaser shall provide a copy of said commitment to Seller. If Purchaser is unable to obtain such firm commitment, Purchaser shall notify Seller thereof in writing by 5:00 p.m. on the date set forth immediately above. If Seller is not so notified, it shall be conclusively presumed that Purchaser has secured such commitment or will purchase the Property without mortgage financing. If Seller is so notified, Seller may, at Seller's option, within sixty (60) days after such notice, secure a commitment on behalf of Purchaser on the same terms as above. Purchaser agrees to pay an application fee and to furnish Seller all requested credit information and to sign customary papers relating to the application for securing of said commitment. If Purchaser notifies Seller as aforesaid, and Seller is unable or unwilling to secure such commitment as above provided, this Agreement shall be null and void and the earnest money shall be returned to Purchaser. Purchaser shall be responsible for taking all actions necessary and bear all costs in order to keep said commitment in full force and effect until Closing, including the costs of any interest rate lock and related extensions of such lock. Should Purchaser not close for any reason, not through fault of Seller, including inability to obtain a mortgage and Purchaser has made selections, upgrades and/or change orders, Seller reserves the right to back-charge the earnest money, prior to releasing the balance to Purchaser in order to rectify, if necessary, Purchaser's selections. A party causing delay in the loan approval process shall not have the right to terminate under this paragraph.

3.     **COMPLETION, CLOSING AND TITLE INSURANCE.**  The estimated date of substantial completion of the Property is **October 3, 2016**. Closing of the sale (the "Closing") shall be on such date after the Property has been substantially completed as Seller shall designate by notice to Purchaser provided that, if substantial completion is delayed due to fire, labor disputes, shortages or unavailability of labor, materials or transportation, Acts of God, acts of governmental authorities, weather conditions or any other cause beyond Seller's reasonable control, as determined at Seller's sole discretion, said date shall be extended by the length of such delay. Seller shall not be liable to Purchaser for damages of any kind, including secondary, incidental or consequential damages, resulting from any delay of the Closing resulting from the aforementioned causes. Any dispute between Purchaser and Seller concerning completion shall be arbitrated by the Architect. Further, if a temporary or a permanent Certificate of Occupancy by the City of Chicago is provided to Purchaser, or if a Certificate of Substantial Completion by the Architect is provided to Purchaser, such shall then be conclusive with respect to substantial completion of the Property. Seller shall be entitled to the full Total Purchase Price at Closing. In the event that the Closing shall occur prior to completion of any work, Seller shall not be released from the obligation to perform such work in conformity with this Agreement and to complete any so-called Punchlist items remaining on the date of Closing.

Purchaser acknowledges that title to and possession of the Property prior to Closing is solely in Seller and that Purchaser shall have no right of entry to the Property unless accompanied by Seller's representative as hereinafter described. For liability purposes, Purchaser may not access the Property unless Seller permits same, and it shall be a material default of Purchaser to gain access unaccompanied by Seller's representative. In no event shall Purchaser be permitted to occupy the Property or be given keys thereto until all monies due Seller, including any extras or optional items ordered, have been paid in full to Seller. The Closing, the payment of the balance of the Total Purchase Price, payment of all other sums due from Purchaser and delivery of deed shall be through an agency-escrow closing with Chicago Title Insurance Company as Escrowee, in accordance with a form of escrow agreement consistent with the provisions of this Agreement.

At Seller's expense, Seller will deliver or cause to be delivered to Purchaser or Purchaser's attorney within customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a title commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended coverage by a title

DocuSign Envelope ID: 341C1F99-0528-43BB-91DD-B46D3E4FC493

company licensed to operate in the State of Illinois, issued on or subsequent to the Date of Acceptance, subject only to the items listed in Paragraph 4. The commitment for title insurance furnished by the Seller will be presumptive evidence of good and merchantable title as therein shown, subject only to the exceptions therein stated. If the title commitment discloses any unpermitted exceptions or if the Plat of Survey shows any encroachments or other survey matters that are not acceptable to Purchaser, then Seller shall have said exceptions, survey matters or encroachments removed, or have the title insurer commit to either insure against loss or damage that may result from such exceptions or survey matters or insure against any court-ordered removal of encroachments. If Seller fails to have such exceptions waived or insured prior to Closing, Purchaser may elect to take title as it then is with the right to deduct from the Purchase Price prior encumbrances of a definite or ascertainable amount. Seller shall furnish Purchaser at Closing an Affidavit of Title covering the date of Closing, and shall sign any other customary forms required for the issuance of an ALTA Insurance policy.

4.  **CONVEYANCE.** Seller shall convey or cause to be conveyed to Purchaser or Purchaser's Designated Grantee good and merchantable title to the Real Estate by recordable Warranty Deed, with release of homestead rights (or the appropriate deed if title is in trust or in an estate). Title when conveyed will be good and merchantable, subject only to: covenants, conditions and restrictions of record and building lines and easements, if any, provided they do not interfere with the current use and enjoyment of the Real Estate; general real estate taxes not due and payable at the time of Closing; and Seller's right to enter the Property to complete construction. Seller shall pay the stamp tax required under the Real Estate Transfer Tax Act of the State of Illinois, Cook County, and the City's so-called CTA portion, and Purchaser shall pay the local real estate transfer imposed by the City of Chicago. If Purchasers are married, title shall be conveyed to them in tenancy by the entireties unless Seller is directed otherwise no later than fourteen (14) days prior to Closing.

5.  **PLAT OF SURVEY:** Not less than one (1) Business Day prior to Closing, Seller shall, at Seller's expense, furnish to Buyer or Buyer's attorney a Plat of Survey that conforms to the Minimum Standard of Practice for boundary surveys, is dated not more than six (6) months prior to the date of Closing, and is prepared by a professional land surveyor licensed to practice land surveying under the laws of the State of Illinois. The Plat of Survey shall show visible evidence of improvements, rights of way, easements, use and measurements of all parcel lines. The land surveyor shall set monuments or witness corners at all accessible corners of the land. All such corners shall also be visibly staked or flagged. The Plat of Survey shall include the following statement placed near the professional land surveyor's seal and signature: "This professional service conforms to the current Illinois Minimum Standards for a boundary survey." A Mortgage Inspection, as defined, is not a boundary survey and is not acceptable.

6.  **SELLER REPRESENTATIONS:** Seller's representations contained in this paragraph shall survive the Closing. Seller represents that with respect to the Property that Seller has no knowledge of nor has Seller received any written notice from any association or governmental entity regarding:

    a)  Zoning, building, fire or health code violation that have not been corrected;
    b)  Any pending rezoning;
    c)  Boundary line disputes;
    d)  Any pending condemnation or Eminent Domain proceeding;
    e)  Easements or claims of easements not shown on the public records;
    f)  Any hazardous waste on the Property;
    g)  Any improvements to the Property for which the required initial and final permits were not obtained;
    h)  Any improvements to the Property which were not included in full in the determination of the most recent tax assessment; or
    i)  Any improvements to the Property which are eligible for the home improvement tax exemption.

Seller further represents that:

There is not a pending or unconfirmed special assessment affecting the Property by any association or governmental entity payable by Buyer after the date of Closing. The Property is not located within a Special Assessment Area or Special Service Area, payments for which will not be the obligation of Seller after the year in which the Closing occurs.

3

DocuSign Envelope ID: 341C1F99-0528-43BB-91DD-B46D3E4FC493

All Seller representations shall be deemed re-made as of Closing. If prior to Closing Seller becomes aware of matters that require modification of the representations previously made herein, Seller shall promptly notify Purchaser. If the matters specified in such Notice are not resolved prior to Closing, Buyer may terminate this Contract by notice to Seller and this Contract shall be null and void.

7. **REAL ESTATE TAXES.** All real estate taxes shall be current at closing and shall have been paid by Seller. Seller shall pay all 2015 taxes when due. Seller holds Purchaser harmless from any obligation to pay 2015. The 2016 taxes from January 1, 2016 to the date of Closing, shall be prorated 110% of the most current Assessed Value. Alternatively, Seller reserves the right in its sole discretion to escrow the proration in the event that a tax protest is not completed and issue prorations to Purchaser after the completion of the 2015 protest, and the parties shall prorate the 2016 protest fee. If the amount of the most recent ascertainable full year tax bill reflects a homeowner, senior citizen or other exemption, a senior freeze or senior deferral, then Seller has submitted or will submit in a timely manner all necessary documentation to the appropriate governmental entity, before or after Closing, to preserve said exemption(s). The requirements of this Paragraph shall survive the Closing.

8. **PUNCHLIST INSPECTIONS.** Purchaser shall be entitled to inspect the property, with an Illinois licensed home inspector if Purchaser so chooses. The inspection should be at such time as the property is nearing substantial completion. If Purchaser employs a private home inspection company, the inspector's role is to assist in preparation of the Closing Punchlist, not to create a contingency in the contract. A "Closing Punchlist" of incomplete items shall be prepared, which Closing Punchlist shall be signed by both Purchaser and a representative of Seller. All items on the revised Closing Punchlist shall be completed either prior to Closing or no later than thirty (30) days after Closing. Seller's obligation to complete the items on the Closing Punchlist shall survive the Closing. In the event the inspection under this paragraph reveals a material defect in the central heating system, central cooling system, plumbing and well system, electrical system, roof, walls, windows, doors, ceilings, floors, appliances and foundation, and Seller is unable to resolve any material defects to the reasonable satisfaction of Purchaser, then Purchaser shall have right to terminate the contract.

9. **DEFAULT.** Time is of the essence of this Agreement. In any action with respect to this contract, the Parties are free to pursue any legal remedies at law or in equity. If Purchaser materially defaults on any of the terms and conditions contained in this Purchase and Sale Agreement, then all payments made by Purchaser shall be retained by Seller as liquidated damages, and not as a penalty, and this Agreement shall thereupon become null and void.

10. **SELECTIONS, MATERIALS AND CONSTRUCTION CHANGES.** Purchaser shall select colors, finishes and materials promptly whenever Seller shall give Purchaser the option of such choice. In the event of failure of Purchaser to make selections within fifteen (15) days after being so requested to do so by Seller, Purchaser hereby authorizes Seller to complete the Property with such selections as Seller deems suitable. Purchaser shall make such selections from the samples and on the forms Seller provides; such selections shall be made in writing and shall bind the Purchaser. **SELLER IS NOT BOUND BY ANY SELECTIONS, CHANGE ORDERS AND/OR UPGRADES UNLESS SPECIFICALLY AGREED TO AND SIGNED BY THE SELLER (AS OPPOSED TO SELLER'S AGENTS, REALTOR(S), ETC.), AND SUCH AGREEMENT WILL NOT BE UNREASONABLY WITHHELD.** Seller does not assume any responsibility for grain and color variations in wood, marble, granite, ceramic tile and carpet dye lot variations, or any color variations from existing samples and Purchaser understands that these products will vary and are outside of Seller's control. If any of Purchaser's selections become unavailable, Seller may require Purchaser to make new selections. Seller reserves the right to require that any upgrades or changes, as mutually agreed upon by the parties, shall be paid for by Purchaser's deposit of additional earnest money. Purchaser requests changes to the Standard Specifications by completing the Upgrade List (Exhibit A) at the time of Contract and the Change Order Form (Exhibit C) after execution of this Contract but prior to Closing. Seller reserves the right to require fifty (50%) of the cost of any Change Order to be paid to Seller directly, and to be applied as additional earnest money at the time of Closing.

4

DocuSign Envelope ID: 341C1F99-0528-43BB-91DD-B46D3E4FC493

11. **ALTERNATIVE MATERIALS.** In the event of the inability of Seller to obtain certain materials, Seller shall have the right to substitute other materials or brand names of equal quality, utility or color. Seller reserves the right to make such changes in construction as may be required by material shortages or such other situations as may, in Seller's judgment, be necessary or desirable.

12. **BROKER.** Purchaser warrants that no brokers, other than those set forth below, were involved in this transaction, and agrees to indemnify and hold Seller harmless from any claim asserted by any other broker.

Listing Broker::

Erik Carrier
D'Aprile Properties
1732 W. Hubbard
Chicago, IL 60622
(773) 234-9524
ecarrier@redstarpropertymanagment.com

Cooperating Broker:

Name Tim Zielonka

Firm Redfin

Address ___1200 N Ashland #500___
         ___Chicago, IL 60622___

Phone 773 789-7349
Facsimile_____

E-mail tim.zielonka@redfin.com

13. **MISCELLANEOUS PROVISIONS.**

    a.    Mediation. In the event of a dispute between the parties hereto with respect to the property, and expressly prior to any litigation involving any party to this Purchase and Sales Agreement, the purchased home, and/or the parties' obligations hereunder, the parties will engage a mediator from a firm offering alternative dispute resolution services in Chicago.

    b.    Partial Invalidity. In the event that any term or provision of this contract shall be held to be illegal, unenforceable or inoperative as a matter of law, the remaining terms and provisions shall not be affected thereby, but each such term shall remain valid and shall remain in full force and effect.

    c.    Waiver. No covenant, term or condition of this contract shall be deemed waived unless such waiver is in writing and signed by the party and no alleged failure of performance shall relieve the other party of full performance under this contract.

    d.    Recording. Purchaser shall not record this Agreement or any memorandum thereof, and any such recording will constitute a default under this Agreement by Purchaser.

    e.    Errors. All Parties agree, if requested, to fully cooperate in correcting any errors as may appear in this Purchase and Sale Agreement.

    f.    Request for Taxpayer Identification Number and Certification (W-9). In lieu of a separate W-9 form (standard Rider 5 from the Chicago Association of Realtors), Purchaser must enter Purchaser's social security number below, and by signing this Agreement certifies the following:

Certification: Under penalties of perjury, I certify that: (1) The Number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be assigned to me), and (2) I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding (does not apply to real estate transactions, mortgage interest paid, the acquisition or abandonment of secured property,

DocuSign Envelope ID: 341C1F99-0528-43BB-91DD-B46D3E4FC493

contributions to an individual retirement arrangement (IRA), and payments and payments other than interest and dividends). Purchaser's social security number for W-9 purposes is:

SSN: XXXXXXXXX___6949        Name:   Randall Ewing
      XXXXXXXXXXX3654                  Yasmany Gomez

g.    Approximate Square Footage.        Purchaser understands and acknowledges that the square footage calculations of any Property are approximate and Seller makes no guarantee as to the exact square footage of any Property.

h.    Sales Brochure, Collateral Material and Advertising.        Any information illustrated in the Sales Office, if any, or in any brochures, renderings, and advertisements, if any, may not conform to actual plans and specifications and may be prepared and presented for dramatic or illustrative purposes only. Seller makes no representations regarding such materials and Purchaser should base its decision to purchase solely on its own investigation of the Property. **PURCHASER UNDERSTANDS AND ACKNOWLEDGES THAT SELLER ASSUMES NO RESPONSIBILITY FOR ANY ERRORS, OMMISSIONS OR MISREPRESENTATIONS MADE BY BROKER(S), OR SELLER'S AGENT(S) IN ANY SALES MATERIALS SUCH AS ADVERTISING BROCHURES, MARKETING MATERIALS, MULTIPLE LISTING SERVICE ETC., OR THROUGH VERBAL COMMUNICATION(S). One of the Seller's Members holds a broker's license in the state of Illinois.**

i.    Digital Signatures.    A facsimile, scanned version or DocuSign transmission signed by the Parties hereto, or signed in counterparts, shall at all times be considered by the Parties to be the same as an original. No Party shall raise the defense of fax transmission to the validity of this Agreement, or to any Riders or Amendments thereto.

j.    Material Destruction.    If, prior to Closing, the Property shall be destroyed or materially damaged by fire or other casualty, this Purchase and Sale Agreement shall, at the option of either the Seller or the Purchaser, exercised by notice within thirty (30) days after such destruction or damage, be null and void and any earnest money deposited hereunder, with all interest earned thereon, shall be refunded to Purchaser. If neither party elects to terminate this Purchase and Sale Agreement as aforesaid, then neither party shall be relieved of their duties and obligations hereunder, unless said damage to the Property is not restored or repaired by Seller to the original condition within three (3) months from the date of said fire or other casualty, in which event Purchaser shall have the right to terminate this Purchase and Sale Agreement by notice to Seller within ten (10) days after the expiration of said three (3) month period. In the event of damage other than material damage, Seller agrees to correct said damage prior to Closing. Closing shall be delayed a reasonable period of time to allow Seller to correct said damage.

14.    **NOTICES.**    All notices and demands herein required shall be in writing and shall be deemed sufficient if delivered by hand to the addressee for whom it is intended as noted on the face of this agreement or on the date of postmark by United States registered or certified mail, return receipt requested. Notices may be sent by facsimile transmission to Seller's Attorney and Purchaser's Attorney without the need for proof of transmission to be sent by mail.

15.    **ASSIGNMENT.**    This Agreement shall be binding upon, inure to the benefit of, and be enforceable by the parties hereto, and their respective heirs, devisees, successors, personal representatives and assigns, provided that Purchaser shall make no assignment of this Agreement or of any Purchaser's rights hereunder without Seller's express written consent.

16.    **PURCHASER'S STATUS.**    Purchaser represents and warrants there is nothing in Purchaser's status which could or might preclude or prevent Purchaser from consummating this transaction as herein set forth.

17.    **WARRANTY.**    Seller shall repair, correct, or replace any item that is covered by the Warranty for a period of one (1) year only from the date of conveyance and Closing, provided Seller is notified in writing via certified mail,

DocuSign Envelope ID: 341C1F99-0528-43BB-91DD-B46D3E4FC493

return receipt requested, of the warranty claim, as specified in the Certificate of Warranty to be provided to Purchaser at Closing, a specimen copy of which is attached as Exhibit B. All manufacturers' warranties for the appliances, roof, mechanical components and other separately warranted items shall be assigned to Purchaser at the time of Closing. Seller does not assume the responsibility for any secondary, Incidental or consequential damage. Other specific warranty provisions are found in the specimen Certificate of Warranty (Exhibit B).

**SELLER DOES NOT WARRANT ANY ITEM CHANGED, ADDED OR RECONFIGURED BY PURCHASER(S) AFTER CLOSING.**

18. **ENTIRE AGREEMENT.** This Agreement, with all riders and exhibits attached hereto, which are hereby Incorporated herein and made a part hereof, constitute the entire agreement between the parties. **NO REPRESENTATIONS, WARRANTIES, UNDERTAKING OR PROMISES, WHETHER ORAL, EXPRESSED OR IMPLIED, HAVE BEEN MADE BY SELLER OR ANY EMPLOYEE, SALESPERSON OR AGENT OF SELLER, TO INDUCE PURCHASER TO ACT, OR SHALL BE CONSIDERED A PART OF THIS TRANSACTION, UNLESS OTHERWISE EXPRESSLY STATED HEREIN.** No amendment, modification or supplement to this Agreement shall be effective unless it is in writing and signed by both parties.

19. **FIRM OFFER.** This Agreement, once executed by Purchaser, shall be considered a firm and irrevocable offer by Purchaser to purchase the Property, which offer shall remain open in consideration of the Seller reserving the Property for Purchaser for a period of seven (7) days from the date hereof, and may be accepted by Seller at any time during such period.

20. **NO RESERVATION.** The submission by Seller of this Purchase Agreement to a prospective purchaser for examination does not constitute an offer by Seller to sell, or a reservation of or an option for the Property. This instrument shall not become a contract until executed and delivered by Purchaser and Seller in the manner set forth herein.

21. **MODEL.** In all cases, where the amenities and/or the level of finishes are not set forth herein, the parties shall look to the property at 1651 West Farragut Avenue as a model for such amenities and finishes.

22. **ADDENDUM #1.** Attached hereto and made a part hereof is Addendum #1, Material Allowances for this Home.

23. **ADDENDUM #2.** Attached hereto and made a part hereof is Addendum #2, a list of customized features for which Purchasers' earnest money will be used (in the event Purchasers do not close for any reason, including their inability to obtain a mortgage) to rectify the customized feature.

AGREED:

AGREED:
**1645 W Farragut, LLC,**
an Illinois Limited Liability Company

Purchaser _____

By _____
Sellers' Duly Authorized Agent

Purchaser _____

5/2/16
Date of Seller's Acceptance

7

DocuSign Envelope ID: 341C1F99-0528-43BB-91DD-B46D3E4FC493

## EXHIBIT A
### 1645 WEST FARRAGUT, CHICAGO, ILLINOIS

Seller's Specifications shall be upgraded with a cost as set forth next to each upgrade below, which cost represents the *differential* or the net amount due over the cost of the base model or item, determined at Seller's cost. The Total Upgrade amount, below, shall be added to Base Purchase Price. The Total Upgrade amount is due in full no later than Closing.

| ITEM | | UPGRADE | COST |
|------|------|---------|------|
| 1. | Fencing | | $ |
| 2. | Cabinets | | $ |
| 3. | Appliances | See Addendum #2 | $ |
| 4. | Paint | | $ |
| 5. | Landscaping | | $ |
| 6. | Garage | | $ |
| 7. | Electrical Fixtures | | $ |
| 8. | Hardwood Flooring | | $ |
| 9. | Plumbing | | $ |
| 10. | Other Upgrade | | $ |

TOTAL UPGRADES (from this sheet)    $ _____

TOTAL PURCHASE PRICE
(Base Purchase Price plus this sheet)    $   **See Addendum #2**

AGREED:

AGREED:
1645 W Farragut, LLC,
an Illinois Limited Liability Company

_____
Purchaser

BY: _____
Seller's Duly Authorized Agent

_____
Purchaser

_____
Date

_____
Date

*NOTE: THIS IS AN EXAMPLE OF THE WARRANTY ONLY-*

*(ORIGINAL TO BE SIGNED AT CLOSING)*

**EXHIBIT B**
**CERTIFICATE OF WARRANTY**
**1645 WEST FARRAGUT, CHICAGO, ILLINOIS**

THIS CERTIFICATE OF WARRANTY, for valuable consideration acknowledged from one party to the other, is a part of the Real Estate Purchase and Sales Agreement dated April 30, 2016 by 1645 W Farragut, LLC, an Illinois Limited Liability Company, as Seller and Randall Ewing and Yasmany Gomez, as Purchaser(s) of 1645 W. Farragut, Chicago, IL 60640.

In addition to any other rights and privileges which you may have under any warranties of various manufacturers, equipment suppliers and others who have supplied materials used in the construction of your home, SELLER WARRANTS the following for a period of one year after closing, unless a shorter period is hereinafter specified:

1.       Seller will cause to be corrected any defect due to faulty construction and/or defective materials brought to Seller's attention by written notice for one (1) year from the date of Closing, except as otherwise stated herein.

2.       Seller does <u>not</u> assume responsibility for any secondary, Incidental, or consequential damage caused by or due to any defect. No steps taken by Seller to correct defects shall act to extend the warranty period beyond the initial term of one year. The warranty is applicable only to the matters warranted herein, and only if the noted defects are reported in writing before the end of the warranty year.

3.       For a period of thirty (30) days only from Closing, the following items will be free from defects in materials and workmanship: hardware, electric switches, outlets, light fixtures, vanities and kitchen cabinets. All claims for correction of defects in these items must be filed in writing with Seller not later than thirty (30) days after Closing.

## CERTAIN CONDITIONS NOT COVERED BY WARRANTY

4.       Seller does not warrant against the normal effects of settlement, expansion, contraction or warping of materials that may occur in walls, floors, ceilings, doors, windows, etc. Nail pops and cracks in the drywall will occur as the result of the natural shrinkage and drying out of the framing materials.

5.       Seller does <u>not</u> warrant against smudges in painted surfaces, plastic laminates, paneling, chipping of porcelain in any item of equipment, chipping or cracking of tile, cracking of grout, torn screens or broken glass, or glass blocks, spots or stains on flooring readily visible to the human eye, stains or marks on granite or marble countertops, which are not noted for correction at the time of final inspection by Purchaser before Closing, and are thus excluded from this warranty.

6.       Seller will <u>not</u> warrant against cracking or scaling of the concrete flatwork unless the crack exceeds 1/4 Inch, and Seller is not able to warranty pop-outs of concrete aggregate whatsoever. Cracks of foundation walls, if any, will be repaired only if infiltration of free flowing water exists.

7.       This warranty does <u>not</u> cover ordinary wear and tear, Purchaser's misuse, neglect or general maintenance connected with home ownership.

8.       Seller does not warrant and assumes no responsibility for the following:

a.    defects which are the result of characteristics common to material used;

b.    damage, loss or injury caused in any way by Acts of God, including flash floods;

c.    damage, loss or injury caused in any way by back-up or overflowing of the City of Chicago sewer system;

d.    damage, loss or injury caused in any way by the Property Owner's lack of regular maintenance.

9.    This warranty terminates if the property is sold, or ceases to be occupied by the original purchaser to whom this warranty is issued. This warranty terminates as to any item changed, repaired or replaced by any persons other than the Seller or Seller's authorized agents.

10.    The provisions of this warranty shall not apply if there is any sum owed to Seller, unless such sum is the subject of a properly executed escrow agreement. If the sum in escrow is not promptly released after Seller's substantial completion of the items covered by said escrow agreement, then this Warranty is likewise voided. The Warranty does not cover any condition which existed on the date of closing and which was not made part of a so-called "Punchlist" prior to closing. All such unnoted conditions are considered to be Amerged into the deed@ for the Property.

11.    <u>Heating and Cooling.</u>    In the first winter and summer, you may find that certain rooms are too warm and others are too cool. You must adjust the air flow by regulating the dampers on the heat registers. For seasonal changes, areas farthest from the thermostat location will vary in temperature from the exact setting on the dial The amount of sunlight to a specific room will also affect its temperature. As a general rule, never set your thermostat below 55 degrees. The humidifier must be set at the proper level according to the instructions which accompany the unit/controls. Improper settings will result in abnormal shrinkage of wood trim and flooring, while too high of a setting may result in condensation and possible water damage.

12.    <u>Appliances.</u>    All appliances have been carefully installed. The instruction pamphlets supplied by the manufacturer should be read for proper operation. As with any piece of equipment, defects may occasionally arise when the appliance is first used. All appliances are purchased with factory warranties. The term of any manufacturer's warranty commences at the time Seller purchases any such appliance or item of equipment from the supplier thereof. No action on the part of Seller shall be deemed to extend or modify the terms of any such manufacturers' warranty or warranties. All warranty cards have been delivered to the Purchaser. AS TO THESE ITEMS AND AS TO ANY OTHER CONSUMER PRODUCT (AS THAT TERM MAY BE DEFINED UNDER APPLICABLE FEDERAL AND STATE LAWS) WHICH MAY BE CONTAINED IN THE PURCHASED HOME, SELLER NEITHER MAKES NOR ADOPTS ANY WARRANTY OF ANY NATURE REGARDING SUCH APPLIANCES, FIXTURES, HEATING AND AIR CONDITIONING SYSTEMS, HOT WATER HEATERS AND OTHER CONSUMER PRODUCTS.

13.    <u>Roof.</u>    The new roof and roof flashing are to be free from leaks, except where such conditions are caused by acts or circumstances beyond Seller's control or by Purchaser's misuse. A separate roof warranty is available from the roofing contractor in favor of the owner which covers the roofing material.

14.    <u>Plumbing.</u>    The plumbing system is to be in proper working order and free from defects in workmanship and material. Failures caused by the negligence of Purchaser, or the failure to keep foreign material out of the system are excluded from this warranty. The home has a large hot water heater and the time that it takes for your water to get hot is directly related to the distance between the plumbing fixture and the hot water heater. Seller will repair dripping faucets and make bath fixture adjustments for a period of ninety (90) days only from the date of Closing.

15.    <u>Concrete Slabs, Concrete Floors, and Mortar Joints.</u>    Occasionally, due to shrinkage and/or expansion and contraction, an expected physical characteristic of concrete, small cracks may appear in concrete slabs. The concrete slabs are carefully constructed under controlled conditions, utilizing the best plant-mixed materials. Such cracks do not affect the structural soundness of the wall or flatwork. Our warranty does not cover cracks in concrete. Salt or other de-icing materials used in the first season after pouring of concrete can cause scaling or spalling. Seller suggests occasionally washing down these areas during thaw periods to minimize this damage. Scaling or spalling is not warranted.

16.     Condensation.     If you move into your residence prior to having on the furnace on for one heating season, you may see some condensation in the basement (if applicable). This is caused by moisture laden air striking a cold wall or floor surface on hot, humid days. The foundation of your residence is backfilled with clay or dirt left over from the excavating. This backfill tends to retain small air pockets until all settlement occurs. Although drain tile is installed around the foundation, these air pockets may permit the collection of water next to the foundation and produce minor amount of dampness in the basement corners during the Warranty Period. This dampness will disappear as the settlement of the backfill occurs. This condition and all water leakage of any variety is not covered by this Warranty (unless free flowing water is continuously present).

17.     Sole and Exclusive Warranty.     THE PROVISIONS OF THIS CERTIFICATE OF WARRANTY ARE THE SOLE AND EXCLUSIVE REMEDY AVAILABLE TO PURCHASER(S) AND ARE IN LIEU OF ALL OTHER WARRANTIES OF SELLER OR DEVELOPER, EITHER EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTY OF HABITABILITY OR MAGNUSON-MOSS OR MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER IMPLIED WARRANTY APPLICABLE IN THE FUTURE. IN THE EVENT OF RESALE OF THIS SINGLE FAMILY HOME, PURCHASER SHALL INFORM THEIR SUCCESSOR OF THIS WAIVER AND ASSIGN THIS WAIVER TO PURCHASER'S BUYER AND HOLD SELLER HARMLESS IN THE EVENT THAT PURCHASER'S SUCCESSOR IS NOT INFORMED OF AND BOUND BY THIS WAIVER.

18.     Warranty Claim Procedures.     Should any problem which is covered by this warranty arise, you are required to contact the Seller in writing, specifically and in detail describing the problem, sent via certified mail, return receipt requested, to 1645 W FARRAGUT, LLC., c/o Daniel G. Lauer & Associates, P.C., 1424 West Division Street, Chicago, Illinois, 60642. Only Warranty Claims submitted in writing, by certified mail, return receipt requested, shall be recognized as valid.

        After expiration of this Warranty period, no verbal agreement will be honored and all warranties of Seller shall then expire, except those separate manufacturers' warranties relating to certain equipment.

AGREED:                                              AGREED:
                                                     1645 W Farragut, LLC,
                                                     an Illinois Limited Liability Company

_____      BY: _____
Purchaser                                            Seller's Duly Authorized Agent


_____      _____
Purchaser                                            Date


_____
Date

DocuSign Envelope ID: 341C1F99-0528-43BB-91DD-B46D3E4FC493

EXHIBIT C

CHANGE ORDER FORM
AMENDMENT TO PURCHASE AND SALE AGREEMENT
1645 WEST FARRAGUT AVENUE, CHICAGO, ILLINOIS

Change Order #: _____

Agreement Date: _____          Change Order Date: _____

Purchaser: _____

Purchaser: _____

To:        1645 W Farragut, LLC, an Illinois Limited Liability Company, Seller

           You are directed to make the following changes to the Agreement:

The original Total Purchase Price was....................................................... $_____

The net amount of previous Change Orders is............................................ $_____

The Total Purchase Price prior to this Change Order is.............................. $_____

The Total Purchase Price will be (Increased) (decreased) by this Change Order by.. $_____

The Total Purchase Price including this Change Order is............................ $_____

The Contract Time will be (Increased) (decreased) (unchanged) by............................. (      ) days

The Date of Completion as of the date of this Change Order therefore is...................... _____

AGREED:                                    AGREED:
                                           1645 W Farragut, LLC,
                                           an Illinois Limited Liability Company

_____                  By:_____
Purchaser                                      Seller's Duly Authorized Agent


_____                  _____
Purchaser                                  Date


_____
Date

DocuSign Envelope ID: 341C1F99-0528-43BB-91DD-B46D3E4FC493

EXHIBIT D

**DISCLOSURE OF INFORMATION ON RADON HAZARDS**
**(FOR RESIDENTIAL REAL PROPERTY SALES OR PURCHASES)**
**1645 WEST FARRAGUT AVENUE, CHICAGO, ILLINOIS**

Property Address 1645 West Farragut Avenue, Chicago, Illinois 60640
Seller's Name: 1645 W Farragut, LLC, an Illinois Limited Liability Company

**Radon Warning Statement**

Every buyer of any interest in residential real property is notified that the property may present exposure to dangerous levels of indoor radon gas that may place the occupants at risk of developing radon-induced lung cancer. Radon, a Class-A human carcinogen, is the leading cause of lung cancer in non-smokers and the second leading cause overall. The Seller of any interest in residential real property is required to provide the buyer with any information on radon test results of the dwelling showing elevated levels of radon in the seller's possession.

The Illinois Emergency Management Agency (IEMA) strongly recommends ALL homebuyers have an indoor radon test performed prior to purchase or taking occupancy, and mitigated if elevated levels are found. Elevated radon concentrations can easily be reduced by a qualified, licensed radon mitigator.

**Seller's Disclosure**

Initial each of the following that applies:

a._____ Elevated radon concentrations (above EPA or IEMA recommended Radon Action Level) are known to be present within the dwelling. (Explain.)_____

_____

b._____ Seller has provided the purchaser with all available records and reports pertaining to elevated radon concentration within the dwelling.

c._____ Seller has no knowledge of elevated radon concentrations in the dwelling.

d._____ Seller has no records or reports pertaining to elevated radon concentrations within the dwelling.

**Purchaser's Acknowledgment**

Initial each of the following that applies:

e._____ Purchaser has received copies of all information listed above.

f._____ Purchaser has received the IEMA approved Radon Disclosure Pamphlet.

**Agent's acknowledgement**

Initial, if applicable:

g._____ Agent has informed the seller of the seller's obligations under Illinois law.

**Certification of Accuracy**

The following parties have reviewed the information above and each party certifies, to the best of his or her knowledge, that the information he or she provided is true and accurate.

_____  5/2/16
Seller                            Date

_____  _____  _____  _____
Purchaser                       Date                Purchaser                     Date

_____  5/2/16
Listing Agent                Date

DocuSign Envelope ID: 341C1F99-0528-43BB-91DD-B46D3E4FC493

1645 West Farragut Avenue
Addendum 1
Material Allowances

- Cabinetry (Kitchen, Wet Bar & 4 Bathrooms) $20K *materials only*
- Appliances (Kitchen & Laundry) $18K *materials only*
- Kitchen/Bathroom Fixtures (7 Faucets, 2 bath/shower, 1 master shower) $4K materials only
- Millwork (Doors & Trim) $6.5K *materials only*
- Hardware (cabinet pulls & door handles) $1.5K *materials only*
- Fireplaces (2): $5K *materials only*
- Flooring (Hardwood/Carpet) $20K *materials and labor*
- Tile (3 bathrooms & backsplash) $5K *materials only*
- Countertops (Kitchen, Wet Bar & 4 Bathrooms) $10K *materials and labor*
- Light Fixtures (2 Chandeliers & 3 Pendants:  $3K *materials only*
- Garage (20x20 Unfinished w/ Opener) $10K *materials and labor*
- Landscaping (including brick patio) $5K *materials and labor*
- Insulation $5.5K *materials and labor*
- Sinks: $800 *materials only*
- Toilets w/ Seats: $1.5K *materials only*
- Soaking Tub: $1.5K *materials only*
- Exterior Masonry Alterations: $10K + $25K Credit *materials and labor*
- Low Voltage Wiring (Stereo in 6 Rooms + Exterior, 5.1 Surround in 2 Rooms, Telephone Jack in 2 Rooms, Cad5 in 4 Rooms) $1.4K *materials and labor*

*Seller represents that the allowances set forth herein are equivalent to or exceed the costs to Seller of completing the Seller's property at 1651 W. Farragut Avenue, Chicago, IL, and, to the extent any items are not specified herein, the parties should look to 1651 W. Farragut as representative of the quality and type of materials provided for in the allowances.*

DocuSign Envelope ID: 341C1F99-0528-43BB-91DD-B46D3E4FC493

1645 West Farragut Avenue
Addendum #2
List of Customized Features

The following represents a list of the highly customized items which Purchasers have selected and which are included in the purchase price on page 1 of this Contract.

In the event that Purchasers should not close for any reason, including their inability to get a mortgage loan, Seller will use the earnest money to remove or reconfigure or rectify these customizations in order to be able to re-market the Home to a third-party:

1. Configuring Basement as "dog park", with turf, floor drains, separate ventilation, etc.
   Value $ _TBD GL_

2. Configuring rear bedrooms into a movie room for video gaming (does not include electronics)
   Value $ _TBD GL_

3. Installation of a dog exercise pool
   Value $ _NA → Not Part of Scope GL_

4. Re-facing the front of the building
   Value $ _Buyer Credited $25K Allowance for Work_
   _↳ TBD GL_