UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RANDALL EWING and YASMANY GOMEZ, | ) ) ) |
| Plaintiffs, | ) Case No. 16-cv-9930 ) ) Judge Sharon Johnson Coleman |
| v. | ) ) |
| 1645 W. FARRAGUT, LLC, | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

The plaintiffs, Randall Ewing and Yasmany Gomez, brought this action against defendant 1645 W. Farragut, LLC ("Farragut") based on a failed agreement to modify and purchase the property located at 1645 West Farragut Avenue in Chicago, Illinois. Defendants subsequently filed a counterclaim against Ewing and Gomez, asserting a claim for breach of contract and seeking liquidated damages or, alternatively, actual damages. Ewing and Gomez now move this Court to dismiss that counterclaim for failure to state a claim. For the reasons set forth herein, that motion [39] is granted in part and denied in part.

**Background**

The following facts are taken from the counterclaim and are accepted as true for the purpose of ruling on the present motion. Farragut is the owner of the property located at 1645 West Farragut Avenue, which Farragut was renovating to market and sell. On April 17, 2016, the parties executed a written contract in which Ewing and Gomez agreed to purchase the property for $1,175,000.00.

Following the execution of the contract, Ewing, Gomez, and Farragut discussed several possible alterations to the property. On May 2, 2016, the parties modified the April 17, 2016 contract (the "Modification"). The Modification, which identified the "Purchaser(s) as "Randall Ewing and Yasmany Gomez," provided in pertinent part that:

> This Agreement is contingent upon the ability of Purchaser to secure, by August 15, 2016, a mortgage commitment for $940,000.00, or such lesser sum as Purchaser shall accept . . . . Purchaser shall make timely application or applications for and shall make every reasonable effort to obtain such commitment, and shall take no action or omission after the date hereof which would tend to damage Purchaser's creditworthiness or ability to pay such mortgage loan. Purchaser shall provide a copy of said commitment to Seller. If Purchaser is unable to obtain such firm commitment, Purchaser shall notify Seller thereof in writing by 5:00 p.m. on the date set forth immediately above. . . . If Seller is so notified, Seller may, at Seller's option, within sixty (60) days after such notice, secure a commitment on behalf of Purchaser on the same terms as above. Purchaser agrees to pay an application fee and to furnish Seller all requested credit information and to sign customary papers relating to the application for securing of said commitment. . . . Should Purchaser not close for any reason, not through fault of Seller, including inability to obtain a mortgage and Purchaser has made selections, upgrades and/or change orders, Seller reserves the right to back-charge the earnest money, prior to releasing the balance to Purchaser in order to rectify, if necessary, Purchaser's selections. A party causing delay in the loan approval process shall not have the right to terminate under this paragraph.

The Modification also contained a default provision providing that:

> Time is of the essence of this Agreement. In any action with respect to this contract, the Parties are free to pursue any legal remedies at law or in equity. If Purchaser materially defaults on any of the terms and conditions contained in this Purchase and Sale Agreement, then all payments made by Purchaser shall be retained by Seller as liquidated damages, and not as a penalty, and this Agreement shall thereupon become null and void.

On August 15, 2016, Ewing and Gomez informed Farragut that they were unable to obtain a financing commitment. Farragut subsequently sent notice that it was exercising its contractual right to obtain financing. Farragut provided Ewing and Gomez with contact information for four

mortgage brokers. One of those brokers informed Ewing that it could provide him with a loan in his name only (due to Gomez's credit score), but that the title to the property could name both him and Gomez. Ewing declined to obtain this loan and, receiving no further offers, sent Farragut formal notice to cancel the contract under the mortgage contingency clause. Farragut, in turn, rejected this attempt to cancel the contract and declared Ewing and Gomez in default.

Gomez and Ewing filed suit against Farragut, asserting that Farragut had made certain fraudulent misrepresentations, or, alternatively, that the parties had been mistaken regarding Farragut's ability to modify the house. Farragut, in turn, filed the present counterclaim alleging that Ewing and Gomez breached the contract by failing to seek financing in good faith.

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. The allegations must contain sufficient factual material to raise a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although Rule 8 does not require a plaintiff to plead particularized facts, the complaint must contain factual "allegations that raise a right to relief above the speculative level." *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011). Put differently, Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), *see also* Fed. R. Civ. P. 8(a). When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012).

**Discussion**

Ewing and Gomez first contend that the Modification does not allow Farragut's claim for liquidated damages. The Modification's default provision provides that if the Purchaser defaults "all

3

payments made by Purchaser shall be retained by Seller as liquidated damages, and not as a penalty." Although the modification does not define "payments," there is nothing to suggest that it does not encompass earnest payments. Ewing and Gomez, however, assert that the default provision is inconsistent with the mortgage provision, which provides that "[s]hould Purchaser not close for any reason, not through fault of Seller, including inability to obtain a mortgage and Purchaser has made selections, upgrades and/or change orders, Seller reserves the right to back-charge the earnest money, prior to releasing the balance to Purchaser in order to rectify, if necessary, Purchaser's selections." The Court agrees that these provisions seemingly conflict. The mortgage provision, however, governs a situation where the Purchaser fails to close for any reason, while the default provision governs a situation where the purchaser defaults on a term or provision of the contract. Here, it is alleged that Ewing and Gomez defaulted by, among other things, rejecting available financing offers. In this case, the latter, more specific provision governs. *Aeroground, Inc. v. CenterPoint Properties Trust*, 738 F.3d 810, 813 (7th Cir. 2013). The mortgage provision therefore does not preclude the application of the default provision.

Ewing and Gomez next contend that the liquidated damages provision is an unenforceable penalty clause. The determination of whether a contractual provision for damages is a valid liquidated damages provision or a penalty clause is a question of law. *Grossinger Motorcorp, Inc. v. Am. Nat. Bank and Trust Co.*, 607 N.E.2d 1337, 1345, 240 Ill.App.3d 737 (1992). "In Illinois, courts will generally find a liquidated damages provision to be valid and enforceable in a real estate contract, when: (1) the parties intended to agree in advance to the settlement of damages that might arise from the breach; (2) the amount of liquidated damages was reasonable at the time of contracting, bearing some relation to the damages which might be sustained; and (3) actual damages would be uncertain in amount and difficult to prove." *Id.* at 1346. The damages must be a specified amount for a specific breach, and not a penalty meant to punish for nonperformance or as a means to secure

4

performance. *Id.* The party challenging the enforceability of a liquidated damages provision bears the burden of proof to establish that the clause is actually an unenforceable penalty. *First Nat'l Bank v. Atl. Tele-Network Co.*, 946 F.2d 516, 522 (7th Cir. 1991).

The Modification's default provision provides that "[i]n any action with respect to this contract, the Parties are free to pursue any legal remedies at law or in equity." This reservation of the right to seek monetary damages establishes that the parties did not have the mutual intention to stipulate in advance to a fixed amount of liquidated damages. *Grossinger*, 607 N.E.2d at 1346. The liquidated damages provision's lack of proportionality further supports this interpretation. *See Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1290 (7th Cir. 1985) ("When a contract specifies a single sum in damages for any and all breaches even though it is apparent that all are not of the same gravity, the specification is not a reasonable effort to estimate damages; and when in addition the fixed sum greatly exceeds the actual damages likely to be inflicted by a minor breach, its character as a penalty becomes unmistakable."). Accordingly, the liquidated damages provision is a penalty and not as an agreed-in-advance settlement of the damages that might result from a breach of contract. *Id.* This Court therefore holds that the liquidated damages provision is unenforceable.

Ewing and Gomez further contend that the allegations fail to state a claim for breach of contract. Ewing and Gomez do not controvert Farragut's allegations, but instead argue that, as a matter of law, the facts alleged are incapable of establishing a breach of contract given the contractual language before this Court. Rather than establishing the legal viability of its claims, Farragut conclusory asserts that it has satisfied federal pleading requirements and that whether or not a breach of contract occurred is a factual question.

The interpretation of an unambiguous contract is a question of law that can be decided at the motion to dismiss stage. *Chiurato v. Dayton Estates Dam & Water Co.*, 82 N.E.3d 789, 797, 2017 IL App (3d) 160102. Nevertheless, this Court agrees with Farragut that its breach of contract claims

5

do turn on factual questions that are incapable of resolution at this stage in the proceeding. Although Ewing and Gomez contend that the Modification did not require Ewing to acquire financing independent of Gomez, the Modification's use of the term "Purchaser" is potentially ambiguous, especially given the allegation that Ewing represented that he could or would obtain financing in his own name prior to entering into the contract. Similarly, Ewing and Gomez's arguments concerning consideration and the materiality of the alleged breaches rest on assumptions and require factual support which is not presently before this Court. This Court therefore holds that Farragut has adequately alleged facts which may give rise to its claim for actual damages.

**Conclusion**

For the foregoing reasons, Ewing and Gomez's motion to dismiss Farragut's counter-claim is granted with respect to Farragut's breach of contract counterclaim for liquidated damages (Count I) but denied with respect to Farragut's breach of contract counterclaim for contract damages (Count II).

SO ORDERED.

_____
Sharon Johnson Coleman
United States District Court Judge

DATED: November 29, 2017