## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **RANDALL EWING and**<br>**YASMANY GOMEZ** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:16-cv-09930** |
| | ) | |
| **1645 W. FARRAGUT, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTIONS IN LIMINE</u>

**NOW COME**S Defendant, 1645 W. Farragut, LLC ("1645"), by and through its counsel of record, Grogan, Hesse & Uditsky PC, and submit this Memorandum of Law in support of its Motion in Limine. Defendant asserts that certain matters should not be referred to in any manner at trial absent a party who seeks to present evidence related to the matter after first obtaining the Court's permission.

1. **Bar any reference to Plaintiffs' Motion for Summary Judgment and the Court's Decision with respect to such Motion.**

   Primarily for the purposes of preserving issues for a potential appeal: in this matter, on July 31, 2019, the Court denied both parties' Motions for Summary Judgment as to Plaintiffs' breach of contract claim and Defendant's breach of contract counterclaim. The Court granted Plaintiffs' summary judgment for Plaintiffs' claims for fraud and violation of the Illinois Consumer Fraud Act ("ICFA"). 1645, via previous counsel, failed to file a statement of material facts or respond to Plaintiffs' statement of material facts. Accordingly, the court noted that "all of those facts set forth in the Plaintiff's Local Rule 56.1(a)(3) statement are accepted as true for the purpose of the present motion." Included in those facts were the following disputed contentions that affected the Court's decision:

1

- Carrier told plaintiff's real agent that all of the work performed to date including the excavation and underpinning go the basement, was properly permitted and compliant with building codes.

- In Feb/Mar Carrier became aware that the underpinning has not been properly permitted and that work on the property could not continue until corrected and permitted.

- Ewing reviewed the listing on MLS indicating that an enclosed balcony was on the second floor prior to entering into contract on the property.

- Plaintiffs unequivocally informed Carrier that they wanted an enclosed balcony similar to the one on the adjacent property.

- Plaintiffs and their agent understood the language of the 6.1 contract to mean that they were entitled to an enclosed balcony

- 1645 proposed a modification to the contract.

- Contract 2 defined Purchaser as Randall Ewing and Yasmany Gomez

- Contract 2 required 1645 to represent prior to closing that "it had no knowledge of nor has seller received any written notice from any association or government entity regarding....zoning, building, fire or health code violations that have not been corrected; ....Any improvements to the Property for which the required initial permits were not obtained."

- The aforementioned provision imposed continuing disclosure obligation should the Seller become aware of matters requiring the modification of those representations prior to closing.

2

- June 23, 1645 notified plaintiff that it has approval from city to enclose the balcony but that it would not do so as part of the preexisting price.

- Five days later, 1645 refused to enclose the balcony altogether.

- Had Ewing and Gomez agreed to obtain financing solely in Ewing's name, they would not have been able to obtain a mortgage due to the stop work order.

- The agreement was null and void due to Plaintiff's inability to obtain a mortgage commitment.

The only claim on which the Court ruled in the Plaintiff's favor was with respect to the nearly identical ICFA and fraud claims. In that ruling, the Court relies almost entirely on the stop work order and the misrepresentations or omissions that Carrier is alleged to have made. The Court notes that damages may be an issue, which in fact they are. In granting summary judgment for the Plaintiffs on its claims of fraud and ICFA, the Court found that the $117,500.00 in escrow, which Plaintiffs "have been deprived of for the duration of this suit based on 1645's representations regarding the property at 1645 West Farragut," was sufficient to establish damages. 16CV993, Dckt. #116, p. 6. If Plaintiffs are unable to establish that the damages sought were caused by Defendants actions, they are not entitled to recovery. There is clearly an issue of law as to proximate cause, as Plaintiffs were unaware of the stop work order until litigation in this matter began, and the house was in a gutted state at the time they contracted to purchase the home. The Plaintiffs could not have relied on the stop work order or the MLS listing in terminating the contract because they had no knowledge of either prior to terminating the contract. The Plaintiffs declared the Contracts void for entirely unrelated reasons long before the stop work order could have or would have become an issue. Thus, Plaintiff's reliance upon the alleged misrepresentations made by Carrier and whether the contract itself demanded notification

of the stop work order at any time is an issue that Carrier seeks to present in this litigation if its Motion in Limine regarding the stop work order is denied.

The Court further noted when denying 1645's Motion for Reconsideration that, "Because the Court's July 31, 2019 ruling did not dispose of this case in its entirety, the Court reviews defendant's motion under Federal Rule of Civil Procedure 54(b), which allows the Court to exercise its inherent authority to reconsider its interlocutory orders because such orders are 'subject to revision at any time before the entry of judgment adjudicating all the claims.'" The Court quite succinctly lays out the applicable caselaw relating to the ability of a Court to reconsider its interlocutory order issued November 20, 2019. 16CV993, Dckt. #123, p. 2.

In addition, on February 1, 2021, the Court denied Plaintiffs' Motion for earnest money, attorneys' fees, and prejudgment interest. In its Order, Court emphasized its prior ruling from May 18, 2018 that the "funds in question are to remain in escrow until the issuance of a court order adjudicating the parties' respective rights to those funds." 16CV993, Dckt. #174, p. 2. The Court refused to adjudicate the parties' respective rights to the earnest money prior to trial. *Id.* However, in doing so, the Court asserted that the issue of damages had not been decided. This February 1, 2021 ruling directly contradicts the Court's prior ruling on July 31, 2019, that declares that damages were established and summary judgment on the Plaintiffs' fraud claims was therefore appropriate.

1645, in taking this matter to trial, is asking the court to reconsider its interlocutory order which was entirely based on uncontested facts alleged by the Plaintiff, much of which is wholly dependent on the Plaintiff's own testimony and of testimony from a witness' affidavit, the relevance and admissibility of which will be contested. Much of this case, will be determined by the credibility of the witnesses and on other factors that were not considered in the Motion for

4

Summary Judgment. It would be highly prejudicial to 1645 for the Court to proceed based on the July 31, 2019 ruling. 1645 would have to agree to have the jury be presented with facts that it knows are not the truth. Furthermore, the Court's own rulings subsequent to July 31, 2019 indicate that damages have not been ascertained. An ICFA claim "requires that the plaintiff suffer actual pecuniary loss." *Kim v. Carter's Inc.,* 598 F.3d 362, 365 (7th Cir. 2010). Since the parties' right to the funds in escrow have not yet been adjudicated by the Court, a material element of the ICFA claim remains, thereby creating a genuine issue of material fact as to 1645's alleged violations of the ICFA.

If the Court is to allow reconsideration of its interlocutory order, 1645 asks that no reference be made by Plaintiffs to the Motion for Summary Judgment, or the Court's orders, or to findings of fact made by the Court in its July 31, 2019 ruling.

Alternatively, if the Court will not reconsider its interlocutory order, 1645 nevertheless requests that no reference be made by Plaintiffs to the Motion for Summary Judgment, or the Court's orders, or to findings of fact made by the Court in its July 31, 2019 ruling, due to its overwhelmingly prejudicial effect on the jury. Instead, it requests that it be allowed to present its case in its entirety.

2. **Bar any reference to alleged homophobic or otherwise discriminatory words or phrases written or stated by Erik Carrier, including use of phrase "fruit cups" or that Ewing and Gomez were "interesting," "crazy," or other similarly vague comments attempting to establish irrelevant and unsubstantiated homophobic prejudice on behalf of Erik Carrier.**

In deciding whether evidence is admissible, the Court must determine whether the item is relevant and in turn weigh its prejudicial effect. *See* Fed. R.Evid. 401, 403. Evidence is unfairly prejudicial where its admission makes it likely that the jury will be induced to decide

the case on an improper basis, commonly an emotional one, rather than on the evidence presented. *Barber v. City of Chicago*, 725 F.3d 702, 714 (7th Cir. 2013).

In this case, Plaintiffs have repeatedly referred to statements, intend to question prospective jurors, and introduce evidence made by Erik Carrier to infer that he is homophobic. *See* Plaintiffs' Proposed Exhibits #s 13, 34, 35, 59, 75, and 77, attached as **Exhibit A.** See also Plaintiffs' Proposed Voir Dire Questions, attached as **Exhibit B.** These allegations are unsubstantiated, irrelevant and only serve to inflame the jury's emotions. The statements do not justify an inference that Carrier has any bias towards the Plaintiffs. Moreover, no specific bias been alleged by the Plaintiffs which would allow the introduction of such evidence. Even if Carrier was guilty of making insensitive remarks, those remarks are not relevant to the case. Plaintiffs have never contended that the basis of the alleged fraud or breach of contract is at all related to any homophobic bias, therefore introduction of such evidence would be solely for the purpose of inflaming the jury's emotions and such evidence should be barred.

3. **Bar reference and evidence related to Stop Work Order or US Waterproofing's failure to obtain adequate permits with respect to the Project.**

Primarily for the purposes of preserving issues for a potential appeal: this Motion in Limine seeks to prevent testimony which is irrelevant and seeks to introduce testimony intended to inflame the jury's emotions and cause confusion. *See* Fed. R.Evid. 401, 403.

In this matter, Plaintiffs completely rely on one fact to demonstrate that an act of fraud and in violation of the ICFA occurred in this case: the Stop Work Order. However, the Court did not make a finding that Plaintiff Ewing was contractually obligated to make such disclosure; that is a matter of law for the Court to decide. In fact, the Stop Work Order was unknown to both of the Plaintiffs until February 2018, years after this litigation commenced, not because it was being

hidden, but because it was irrelevant. Plaintiffs admit that they knew nothing of the stop work order until this litigation began. (*See,* Dckt. 92, p. 2-3). It is uncontested that the Property was gutted and completely empty from the time the real estate contracts were signed until the Plaintiffs terminated or "voided" the contract due to their alleged inability to obtain financing. In order to begin any construction process, 1645 would have been required to obtain stamped architectural drawings previously submitted to the City of Chicago for permitting. It is commonly known that this process can be long and arduous. The Plaintiffs, upon stepping into the gutted building, knew that no work could begin on the Project until permits were approved. When the Contracts were executed on April 17, 2016 and May 2, 2016, respectively, the Stop Work Order was not in effect. In fact, the Stop Work Order was not entered until at least one month after the second Contract was signed; 1645 was unaware of its existence or potential for existence at the time of contracting. The Stop Work Order also entered several months prior to the proposed closing date, by which time all zoning or building violations would have to be resolved or disclosed to Plaintiffs. Thus, the impact of the Stop Work Order was thus null and void. Moreover, the Stop Work Order which was placed on the Property was not due to faulty or incomplete construction, and there is no evidence there was any faulty work performed on the Project. Instead, the subcontractor, U.S. Waterproofing, applied for the wrong permits and simply needed to jump through bureaucratic hoops to have proper paperwork approved.

The Plaintiffs frequently rely on the date upon which the Stop Work Order was lifted, on November 23, 2016. However, that is similarly irrelevant, because the entire construction process would have looked different if the Plaintiffs had made timely decisions regarding the construction of the Project. Had the Plaintiffs acted in accordance with their Contracts to design and purchase the home, the Stop Work Order may have been relevant to determine any alleged

project delay on 1645's behalf. Given the circumstances of this case, however, the stop work order had NO effect, and as such, should not be brought before the jury.

4. **Bar reference to Plaintiff, Ewing's, experiences as a mortgage broker and/or law clerk with respect to appraisals, including but not limited to his opinions or experience with appraisals, and any testimony intended to be introduced by Plaintiffs as an expert in any field.**

The duty to disclose a witness as an expert is not excused when a witness who will testify as a fact witness and as an expert witness is disclosed as a fact witness. Fed. R. Civ. P. 26(a)(1)(A), 26(a)(2). *Karum Holdings LLC v. Lowe's Companies, Inc.*, 895 F.3d 944 (7th Cir. 2018). Plaintiff Ewing was not disclosed as an expert witness; thus, any expert testimony should be barred.

In addition to being relevant, evidence must be properly admitted. In this case, Plaintiff attempts to use Plaintiff, Randall Ewing's, own statements to substantiate the fact that Plaintiffs could not obtain a mortgage commitment on a contract for the purchase of finished house without an appraisal of the house in its near finished state. *See* Plaintiff's Statement of Undisputed Facts Dckt. #107, ¶71. Ewing lists his declaration as foundation for several facts relating to appraisals of homes. Dckt. #107, ¶71, 73-74. In his deposition and during questioning of witnesses, Ewing referred to his experience as a mortgage broker. However, Plaintiffs have not disclosed Ewing as an expert in any field. Even if he had been disclosed, he is not qualified to speak as an expert in appraisals. Allowing testimony regarding his experience as a mortgage broker from many years ago would be improperly allowing quasi-expert testimony without disclosure or a proper foundation. Therefore, 1645 requests that Ewing not be allowed to speak to his general experiences as a mortgage broker or law clerk, especially with respect to matters that involve appraisals.

5. **Bar reference to MLS listing with respect to allegations regarding enclosed balcony.**

Under Illinois law, if a contract is in writing, is unambiguous, and contains no uncertain terms, interpretation of the contract is a question of law for the court, and no evidence outside the four corners of the contract may be employed to construe its terms. *United States v. 4500 Audek Model No. 5601 AM/FM Clock Radios*, 220 F.3d 539 (7th Cir. 2000).

Primarily for the purposes of preserving issues for a potential appeal: it is uncontested that the parties executed a second real estate contract regarding the Project on or about May 2, 2016, ("Contract 2"). *See* Contract 2 attached as **Exhibit C.** This Contract states that it is "[a]n agreed modification of April 17, 2016 executed multi-board residential real estate contract 6.1." Contract 2 specifically delineates, in bold type, that "PURCHASER UNDERSTANDS AND ACKNOWLEDGES THAT SELLER ASSUMES NO RESPONSIBILITY FOR ANY ERRORS, OMISSIONS, OR MISREPRESENTATIONS MADE BY BROKER(S), OR SELLERS AGENT(S) IN ANY SALES MATERIALS SUCH AS ADVERTISING BROCHURES, MARKETING MATERIALS, MULTIPLE LISTING SERVICES, ETC." *See* Contract 2, ¶13(h). The controlling Contract in this matter unambiguously states that 1645 is not responsible for errors in the MLS listing for the Project. After breaching the Contract and attempting to sue to regain the earnest money on the property, Plaintiffs began searching desperately for reasons to blame 1645 for the breach of contract. The issue of the balcony is one of Plaintiffs' primary allegations in their breach of contract claim, when in fact, it was hardly an issue at the time. This is evidenced by Plaintiffs' assertion on October 17, 2016 that the Contracts were null and void based on their inability to obtain a mortgage commitment only. *See* 1645 Proposed Exhibit #43, attached as **Exhibit D**. When Plaintiffs ultimately attempted to rescind the contract, the balcony was not provided as their reasoning for that request. More importantly, the law does not allow

them to argue this claim, because as a matter of law, seller cannot be held responsible for the incorrect MLS because there is an exception for such liability. 765 ILCS 77/25(a).

The Court points to *Siegel* as instructive in its ruling regarding the Motion for Summary Judgment on this issue. *Siegel v. Levy Org Dev. Co.*, 153 Ill. 2d 534,545 (1992). However, the uncontested facts in this matter are quite different than those in *Siegel*. First and foremost, in the case at bar, there is an explicit contractual provision carving out liability for any false advertisements in the MLS listing in the relevant contract. This was not addressed in *Siegel*. Secondly, in *Siegel*, the purchasers were buying a new property, yet to be built, while primarily relying on descriptions of the property by the seller, and in possession of inaccurate or incomplete architectural drawings. The area at issue in the *Seigel* property was a five hundred square feet entertainment patio, which was the major draw to purchase the home. In contrast, in this case, it is undisputed that there was correspondence between the parties about whether Plaintiffs wanted the balcony enclosed and whether it was included in the Contract price. The Contract Modification, which sought to outline what was and was not included in the purchase price of the home for the Plaintiffs' protection, did not include the second-floor balcony. The Plaintiffs' subsequent breach of the contract was not premised in any way on an alleged refusal to provide the enclosed patio. Therefore, in this case, *Siegel* is not instructive. Instead, the terms of the Contract should govern. 765 ILCS 77/25(a).

Wherefore, Defendant respectfully requests that all parties and their witnesses and attorneys be ordered not to mention, refer to, adduce, interrogate concerning, voluntarily answer, introduce any physical evidence regarding, or attempt to convey to the jury at any time during these proceedings in any manner, directly or indirectly, the subject matter as stated above, and

that each counsel be instructed to warn and caution each and every witness under their control testifying in this case to strictly comply with the rulings of this Court.

6. **Bar reference to and/or questioning of witness Hoppe with respect to appraisals or other matters outside his area of expertise.**

An expert must offer scientific, technical, or other specialized knowledge in order to assist a trier of fact. Fed. R. Evid. 702. Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness' testimony. *Jones v. Lincoln Elec. Co.,* 188 F.3d 709 (7th Cir. 1999)

In this matter, Plaintiffs seek to use Matthew Hoppe to testify to various testimony far outside his area of expertise in an effort to create confusion for the trier of fact. *See* Plaintiffs Statement of Undisputed Facts, ¶¶49,53,54,57,60-2, 65,71-74, 12/21/18, #107.

In dispute are the implications of the "Purchaser's Mortgage" Provision found in Contract 2. See Contract 2, ¶2. In this matter, Plaintiffs theorize that they could never have obtained a mortgage commitment in August 2016 because the home was in a gutted state. Plaintiffs argue that they were entitled to abandon the Project and recover their entire earnest money because the Project could not be appraised. Plaintiff rely on two forms of testimony to support the fact that a mortgage commitment could not be obtained absent an appraisal: testimony of Randall Ewing Jr. and testimony from Matthew Hoppe. Hoppe is an expert witness disclosed by 1645 who is expected to testify that he processed a mortgage application submitted by Plaintiffs, and was able to provide a mortgage to Plaintiff, Ewing, although he was unable to offer both Plaintiffs a mortgage. However, Ewing rejected such offer. Hoppe is also expected to provide expert testimony regarding Plaintiffs' qualifications to receive a loan for the subject property, the mortgage application process, and the loan terminology under the terms of the Contracts. *See*

1645's Rule 26(a)(2)(C) disclosures, attached as **Exhibit E**. During the deposition of Mr. Hoppe, Plaintiffs elicited a substantial amount of testimony beyond the witness's personal knowledge and well beyond the areas of Mr. Hoppe's knowledge as an expert. More specifically, Mr. Hoppe indicated several times that he did not have expertise in the area of appraisals. *See*, Deposition of Hoppe attached as **Exhibit F**, p. 12. He explicitly states "I am definitely not trained as an appraiser." *See id.*, 16:13-14. "I am actually not the one that would approve the appraisal. That would be the role of a regular underwriter that's assigned on every file." *See id.,* 12:8-11. Hoppe testifies that he had never handled a loan that involved a home under construction like this one and never worked with a lender who provided construction loans. *See id.*, 24:1-19. Hoppe also testified that he has no education related to residential real estate appraisals. *See id.*, 11:22-25. Hoppe does not have adequate experience or training to aid the trier of fact with respect to appraisals and the relationship of appraisals to the circumstances of this case. As such, he should only be allowed to testify to the facts to which he a personal basis of knowledge or expertise.

7. **Bar any reference by Plaintiff's witnesses, including Plaintiff Ewing, as to potential investment value of withheld escrow funds.**

As previously stated, the Court must determine what testimony is relevant and admissible. See ¶4 above, concerning failure to disclose Ewing as an expert. In this case, Plaintiffs, Ewing, seeks to elicit expert testimony from himself or from hearsay documents regarding the potential investment value of withheld escrow funds. Such testimony is not appropriate because Plaintiff Ewing has not disclosed himself as an expert and cannot testify as an expert in any financial capacity. Any testimony concerning investment value of money is either common sense knowledge to which the trier of fact need not hear Plaintiff Ewing's opinion, or is specialized knowledge to which Plaintiff Ewing is not qualified to speak to. In addition, any evidence regarding the potential investment value of withheld escrow funds is

considered speculative hearsay unless otherwise introduced by an expert in that field. Plaintiffs have not disclosed an expert witness in this case. Therefore, 1645 requests that Plaintiffs' witnesses, specifically Plaintiff Ewing, be barred from any reference or testimony regarding the potential investment value of withheld escrow funds.

8.  **Allow introduction of evidence regarding the liquidated damages provision contained in Contract 2 to rebut any reference to "bad faith" (as frequently asserted by Yasmany Gomez in his deposition transcript) or actions taken by Mr. Carrier post breach of contract.**

Primarily for the purposes of preserving issues for a potential appeal: in this case, the Court has ruled in an interlocutory order that the liquidated damages provision of Contract 2 was a penalty provision and therefore unenforceable. Dckt #48, p. 2. 1645 asks this Court to reconsider such finding to either 1) allow the jury to make the factual determination as to whether that the liquidated damages provision was a reasonable estimate of damages, or to 2) allow an evidentiary hearing on damages to reassess the Court's findings of fact as to damages. The purpose of the liquidated damages provision was to eliminate a lengthy assessment of damages. The liquidated damages provision amounted to approximately 10% of the purchase price of the Property, which is not an unreasonable sum given the complexities and uncertainties of building a custom home. Moreover, Plaintiff Ewing is an experienced attorney who understood the implications of the Liquidated Damages provision at the time of contract signing, and indicated as such.

In the alternative, 1645 asks that Plaintiff's witnesses not be allowed to reference any "bad faith" as frequently mentioned by Plaintiff Gomez in his deposition. The actions of Mr. Carrier in retaining the earnest money at the time of the incident were justified by the existence of the liquidated damages provision. If any reference were to be made as to bad faith, 1645

13

would be required to bring forth evidence of the liquidated damages provision. If 1645 is barred from making an argument concerning the liquidated damages to the jury, Plaintiffs should similarly be barred from making any negative reference to Carrier's actions which occurred due to the existence of the provision.

Wherefore, 1645 respectfully requests the Court reconsider the issue of liquidated damages or alternatively bar Plaintiffs to reference the issue of retaining the earnest money in bad faith.

9. **Claim of Illinois Consumer Fraud Act or Illinois Consumer Fraud Act Claim should be brought before jury as trier of fact or in the alternative, Plaintiffs should be barred from any mention of ICFA fraud claims during jury trial.**

Primarily for the purposes of preserving issues for a potential appeal: Plaintiffs have brought claims involving common law fraud and ICFA violations. Although Illinois does not allow a jury trial on statutory claims, federal law does permit it. The Seventh Amendment, which is binding on federal courts but not state courts, may create a right to a jury trial in federal court even where no such right exists in state court. *Kremers v. The Coca-Cola Co.*, 714 F. Supp. 2d 912, 916 (S.D. Ill. 2009). In federal court, the right to a jury trial must be determined as a matter of federal law, even if the claim arises under state law and is before the court on diversity jurisdiction. *Id*. at 916.

In *Kremers*, the issue before the Court was the right to a jury trial on an ICFA claim, and the court held that there was a right to a jury trial. *Id*. at 916. Other courts have found that an ICFA claims "resemble[] a common law fraud claim with the additional requirement that a plaintiff prove intent to deceive or reasonable reliance on misrepresentation." *Goldberg v. 401 N. Wabash Venture LLC*, 2013 WL 941964, 8 (N.D. Ill. Mar. 11, 2013). Furthermore, Plaintiffs seek monetary damages, which is a legal remedy that gives rise to the right to a jury trial. *See*

*Kremers*, 714 F. Supp. 2d at 918. Therefore, in this matter, all fraud claims should be brought before the jury.

In the alternative, if this Court decides that the ICFA claims should not be brought the jury, Plaintiffs should be barred from discussing or mentioning ICFA or the ICFA claim in its entirety, as it is not relevant and only serves to prejudice and confuse the jury.

**10. Bar any objections to testimony based on marital privilege; Allow evidence of conversations and actions that occurred/witnessed between Plaintiffs during the time period at issue.**

Two forms of marital privilege exist under federal common law: the marital testimonial privilege and the marital communications privilege. *United States v. Darif,* 446 F.3d 701 (7th Cir.2006). Marital testimonial privilege does not apply. [1]

The marital communications privilege may be raised by either the defendant-spouse or the witness-spouse to preclude the witness-spouse's testimony about their communications to "ensure that spouses generally ... feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law." *United States v. Guy Westmoreland,* 312 F.3d 302, 306 (7th Cir.2002). The marital communications "applies only to communications made in confidence between the spouses during a valid marriage. Acts observed by the spouse are not protected by the communications privilege." *Malibu Media, LLC v. Tashiro,* No. 1:13-CV-00205-WTL, 2015 WL 2371597, at *9 (S.D. Ind. May 18, 2015); *citing United States v. Lofton,* 957 F.2d 476, 477 (7th Cir.1992). Second, an exception to the marital communications privilege exists in cases in which the spouses are joint participants in

---

[1] The marital testimonial privilege may be invoked by the witness-spouse to preclude the witness-spouse's testimony about any topic to "protect against the impact of the testimony on the marriage." *Stanfield v. Dart*, No. 10 C 06569, 2011 WL 5301784, at *1 (N.D. Ill. Nov. 3, 2011). However, marital testimonial privilege has not been allowed in 7th circuit civil federal cases. *Stanfield,* 2011 WL at *1, *citing Ryan v. Commissioner,* 568 F.2d 531, 544 (7th Cir.1977), *cert. denied*, 439 U.S. 820 (1978).

an alleged crime. *Id.* at *9, citing *United States v. Darif,* 446 F.3d 701, 706 (7th Cir.2006) (citations and internal quotations omitted) ("The marital communications privilege places a limitation on truthful disclosure. However, we have recognized an exception to the privilege when spouses are joint participants in the underlying offense. We do not value criminal collusion between spouses, so any confidential statements concerning a joint criminal enterprise are not protected by the privilege." "Courts have 'demonstrate[d] a judicial willingness to expand the exception' to tortious conduct and discovery violations." *Malibu* at *10; *citing In re Heraeus Kulzer GmbH,* No. 3:09–CV–530 RM, 2012 WL 1493883, at *2 (N.D.Ind. Apr.26, 2012).

The Plaintiffs married after the events of concern in this litigation, therefore they are not entitled to claim marital privilege for communications between themselves during 2016. They are only entitled to claim the privilege with respect to statements made to each other in the strictest of confidence after the date of their marriage.

Throughout the deposition of Yasmany Gomez, and during portions of Mr. Ewing's deposition, objections were made based on marital privilege. However, the objections were improper and demonstrate that Plaintiffs intend to try and shield evidence from being presented that is relevant and admissible. The Court should admonish the Plaintiffs regarding this matter prior to the start of jury trial so as to avoid confusion.

## 11. Bar any reference to any settlement or settlement negotiations between Plaintiffs and Defendant, whether of this case or any other case.

There have been settlement discussions between the parties throughout the pendency of this case. 1645 asks that the Court exclude any reference to those settlement negotiations pursuant to Fed. R. Evid. 408. Evidence of offers to compromise or statements made in

settlement negotiations is expressly inadmissible by Rule 408 of the Federal Rules of Evidence. The purpose of Rule 408 is to encourage settlements. Settlement negotiations may be chilled if parties feared their efforts would become evidence of liability at a later trial. *Kritikos v. Palmer Johnson, Inc*., 821 F.2d 418, 423 (7th Cir. 1987).

Accordingly, 1645 respectfully requests that all parties, their witnesses, and their attorneys be ordered not to mention, refer to, adduce, interrogate concerning, voluntarily answer, introduce any physical evidence regarding, or attempt to convey to the jury at any time during these proceedings in any manner, directly or indirectly, the subject matter as stated above, and that each counsel be instructed to warn and caution each and every witness under their control in this case to comply strictly with the rulings of this Court.

**12. Bar any reference to the source of money to pay any damages that may be awarded.**

If damages are awarded to either 1645 or Plaintiffs, the source of such funds is irrelevant, prejudicial, and should be barred at trial. Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. Fed. R. Evid. 411. Similarly, Illinois courts have barred the source of funds used to pay attorneys' fees to defend oneself against litigation. *Washington v. Carpenter,* 2009 WL 4065192 (C.D. Ill. Nov. 20, 2009). The introduction of such evidence violates the collateral source rule, which precludes a jury from learning about collateral income. *Wallis v. Townsend Vision, Inc.*, 648 F. Supp. 2d 1075, 1087 (C.D. Ill. 2009), citing *Wills v. Foster*, 892 N.E.2d 1018, 1022 (Ill. 2008). Otherwise, the trier of fact could use such evidence to improperly deny recovery to a party. *Wallis,* 648 F. Supp. 2d at 1087, *citing Arthur v. Catour,* 833 N.E.2d 847, 852 (Ill. 2005).

Accordingly, 1645 respectfully requests that the Court bar any reference to the source of

money to pay any damages that may be awarded, as it is not relevant, only serves to prejudice, violates the collateral source rule, and violates Fed. R. Evid. 411.

13. **Bar any evidence or argument about 1645's alleged failure to call witnesses or evidence, or any speculative argument regarding the substance of testimony of such absent, unavailable or witnesses or evidence not presented for trial. Bar any reference to the existence or filing of this Motion in Limine, or to the fact that 1645 has sought to exclude evidence, or to any ruling on the Motion in Limine by the Court.**

"The failure of a party to produce testimony or physical evidence within his control creates a presumption that the evidence if produced would have been adverse to him." *Beery v. Breed*, 36 N.E.2d 591, 593-595 (2d Dist. 1941). In that case, the grandson of a defendant who drove the defendant's automobile at the time of an incident did not testify. *Id.* This justified a presumption that the testimony of grandson would have been unfavorable. *Id.; see also Zegarski v. Ashland Sav. & Loan Ass'n*, 123 N.E.2d 855, 857 (1st Dist.1954). However, the presumption does not apply if evidence is "equally available" to both parties. *Flynn v. Cusentino*, 375 N.E.2d 433 (3d Dist.1978). If there is a likelihood that a witness would be biased against a party, that witness is not equally available to both parties. *United States v. Beekman*, 155 F.2d 580, 584 (2d Cir.1946).

In the case at bar, any witnesses or evidence not presented for trial are not equally available to both parties, as it is defined under Illinois and Federal law. Thus, any presumption that the absent testimony or evidence would have been unfavorable to the opposing party does not apply. Consequently, the reference or introduction of any such evidence would be unfairly prejudicial. Similarly, any reference to the existence or filing of this Motion in Limine, or to the fact that 1645 has sought to exclude evidence, or to any ruling on the Motion in Limine by the Court would be unfairly prejudice the jury. As a result, 1645 respectfully requests that such evidence or reference thereof be barred.

18

**14. Bar any reference to the fact that 1645 made an objection to interrogatories or document requests, or asserted a claim of privilege, during the pretrial phase of this case.**

During the discovery process of this case, objections were made to various interrogatories or document requests. Such objections or admissions are evidentiary, rather than judicial. *See Greenwich Industries, L.P. v. Specialized Seating, Inc.,* 2003 WL 21148389, ¶2 (N.D. Ill. May 16, 2003). Unless otherwise agreed to by the parties, evidentiary admissions are not admissible at trial. *See id., citing J.F. Edwards Construction Co. v. Anderson Safeway Guard Rail Corp.,* 542 F.2d 1318, 1322 (7th Cir.1976). Parties cannot be forced to stipulate to facts to which they will not voluntarily agree. Fed. R. Civ. P. 16(c)(2). Therefore, any evidentiary objections contained in any interrogatories or document requests submitted in this case are not admissible unless both parties have agreed. 1645 is objecting to the introduction of such evidence. As a result, any reference to such objections should be barred.

**15. Motion in Limine to Strike Plaintiffs' Affirmative Defenses to 1645 Counterclaim.**

In this case, Plaintiffs filed an answer to Defendant's Counterclaim on December 19, 2017. Included in Plaintiffs' answer was a laundry list of affirmative defenses ("AD's") including Fraudulent Inducement, Misrepresentation, Mutual Mistake, Unilateral Mistake, Lack of Contract, Defendant's Material Breach of Contract, Unclean Hands and Failure to Mitigate Damages.

The ADs were stated as bare bones conclusory allegations and were inadequate; defendants omitted any short and plain statement of facts and failed to allege necessary elements of claims. This is improper under Fed. R. Civ. P. 8(a) and *Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286 (7th Cir. 1989). For instance, with respect to Plaintiffs' AD of Fraudulent

Inducement, Plaintiffs state that they relied on statements regarding a lack of building code violations, but never plead such a statement. Therefore, the reliance alleged is conclusory.

With respect to many of the ADs, there are issues of law that must be decided by the Court prior to trial. More specifically, issues pertaining to the MLS listing and or representations regarding the balcony are contract issues: issues of law, not fact. Such issues must be determined by the Court prior to trial, instead of being presented before the trier of fact. See paragraph #5 for additional argument.

Furthermore, the Court has already decided on the applicability of Plaintiffs' ADs of mutual and unilateral mistake in this matter. On July 31, 2019, the Court denied Plaintiffs' Motions for Summary Judgment as to its claims of mutual mistake and unilateral mistake because the evidence did not establish a mistake of fact. In its Ruling, the Court proclaimed:

> "Reformation of a contract as a result of mutual or unilateral mistake is only permissible when there is a mistake as to the facts of the agreement and not as to the legal effects of the agreement. *Friedman v. Development Management Group, Inc.,* 82 Ill.App.3d 949, 954, 403 N.E.2d 610, 612 (1980) (quoting *Jacobs v. Wilkerson*, 373 Ill. 545, 549, 267 N.E.2d 860 (1940)); *Cummings*, 129 Ill.App.3d 338, 342, 472 N.E.2d 575 (1984). The defendants contend that the plaintiffs have only identified a legal mistake as to whether or not the contract encompassed enclosing the second-floor balcony. The Court agrees. Confusion as to whether the agreement between the parties encompassed enclosing the second-floor balcony is not a factual mistake. The plaintiffs' statement of undisputed fact, moreover, establishes that 1645 declined to enclose the second-floor balcony, not that the parties were mistaken in their belief that it was possible to do so. Accordingly, the plaintiffs have failed to establish either a unilateral or mutual mistake as to the ability to enclose the front balcony." 16CV993, Dckt. #116, p. 6-7.

Thus, Plaintiffs' ADs of unilateral and mutual mistake should be stricken.

Plaintiffs' AD of Lack of Contract is also insufficient in this case. In its Pre-Trial Statement to the Court, Plaintiffs admit to the existence of at least one contract between the parties. Additionally, Plaintiffs allege another alternative defense of Material Breach of Contract. Therefore, Plaintiffs cannot simultaneously argue that a contract did not exist. Moreover, the

language of Plaintiffs' Lack of Contract AD actually alleges mistake, rather than lack of a contract. As previously stated, the Court has already ruled upon the applicability of mistake in this case.

As a result, 1645 respectfully requests that the Court strike Plaintiffs' ADs to 1645's Counterclaim.

### 16. Bar any reference or argument regarding Michael Walsh's Supplemental Expert Report, dated August 13, 2021.

On August 24, 2021, Plaintiffs filed a Motion for Leave to Disclose Expert Report. In its Motion, Plaintiffs requested leave to file Michael Walsh's Supplemental Expert Report from August 13, 2021. On September 7, 2021, the Court denied the Plaintiffs' request. 16CV993, Dckt. #188, p. 1. Consequently, Plaintiffs should be barred from referencing, introducing, or raising any argument related to Michael Walsh's Supplemental Report from August 13, 2021.

### 17. Bar any testimony intended to be introduced by Michael Walsh as an expert in any field.

On July 12, 2018, the Court ordered that the Plaintiffs had to disclose any Rule 26(a)(2) experts by August 1, 2018. 16CV993, Dckt. #90. 1645 had to make such disclosures by August 31, 2018. *Id.* Any experts had to be deposed by October 1, 2018. *Id.* To date, Plaintiffs have not filed any disclosures regarding expert witnesses at trial. Accordingly, Michael Walsh was never deposed in this case.

As stated previously, the duty to disclose a witness as an expert is not excused when a witness who will testify as a fact witness and as an expert witness is disclosed as a fact witness. Fed. R. Civ. P. 26(a)(1)(A), 26(a)(2). As a result, 1645 requests that any expert testimony by

Michael Walsh be barred at trial, due to Plaintiffs' failure to disclose Mr. Walsh as any such expert.

WHEREFORE, Defendant, by counsel, prays the Court to order the parties and their witnesses *in limine* not to mention, refer, question concerning, remark about, or discuss the matters related above or any exhibits or proposed exhibits relating to them in the presence of jurors or potential jurors, whether during jury selection, opening statement, trial, or final argument, without first obtaining the permission of the Court.

Date: September 14, 2021                    Respectfully Submitted,

                                            **1645 W. FARRAGUT, LLC**.


                                            By: _/s/Julianne Gerding_____
                                                   One of Its Attorneys

Julianne Gerding
Amy Galvin Grogan
GROGAN, HESSE & UDITSKY PC
2 Mid America Plaza, Suite 110
Oakbrook Terrace, IL 60181
630-833-5533
jgerding@ghulaw.com
ARDC: 6318378