## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RANDALL EWING and**<br>**YASMANY GOMEZ** | ) <br> ) <br> ) |
|     **Plaintiff/Counter-Defendants,** | ) <br> ) |
| **v.** | )    **Case No. 1:16-cv-09930**<br>) |
| **1645 W. FARRAGUT, LLC** | ) <br> ) |
|     **Defendants/ Counter-Plaintiff.** | ) |

### MOTION FOR DIRECTED VERDICT

NOW COMES Defendant/Counter Plaintiff, 1645 W. Farragut, LLC ("1645"), by and through Its attorneys, Grogan Hesse & Uditsky, P.C., moves the Court for Directed Verdict states as follows:

### I.    STANDARD

The proper standard for direction of verdicts and entry of judgment in diversity cases is the state standard. *Etling v. Sander*, 447 F.2d 593 (7th Cir. 1971). The strict Illinois standard is set forth by the Illinois Supreme Court in *Pedrick v. Peoria & E. R. R. Co.*, 37 Ill.2d 494, 510, 229 N.E.2d 504, 513 (1967). Under that case, a defendant is entitled to a directed verdict or a judgment notwithstanding the verdict when all the evidence, viewed in its aspects most favorable to the plaintiff so overwhelmingly favors the defendant that no contrary verdict based on the evidence could ever stand. *Pittsburgh-Des Moines Steel Co. v. Brookhaven Manor Water Co.*, 532 F.2d 572, 577–78 (7th Cir. 1976).

## II. <u>ARGUMENT</u>

### A. A DIRECTED VERDICT SHOULD ENTER AS TO DAMAGES FOR FRAUD

Plaintiff has failed to prove any damages as a result of fraud and consumer fraud. The Court entered a finding that Defendant's fraudulent conduct consisted of the following: (1) Plaintiffs had the MLS listing prior to contracting with Defendant that set forth the property had an enclosed balcony and Defendant failed to enclose the balcony, (2) prior to contracting with Defendant, Defendant had knowledge of a permit issue which resulted in the stop work order and (3) Defendant could not complete the project in six months. Plaintiff has failed to demonstrate it sustained damages for this fraudulent conduct because (1) Plaintiffs could not obtain a mortgage and did not have the means to purchase the property; (2) Plaintiffs decided on plans that did not include an enclosed balcony (3) Plaintiffs delayed in agreeing to final plans causing the project not to move forward so that it could be completed in six months and (4) Plaintiffs' remedies for Defendants failure to notify them of the stop work order was for Seller to resolve the issues prior to Closing as set forth in paragraph 6 of the Contract.

First, Plaintiffs terminated the contract due to the inability to obtain a mortgage. As testified to by Mr. Ewing, he could not obtain a mortgage that included Mr. Gomez. Plaintiffs gave notice on April 15, 2016 pursuant to the terms of the Contract that they could not obtain a mortgage pursuant to paragraph 2 of the Modification of the Real Estate Contract (Pl. Ex 2). Plaintiffs Exhibit 27. Accordingly, On October 17, 2016, Plaintiffs declared the contract null and void. Any alleged fraudulent conduct by Defendant did not result in Plaintiffs decision to declare the contract null and void.

Second, looking at Plaintiff's Exhibit 32 in an email from Mr. Ewing to Mr. Carrier dated June 20, 2016 – Plaintiffs had agreed to move forward on the plans that did not include enclosing

the balcony. That issue had been explored by the parties and the only issue left for a decision was enclosing the first floor front porch. In Plaintiffs Exhibit 33 – page 4190 Mr Ewing sets forth "Nevertheless we were happy to finally receive revised floor plans from Erik on Tuesday that matched exactly the approved floor plans we sent weeks earlier." The Plaintiffs had agreed to floor plans but would not put the final approval in writing so that Mr. Carrier could submit them to the City of Chicago. In July of 2016 they sent an email directing Mr. Carrier not to submit any floor plans to the City that included their changes to the plans.

Third, Paragraph 3 of the contract states that the estimated date of substantial completion of the Property is October 3, 2016. However, it further states that if substantial completion is delayed due to governmental authorities or causes beyond Seller's reasonable control as determined at Seller's sole discretion, said date shall be extended by the length of such delay. The testimony by the witnesses demonstrated Plantiffs would not sign off on final floor plans so that Mr. Carrier could submit those plans to the City of Chicago to obtain permits. Defendant could not proceed with the project without approval of the plans. US Waterproofing obtained final permits for the basement floor on August 26, 2016. Mr. Carrier obtained his permits on August 16, 2016 after submitting the plans without the Plaintiff's approval. Mr. Carrier was then just waiting for Plaintiffs to decide how they intended to proceed with the contract. However, Plaintiffs then chose to declare the contract null and void pursuant to the mortgage contingency provision.

Last, Defendant's failure to promptly notify the Plaintiffs of the stop work order did not cause them damage due to the contract language at paragraph 6 of the Modification states that the remedy for if the Seller becomes aware of matters that require modification of the representations made in the contract they must be resolved prior to Closing. Seller is given until

3

Closing to correct any issues regarding its representation. The Parties never reached closing because the Plaintiffs terminated the contract pursuant to the mortgage contingency.

Thus, there is no damages sustained by Plaintiffs for the fraud found by the Court and Defendant requests a directed verdict in its favor.

### A. A DIRECTED VERDICT SHOULD ENTER AS TO THE RECOVERY OF PUNITIVE DAMAGES

Where punitive damages may be assessed, they are allowed in the nature of punishment and as a warning and example to deter the defendant and others from committing like offenses in the future. *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). And, while the measurement of punitive damages is a jury question, the preliminary question of whether the facts of a particular case justify the imposition of punitive damages is properly one of law. *Id.* The Consumer Fraud Act allows for the recovery of punitive damages where the conduct of the defendant was willful or intentional and done with evil motive or reckless indifference to the rights of others. 815 ILCS 505/10a(a) (West 2006). Plaintiff has failed to show that Defendant acted in this intentional manner.

The Court entered a finding that Defendant's fraudulent conduct (1) Plaintiffs had the MLS listing prior to contracting with Defendant that set forth the property had an enclosed balcony and Defendant failed to enclose the balcony, (2) prior to contracting with Defendant, Defendant had knowledge of a permit issue which resulted in the stop work order and (3) Defendant could not complete the project in six months. The evidence has demonstrated that Defendant posted the MLS listing in March by copying the listing from the neighboring property. This occurred after Plaintiffs had viewed the property and saw the layout of 1645 W. Farragut. Moreover, the evidence demonstrates that the parties worked through various plans and agreed upon a plan that did not include and enclosed second floor balcony.

4

Second, Defendant worked with US Waterproofing to resolve the permit issue and did not intentionally hide this issue from the Plaintiff but instead attempted to move forward with the final plans so that Defendant could obtain his permits which were needed for the plumbing and electrical work that would have to be placed prior to US Waterproofing pouring the basement floor. Plaintiffs were aware that Defendant could not get its final permit and begin the work on the house until the final plans were approved. Further, Defendant thought the permit issues were resolved when he entered into both contracts.

Last, Plaintiffs state in numerous emails that they paid a premium for the house so that they could get flexibiltiy in the timing of the project. The contract sets forth that the 6 month completion date was estimated and further sets forth it can be extended for delays beyond the Seller's control. Plaintiffs asked for extensions repeatedly and set forth they had paid for that flexibility. Accordingly, punitive damages are not warranted in this matter.

## B. A DIRECTED VERDICT SHOULD ENTER AS TO BREACH OF CONTRACT

Plaintiff set forth that Defendant breached the contract (1) by entering into the contract with the knowledge there was existing building code violations or of improvements to the property that had been made without initial permits; (2) failed to disclose the issues after the contracts were entered into; (3) refused to enclose the second floor balcony; (4) failed to timely perform because of the stop work order and (4) refused to release the earnest money under the mortgage contingency provision. Plaintiffs have failed to demonstrate Defendant agreed to these provisions in the contract, that Defendant breached these provisions, and that they sustained damages.

Paragraph 23 of the contract in pertinent part states: "Seller has no knowledge of nor has Seller received any written notice from any association or governmental entity regarding (a) zoning, building, fire or health code violations that have not been corrected; ..(g) any improvements to the Real Estate for which the required initial and final permits were not obtained;.." There was no evidence introduce that prior to entering into either the April 17, 2016 Contract or the May 2, 2016 Modification that Defendant had received any written notice form any governmental entity. Further, Defendant testified and the emails demonstrated that prior to signing the Contract and the Modification he believed that the permit issue of US Waterproofing had been resolved. Instead, the evidence demonstrated in Plaintiffs Exhibit 21 that at the time of the April 17, 2016 contract that on March 26, 2016 US Waterproofing communicated that it was in need of revised plans to straighten out its permit issues. Mr. Carrier submitted those revised plans to US Waterproofing on that same date and was told that it would have the necessary permits within three to six days. Prior to April 17, 2016, US Waterproofing gave no indication that there was still outstanding issues with the permits. It was not until after signing the Contract Mr. Carrier was notified on April 25, 2016 that US Waterproofing still did not have the permits because it needed Mr. Carrier's permit number to complete the application. The testimony and Plaintiffs Exhibit 11 it again demonstrates that Mr. Carrier provided that information prior to May 2, 2016. At the signing of the Modification contract (Plaintiffs' Exhibit 2), Mr. Carrier again believed that the permit issue for US Waterproofing was resolved. It was Mr. Carrier's representation and his knowledge at the time of signing the Contract and Modification that the permit issues had been corrected and that the appropriate permits were obtained.

As to Mr. Carrier's failure to disclose the permit issues or the stop work order after the Contract was entered into the provision states that if Seller becomes aware after signing he must

correct them prior to Closing. Mr. Carrier himself could not obtain his own permit and begin the project until Plaintiffs signed off on the plans for the project. The Contract instead sets forth Defendant must correct any issue by Closing as set forth in Paragraph 23.

Third, the Modification of the Contract did not include enclosing the second floor balcony. Addendum 2 to the Modification at Plaintiffs Exhibit 2 sets forth what Defendant agreed to provide Plaintiffs in terms of changes to the plans. The enclosed balcony was not an agreed change but a change that would be explored by the parties. On June 20, 2016, Plaintiffs had agreed to move forward with the plans without the enclosed balcony. Plaintiffs Exhibit 32 and 33.

Plaintiff states that Defendant breached the contract when it failed to disclose the stop work order on June 6, 2016. However, the remedy available for Plaintiff for a change in the representation after signing is for the issue to be resolved prior to closing. The clear contract language states that if Seller discloses a change in representations such issue must be resolved prior to closing. Moreover, Defendant obtained its permit on August 16, 2021 and US Waterproofing obtained its permit on August 26, 2016. The project could not move forward because Plaintiff failed to commit to a final plan. When Plaintiffs sent a letter declaring the contract null and void on October 17, 2016 due to their failure to obtain a mortgage commitment, Defendant was able to move forward with the underground plumbing and electrical work so that US Waterproofing could pour the basement floor. Further, Mr. Ewing testified that he knew that the closing date could be extended due to the changes the Plaintiffs were making in the plans.

Defendant did not breach the contract by placing the deposit in escrow. Plaintiffs sent a letter declaring the contract null and void pursuant to paragraph 2 of the Modification Agreement

at Plaintiffs Exhibit 2. This provision is for the mortgage contingency. Plaintiffs contended that they could not obtain a mortgage commitment. However, paragraph 2 states that a party causing delay in the loan approval process shall not have the right to terminate under this paragraph. Plaintiffs Exhibit 24 sets forth that Defendant gave notice that Plaintiffs were in breach of the contract due to this provisions and others. Accordingly, Defendant demanded the escrow amount pursuant to the liquidated damage provision. The escrow provision in the contract states that the money remains in escrow until the parties agree to its release or order of the court. Because there was a dispute between the parties and pursuant to the Contract paragraph 26, both parties would not release the escrow amount to the other party. Thus, the funds remain in escrow pursuant to the terms of the Contract.

Moreover, Plaintiffs prior breach prevented Defendant's performance. A party to a contract may not complain of the nonperformance of the other party where that performance is prevented by his own actions. *Ehard v. Pistakee Builders, Inc*., 111 Ill.App.2d 227, 250 N.E.2d 1(1st Dist. 1969); *Gamm Construction Co. v. Townsend* (1975), 32 Ill.App.3d 848, 336 N.E.2d 592 (1st Dist. 1975). A party cannot take advantage of a condition precedent the performance of which he has rendered impossible. *Barrows v. Maco, Inc.*, 94 Ill. App. 3d 959, 966, 419 N.E.2d 634, 639 (1st Dist. 1981). Plaintiffs claim that Defendant could not complete the project in time was a breach of contract was prevented by their failure to finalize the plans so they could be submitted to the City of Chicago. Delays and nonperformance while they amount to a failure to perform are excused where performance is prevented by the other party to the contract. *Id. at 966.*

Moreover, Plaintiffs prior breach of the mortgage contingency provision rendered it impossible for Defendant to perform. First, Paragraph 8 of the Contract states that Buyer must

make written loan application within five (5) Business Days after the date of acceptance; failure to do so shall constitute an act of Default under this Contract. Plantiffs failed tom make this written loan application within five business days. Further,

Plaintiffs **Exhibit 2**, Contract 2. Contract 2 contains a "Purchaser's Mortgage" provision which reads as follows:

> This Agreement is contingent upon the ability of Purchaser to secure, by August 15, 2016, a mortgage commitment for $940,000.0, or such lesser sum as Purchaser shall accept, with a rate of interest not to exceed 4.5% amortized over 30 years with points/origination charges, if any of 0%. Purchaser shall pay the usual and customary charges imposed by the lending institution; including but not limited to credit and appraisal fees. **Purchaser shall make timely application or applications for and shall make every reasonable effort to obtain such commitment, and shall take no action or omission after the date hereof which would tend to damage the Purchaser's creditworthiness or ability to pay such mortgage loan**…Should the Purchaser not close for any reason, not through the fault of Seller, including inability to obtain a mortgage and Purchaser has made selections, upgrades and/or change orders, Seller reserves the right to back-charge the earnest money, prior to releasing the balance to Purchaser in order to rectify, if necessary, Purchaser's selections. **A party causing delay in the loan approval process shall not have the right to terminate under this paragraph.** [emphasis added]

Plaintiffs notified Defendant of their inability to obtain a mortgage commitment by sending a letter on August 15, 2016 stating, "I am writing to advise you that Randall Ewing and Yasmany Gomez do not have a mortgage commitment as of this date." *See*, Plaintiff Exhibit 27. The Contract included explicit unambiguous terms that the Purchaser "shall make every reasonable effort to obtain such commitment." *See*, Contract 2. The Courts have provided guidance as to what does and does not constitute reasonable efforts. In *Smith v. Vernon*, 6 Ill. App. 3d 434 (1972), Plaintiff/Buyer put down 10% in earnest money towards the purchase of a home and was subject to a contract provision that was contingent on 'purchasers' ability to secure a first mortgage." *Id.* at 435. In *Smith*, Buyer had contacted four different lenders and

received three negative responses. The fourth lender offered Plaintiff a mortgage; he rejected because the down payment amounted to approximately 42% of the purchase price which he felt was "too large." *Id.* at 436. The Appellate Court reversed the decision of the trial court, allowing Seller to keep the retained earnest money. In reversing, the Court made several rulings relating to contract language. First, it held that "reasonableness" is to be determined and interpreted by the court according to business practice and custom in the place where the contract was performed, not to be applied in a subjective way to the sole buyer. Moreover, the Court found that the word "ability" carried special significance. "The inclusion of the word ability operates, in our opinion, as a modification of any absolute requirement to secure a mortgage. Since the interpretation of the contract would be entirely different if the word 'ability' had been deleted, the contract must be interpreted as if the word is intended as a modified of the clause." In other words, the Court held that if the provision contains the word ability, the salient fact is whether the buyer could have obtained financing, not whether they did. The Court held that Plaintiffs failed to demonstrate that they lacked the ability to secure a loan and thus failed to live up to the terms of the contract, allowing for a forfeiture of the 10% earnest money. *Id.* at 437-438. Plaintiffs have failed to demonstrate that they made reasonable efforts to obtain a mortgage commitment. Accordingly, were not entitled to the return of the earnest money pursuant to paragraph 2 of the Modification.

Last, Plaintiffs have failed to prove damages for Defendant's breach of contract. Plaintiffs could not obtain a mortgage and could not afford to purchase the property. Accordingly, Plaintiffs did not move forward with purchasing the property.

Plaintiffs also request damages for loss home appreciation and interest on the money held in escrow. This is a double recovery. Further they request damages for time to and from

10

Chicago but offer no evidence of how many time, whether Mr. Ewing was coming for work or the cost of this travel. Last, there was no evidence presented as to a rental in Chicago. The email Mr. Ewing wrote to Ms. Heitman of 5/3rd bank set forth that the Chicago house would be a second home and they would reside in Florida.

WHEREFORE, 1645 W. Farragut respectfully requests that the Court enter a directed verdict in its favor on Plaintiffs Complaint and for other relief this Court deems just.

Respectfully submitted,

**1645 W. FARRAGUT, LLC**

By: __/s/Amy Galvin Grogan_____
One of its Attorneys

Amy Galvin Grogan (ARDC#6229364)
Julianne Gerding
GROGAN HESSE & UDITSKY, P.C.
340 W Butterfield Rd., Suite 2A
Elmhurst, IL 60126
Tel. No. (630) 833-5533
agrogan@ghulaw.com