IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RANDALL EWING and<br>YASMANY GOMEZ<br><br>    Plaintiff/Counter-Defendants,<br><br>v.<br><br>1645 W. FARRAGUT, LLC<br><br>    Defendants/ Counter-Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 1:16-cv-09930<br>)<br>)<br>)<br>)<br>) |

**RESPONSE TO MOTION FOR DIRECTED VERDICT
REGARDING PURCHASER'S MORTGAGE PROVISION**

NOW COMES Defendant/Counter Plaintiff, 1645 W. Farragut, LLC ("1645"), by and through Its attorneys, Grogan Hesse & Uditsky, P.C., hereby moving the Court to deny the Motion for Directed Verdict states as follows:

1

## INTRODUCTION/FACTUAL BACKGROUND

This matter concerns a breach of contract with respect to a single-family residence located at 1645 W. Farragut in Chicago, IL. Plaintiffs, a now-married couple, contracted with Defendant for the purchase of a custom rehab home to be built from the ground-up pursuant to their particular specifications. Plaintiffs provided a pre-approval letter which listed only Randall Ewing, Jr. for the mortgage pre-qualification. Plaintiff, Yasmany Gomez was at the time of offer, and for years prior, unemployed with no other source of income. Two contracts were signed with respect to the sale of the home. The first contract ("Contract 1") included earnest money in the amount of $35,000.00. *See* Plaintiff's Exhibit 1, Contract 1. The second contract ("Contract 2"), a modification to the first, required a much larger earnest money deposit due to the custom nature of the home and the carrying risks, carrying expenses of the seller, and expected closing commission due to Carrier as agent associated with the Contract. *See* Plaintiffs **Exhibit 2**, Contract 2. Contract 2 contains a "Purchaser's Mortgage" provision which reads as follows:

> This Agreement is contingent upon **the ability** of Purchaser to secure, by August 15, 2016, a mortgage commitment for $940,000.0, or such lesser sum as Purchaser shall accept, with a rate of interest not to exceed 4.5% amortized over 30 years with points/origination charges, if any of 0%. Purchaser shall pay the usual and customary charges imposed by the lending institution; including but not limited to credit and appraisal fees. **Purchaser shall make timely application or applications for and shall make every reasonable effort to obtain such commitment, and shall take no action or omission after the date hereof which would tend to damage the Purchaser's creditworthiness or ability to pay such mortgage loan**…Should the Purchaser not close for any reason, not through the fault of Seller, including inability to obtain a mortgage and Purchaser has made selections, upgrades and/or change orders, Seller reserves the right to back-charge the earnest money, prior to releasing the balance to Purchaser in order to rectify, if necessary, Purchaser's selections. **A party causing delay in the loan approval process shall not have the right to terminate under this paragraph.** [emphasis added]

2

At the time of breach of the Contract, Plaintiffs had placed 10% of the purchase price down as earnest money ($117,500.00.) Ewing and Gomez subsequently refused to make selections regarding integral components of the renovation and continued to suggest various structural modifications to the home. Due to their failure to make selections, no progress could be made on the architectural or engineering designs of the home or application for permits.

Plaintiffs notified Defendant of their inability to obtain a mortgage commitment by sending a letter on August 15, 2016 stating, "I am writing to advise you that Randall Ewing and Yasmany Gomez do not have a mortgage commitment as of this date." *See*, Plaintiff Exhibit 27. The letter did not indicate what efforts Plaintiff had made to secure financing. Defendant arranged to have Plaintiff apply for a loan with other lenders. Mr. Ewing was informed he was approved for a loan, however Mr. Ewing refused to move forward with the loan. *See,* Plaintiffs Exhibit 10, Hoppe letter ("as we stand now with the current information I have, we would be able to offer a loan to you with the application and mortgage in solely your name, and we can structure title to be in both your and Yasmany's name.) By not making "every reasonable effort" to secure the mortgage commitment, Plaintiffs defaulted on the mortgage provision of the Contract which eliminated their ability to cancel Contract 2 pursuant to the Mortgage Provision. Plaintiffs' delays in violation of the contract provision prohibited their use of the mortgage provision to terminate the contract. Plaintiff terminated Contract 1 and 2 pursuant to paragraph 2 of Contract 2 on October 17, 2016. See Defense Exhibit 11. As a result of Plaintiffs' breach of contract and the liquidated damages provision in Contract 2, Defendant retained the earnest money in escrow pending resolution of the conflict.

**ARGUMENT**

**I.     Plaintiffs Failed to Make Every Reasonable Effort to Secure Financing Under Express Provisions Of The Contract**

If the language of a contract is clear and unambiguous, the intent of the parties must be determined solely from the language of the contract document itself, which should be given its plain and ordinary meaning, and the contract should be enforced as written. *Richard W. McCarthy Tr. Dated Sept. 2, 2004 v. Illinois Cas. Co.*, 408 Ill. App. 3d 526, (2011).

In this case, the Contract included explicit unambiguous terms that the Purchaser "shall make every reasonable effort to obtain such commitment." *See*, Contract 2. The Courts have provided guidance as to what does and does not constitute reasonable efforts. In *Smith v. Vernon*, 6 Ill. App. 3d 434 (1972), Plaintiff/Buyer put down 10% in earnest money towards the purchase of a home and was subject to a contract provision that was contingent on 'purchasers' ability to secure a first mortgage." *Id.* at 435. In *Smith*, Buyer had contacted four different lenders and received three negative responses. The fourth lender offered Plaintiff a mortgage; he rejected because the down payment amounted to approximately 42% of the purchase price which he felt was "too large." *Id.* at 436. The Appellate Court reversed the decision of the trial court, allowing Seller to keep the retained earnest money. In reversing, the Court made several rulings relating to contract language. First, it held that "reasonableness" is to be determined and interpreted by the court according to business practice and custom in the place where the contract was performed, not to be applied in a subjective way to the sole buyer. Moreover, the Court found that the word "ability" carried special significance. "The inclusion of the word ability operates, in our opinion, as a modification of any absolute requirement to secure a mortgage. Since the interpretation of the contract would be entirely different if the word 'ability' had been deleted, the contract must

4

be interpreted as if the word is intended as a modifier of the clause." In other words, the Court held that if the provision contains the word ability, the salient fact is whether the buyer could have obtained financing, not whether they did. The Court held that Plaintiffs failed to demonstrate that they lacked **the ability** to secure a loan and thus failed to live up to the terms of the contract, allowing for a forfeiture of the 10% earnest money. *Id*. at 437-438.

This case is almost identical to Smith. In this case, Ewing had placed 10% down in earnest money. Despite having submitted a pre-approval letter solely in Ewing's name, Ewing and Gomez contacted lenders together and were rejected. Ewing, however, was approved for a loan in solely his name. Ewing, like the Buyer in Smith, had **the ability** to secure the loan required for the property but he chose not to take it. This fact is undisputed. Plaintiffs' choice to forego the financing opportunity was a violation of the express provision of the contract as a matter of law.

Moreover, the contract explicitly requires that Plaintiffs "take no action or omission after the date thereof which would tend to damage Purchaser's creditworthiness or ability to pay such mortgage loan." The Plaintiffs did just that. They entered into the contract using a pre-approval letter solely in Ewing's name but then later claimed they were unable to procure a loan because of Gomez's credit. This act, of only applying for loans together as a couple (knowing Gomez's credit would adversely affect and defacto eliminate any chance of obtaining any loan) is *an act or omission* which further violated the Contract provision. For all the foregoing reasons, the Court should find that Plaintiffs violated the financing provision. The Court should grant Defendants Motion for Summary Judgment and bar any related testimony from the jury.

II. **Plaintiffs Failed to Make Every Reasonable Effort to Secure Financing Under Implied Provision of Good Faith and Fair Dealing.**

5

Every contract in Illinois has an implied provision of good faith and fair dealing. *Louis v. Lexington Dev. Corp.*, 253 Ill. App. 3d 73, 78 (1993). A party cannot escape a contract with an implied provision of good faith and fair dealing by making "token efforts" to satisfy a contractual provision. *Mary Docas v. G.A.D. Incorporated and Richard I. Frick,* 84 Ill. App. 3d 883, 886.

In *Docas*, the Court discusses "reasonable efforts" as required by the implied provision of good faith and fair dealing in a contract for purchase of business. In *Docas*, Defendant contracted to buy a fast-food business. The contract included a provision stating that "[Defendants'] offer to buy is dependent upon the granting of acceptable lease terms by the lessor on the premises…" The Court found that the aforementioned provision "required that the buyer use all reasonable efforts in reaching an agreement." *Id.* at 886. The Court found that the Defendants two efforts to secure a lessor for the property were insufficient to establish "reasonable efforts" The Court reasoned, "This provision…did not allow Africk to escape liability under the contract by authorizing him to only make a token effort to negotiate the lease." *Id.* at 886.

Similarly in this matter, there is an implied provision of good faith and fair dealing which required Plaintiff to make more than token efforts to secure financing. Ewing failure to move forward with financing after learning he qualified demonstrates that Plaintiffs were in violation of the implied provision of good faith and fair dealing under Illinois contract law. Plaintiff did not make all reasonable efforts to secure financing due to Ewing refusal to agree to financing solely in his name. For the foregoing reasons, the Court should find that as a matter of law Ewing's actions constituted a breach of the implied provision of good faith and fair dealing. Further, Plaintiffs should be barred from bringing forth any evidence of any alleged subsequent breach made by Defendant.

WHEREFORE, 1645 W. Farragut respectfully requests that the Court deny Plaintiffs Motion for Directed Verdict and for other relief this Court deems just.

Respectfully submitted,

**1645 W. FARRAGUT, LLC**

By: __/s/Amy Galvin Grogan_____

One of its Attorneys

Amy Galvin Grogan (ARDC#6229364)
Julianne Gerding
GROGAN HESSE & UDITSKY, P.C.
340 W Butterfield Rd., Suite 2A
Elmhurst, IL 60126
Tel. No. (630) 833-5533
agrogan@ghulaw.com