# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

RANDALL EWING and )
YASMANY GOMEZ, )
                                              )      **CASE NO. 16-CV-9930**
      Plaintiffs/Counter-Defendants, )
                                              )
      v. )      **District Judge Sharon Johnson Coleman**
                                              )
1645 WEST FARRAGUT LLC, )
                                              )
      Defendant/Counter-Plaintiff. )

## <u>PLAINTIFFS' MOTION FOR ATTORNEYS' FEES</u>

Plaintiffs Randall Ewing and Yasmany Gomez, the prevailing parties in this litigation concerning breach of contract and the Illinois Consumer Fraud Act, hereby move the Court for an award of their attorneys' fees in the amount of $266,177.50 in fees, consisting of $70,000 in out-of-pocket fees to Mr. Mora and Mr. Kelly, and $196,177.50 in fees to Mr. Cortazar and Ms. O'Keefe..

## INTRODUCTION

The parties engaged in five years of litigation because Defendant kept both the house and the money. At multiple points over the years, Plaintiffs offered to settle this case, initially for only their earnest money, and later, for the earnest money plus interest and out of pocket attorneys' fees and expenses. Plaintiffs just wanted their money back. Defendant refused this reasonable request, choosing to rely on a liquidated damages clause that was plainly unenforceable. This entire litigation and trial was necessitated by Defendant's insistence that it was somehow entitled to keep the house and $117,500—knowing all the while that work on the project had been halted because a building inspector discovered that Defendant allowed unpermitted work to be performed on the premises. And at multiple points during the trial, the testimony of Defendant's principal was shown to be false, as it was repeatedly contradicted by the Addendum to the parties' agreement, written correspondence, his own prior deposition testimony, and the testimony of disinterested third parties.

Following trial, the jury took just over an hour to declare that Defendant alone had breached the parties' contract, to affirm the reliability and sufficiency of Plaintiffs' evidence on damages, and to award Plaintiffs damages in an amount deemed necessary to compensate them for the economic and emotional toll Defendant had exacted. The rapidity of the jury's deliberations and the amount of the jury's award speaks directly to Defendant's bad faith and the relative merits of the parties' positions. Plaintiffs did not just win, they were vindicated.

Plaintiffs now request an award of attorneys as provided in the parties' contract, and alternatively, pursuant to the Illinois Consumer Fraud Act. While Mr. Ewing performed an extensive

amount of work pro se, no fees are sought for the services he performed. Rather, fees are being sought solely for the out-of-pocket payments made to Attorneys Tim Kelly and Steven Mora, and for the pretrial, trial, and post-trial services rendered by Attorneys Ryan Cortazar and Carol O'Keefe, both of whom were retained on a contingent basis, limited to fees awarded by the Court.

Attorneys' fees are merited in this instance because Defendant's two-fisted money grab necessitated this action, and its bad faith prolonged the litigation. Indeed, the facts established at trial highlight Defendant's abuse of the discovery process:

- Defendant denied a request for admission that the stop work order concerned problems that existed pre-contract. Ex. 1 at ¶¶ 40-41.

- Defendant failed to identify U.S. Waterproofing as an entity with knowledge of the stop work order—even though U.S. Waterproofing performed the unpermitted work, notified Defendant of the inspector's findings, and ultimately paid out on Defendant's claim that it was entitled to compensation from U.S. Waterproofing *for injuries from the stop work order*. Ex. 2 at ¶ 16.

- Defendant refused to produce relevant documents about the stop work order and permits, necessitating an order to compel. ECF No. 77.

Plaintiffs' counsel doggedly pursued the discovery Defendant sought to withhold. At trial, counsel provided the jury compelling evidence establishing that it was the unpermitted work and the stop work order that delayed the project—not Plaintiffs' design decisions. And each time Defendant's principal fabricated a new version of his tale, Plaintiffs' counsel used documentary evidence and sworn testimony to refute it. Accordingly, Plaintiffs should be compensated for their relatively minimal out-of-pocket attorneys' fees. Mr. Cortazar and Ms. O'Keefe should be compensated for their excellent work on reasonable terms. Not granting fees would reward Defendant for its behavior in this lawsuit,

incentivize others to act similarly in the future, and deter other defrauded consumers from vindicating their rights.

## ARGUMENT

### I. The Contract Reflects the Parties' Intent to Award Attorneys' Fees to Plaintiffs and Mandates Such an Award.

Plaintiffs prevailed on their claims that 1645 W. Farragut breached the contract. Paragraph 28 of the 6.1 Contract provides that "the prevailing party in litigation shall be entitled to collect reasonable attorney fees and costs from the non-prevailing party as ordered by a court of competent jurisdiction." Ex. 3. The Modification of the contract does not mention attorneys' fees, but states that "To the extent a subject is not specifically and expressly addressed herein, the parties shall refer to the applicable provision in the April 17, 2016 contract [the 6.1 Contract]." Ex. 4 at p. 1. Because the Modification does not specifically and expressly address attorneys' fees, the provision of the 6.1 Contract awarding those attorneys' fees to the prevailing party controls. When a contract mandates an award of fees—as it does here by stating that such fees "shall" be awarded—a court is required to enforce its plain language and award reasonable attorneys' fees. *See, e.g., Bright Horizons Children's Centers, LLC v. Riverway Midwest II, LLC*, 403 Ill.App.3d 234, 255 (1st Dist. 2010).

### II. Plaintiffs Should Be Awarded Attorneys' Fees Under the Illinois Consumer Fraud Act.

Under the Illinois Consumer Fraud Act, the Court has discretion to award Plaintiffs' attorneys' fees as the prevailing party. 815 ILC 505/10a(c). In deciding to do so, courts consider the following factors: "(1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all consumers or businesses or to resolve a significant legal question regarding the Act; and (5) the relative merits of the parties' positions." *Krautsack v. Anderson*, 223 Ill.2d 541, 554, 861 N.E.2d 633 (Ill. 2006). These factors are not exhaustive, all factors do not need to be satisfied, and no single factor is

required or controls. *Graunke v. Elmhurst Chrysler Plymouth Volvo, Inc.*, 247 Ill.App.3d 1015, 1023 (2nd Dist. 1993) ("We recognize that no single factor is necessarily controlling, nor is this list an exhaustive one"), *abrogated on other grounds by Krautsack*, 223 Ill.2d at 554 (citing *Graunke*'s standard approvingly). In this case, all of the factors either weigh in Plaintiffs' favor or are neutral.

First, the trial demonstrated that Defendant had a high degree of culpability or bad faith. Defendant knowingly and affirmatively misrepresented that work had been done in violation of building codes and without proper permits, which had stopped all work on the property for months, both orally and in the contract. And not only did Defendant wholly disregard his contractual continuing disclosure obligation to correct those representations, it actually lied several more times in blaming Plaintiffs for the delays and attempting to claim their money for delay expenses, even though it knew full well that it could do nothing with their selections. When this litigation began, Defendant spent the first 18 months either affirmatively lying or wholly disregarding its discovery obligations in denying that the stop work order concerned pre-contract building code issues, failing to identify U.S. Waterproofing as having knowledge of the stop work order, and refusing to produce any documents about the stop work order until compelled by the Court. Defendant's intent was clear: prevent Plaintiffs from finding out that work had been stopped the entire time because of building code violations and unpermitted work, and that Defendant knew about these issues before Plaintiffs ever executed the contract. Defendant's bad faith, both before litigation and in litigation itself, heavily justifies an award of attorneys' fees.

Second, the relative merits of the parties' positions favor an award of attorneys' fees. The rapidity and size of the jury's verdict was clear: Defendant's positions had no merit whatsoever. Its claim that Plaintiffs were the cause of U.S. Waterproofing's problems was contradicted by the fact that not a single communication with U.S. Waterproofing mentioned needing Plaintiffs' selections, Carrier's own deposition testimony, and the testimony of the relevant U.S. Waterproofing employee.

Defendant's argument that Plaintiffs could have obtained a mortgage on time even if the home was unfinished was contradicted by the testimony of its own proffered mortgage expert. Defendant's argument that Plaintiffs breached the contract by not making selections on time was contradicted by the contract's plain language stating that Defendant was to proceed with its own selections if Plaintiffs delayed, yet it never did so until around the time the stop work order was removed several months later. Defendant's argument that it was entitled to Plaintiffs' earnest money as liquidated damages was rejected on the pleadings because it was contrary to black-letter law, which any attorney could have determined based on only a short amount of research. Defendant's remaining legal arguments were soundly rejected at summary judgment, yet it persisted in withholding Plaintiffs' earnest money and in challenging that ruling for an additional 2.5 years.

In contrast, Plaintiffs' position that construction had been halted months before they signed the contract and throughout the mortgage contingency period because of unpermitted work in violation of building codes was supported by scores of documents, testimony of disinterested third parties, and deposition testimony. Plaintiffs' position that Defendant promised to enclose the second-floor balcony was supported by Defendant's own advertisement on the property as including an enclosed balcony, communications between the parties both pre-contract and post-contract in which Defendant gave Plaintiffs the option to enclose the balcony, the contract's plain language requiring the provision of all amenities on the adjacent property (which had an enclosed balcony), and Defendant's own admission on the stand that an enclosed balcony could be considered an amenity. The jury decided the merits of the parties' positions quickly and clearly.

Third, an award of fees would deter others from acting the same as the Defendant did here. The fee award would deter two harmful actions pursued by Defendant: (1) the fraud itself, and (2) running up legal fees unreasonably pursuing arguments that the Court rejected at summary judgment to pressure Plaintiffs to abandon their meritorious claims. For the fraud itself, this case involved a

situation in which Defendant sold the house to another, refused to release Plaintiffs' earnest money, and attempted to take that money as its own. Having neither a house nor their money, Plaintiffs' only recourse was to file suit. But Plaintiffs were at a severe disadvantage because $117,500 of their life savings remained in escrow. Plaintiffs deferred many costs through *pro se* representation, but once the case proceeded to trial they necessarily incurred attorneys' fees subject to a contingency agreement. Absent an award of attorneys' fees, future defendants will attempt what Defendant tried here: keep a victim's earnest money and use it as a cudgel knowing that victims will be hard-pressed to incur even more expenses to get it back. Defrauded home buyers will see the earnest money as a sunk cost, and unscrupulous home sellers will recognize their financial upper hand in any ensuing litigation.

Beyond the fraud itself, a fee award would also deter defendants from pursuing wasteful litigation in the face of mounting losses to pressure plaintiffs to abandon their meritorious claims. Even after the Court held at summary judgment that Defendant had defrauded Plaintiffs based on its oral representations and the plain language of the contract, Defendant continued to pursue this losing argument all the way through a jury trial. In another context, the Northern District of Illinois has recognized that "[f]ees are justified because the possibility of paying attorneys' fees may well deter [defendants] from developing unreasonable interpretations of [contracts] as a means of wrongfully denying" money owed. *Egert v. Connecticut Gen. Life Ins. Co.*, 768 F. Supp. 216, 218 (N.D. Ill. 1991). While damages ended up being significant in this case because of the length of time involved, the high value of the property at issue, and the real estate market over the past 5 years, damages will not be significant for most cases of this nature. Put simply, an award of attorneys' fees is the most effective tool for preventing this type of protracted litigation from repeating itself.

Fourth, Plaintiffs sought to resolve, and have successfully resolved, significant legal issues under the ICFA that benefit all homebuyers. Home sellers and buyers enter into contracts to purchase homes, including homes under construction, every day in Illinois. In the course of this litigation,

Plaintiffs presented and resolved several legal issues that will benefit all home buyers facing similar situations in the future. For example, Plaintiffs established that a liquidated damages clause that gave home sellers the right to pursue both liquidated damages and actual damages is an unenforceable penalty. In addition, they also established that deprivation of earnest money constitutes damages under the ICFA, including when the buyer is not ultimately able to purchase the home because of the seller. Plaintiffs also established the measures of actual damages when home buyers are defrauded into executing a contract, deprived of the opportunity to purchase the home, and then deprived of the ability to buy a replacement home when earnest money is not returned. This precedent will benefit home buyers in the future when faced with a developer who attempts to walk away with both the home and the earnest money by relying on an unenforceable liquidated damages clause.

The fifth and final factor—Defendant's position to pay an award—either favors Plaintiffs or favors neither party. Defendant has provided no evidence showing an inability to pay. If Defendant now pleaded poverty, it would be contradicted by the fact that Defendant spent at least $260,000 in legal fees to date with more fees to come. Ex. 5 at 1-2, 28. Having shown a willingness and ability to pay several hundred thousand dollars litigating a cause lost years ago at summary judgment, Defendant should not now be assumed to be unable to pay the legal fees to which Plaintiffs are entitled.

Defendant has not cited any cases to Plaintiffs supporting its claim that fees should not be awarded. The only case Defendant has cited so far to oppose any award of fees is *Ekl v. Knecht*, 223 Ill. App. 3d 234 (Ill. App. 1991). In *Ekl*, the court denied fees because one of "the purposes of allowing attorney fee awards under the Act are to punish and deter violators of the Act" and that a "large punitive damage award was sufficient to serve the above purposes." *Id.* at 245. Here, there were no punitive damages awarded that would already serve a deterrent purpose. The only damages awarded in this case were for Plaintiffs' actual economic damages and emotional distress—damages that merely

make a plaintiff whole. As a result, *Ekl* is inapplicable and there is no basis for refusing to award Plaintiffs their reasonable attorney fees.

Because Defendant continuously exhibited bad faith, needlessly litigated a meritless position, needs to be deterred along with other developers and home sellers who may be tempted to try this gambit in the future, and because Plaintiffs established several legal precedents that will benefit similarly situated home buyers in the future, Plaintiffs should be awarded their reasonable attorneys' fees incurred in prevailing on their claims under the Illinois Consumer Fraud Act.

## III. Plaintiffs' Requested Fees Are Reasonable

Plaintiffs request in $266,177.50 in fees, consisting of $70,000 in out-of-pocket fees to Mr. Mora and $196,177.50 in fees to Mr. Cortazar and Ms. O'Keefe. Defendant offers no valid dispute to the reasonableness of these fees, nor could it when Defendant has paid just as much in its own out-of-pocket fees, including at rates comparable to the rates sought by Plaintiffs' attorneys. Ex. 5 at 1-2, 28 (showing that Defendant paid $260,125.58 in out-of-pocket fees at rates of $265 and $365 an hour).

### A. Plaintiffs Should be Compensated for Their Out-of-Pocket Attorneys' Fees.

Plaintiffs paid $10,000 in out-of-pocket fees to Tim Kelly, who was Plaintiffs' attorney from July 2016 through May 2017. Ewing Decl. at ¶¶ 4, 6 and Ex. B. This work was billed at $240 an hour, an eminently reasonable amount given that Defendant's attorneys have billed at higher rates. *Id.* at ¶ 4 and Ex. A. This work consisted of 41.25 hours in discussing pre-filing settlement and mediation with Defendant, analyzing the contract, drafting a complaint and an amended complaint, and dealing with various service issues, including having to serve Defendant through the Secretary of State's office because Defendant's registered agent Mr. Carrier could not be reasonably located. *Id.* Defendant does not dispute that the claimed hours or rates are reasonable, thus eliminating any requirement to submit and review those time entries or for Plaintiffs to prove the reasonableness of the hourly rates. ECF 295 at 2. Instead, Defendant claims that Plaintiffs should submit evidence proving they made those

payments. *Id.* Plaintiffs are providing that proof in connection with this motion. Ewing Decl. ¶¶ 4, 6 and Ex. B.

Plaintiffs then paid at least $60,000 in attorneys' fees to Steven Mora for his work in the case from May 2017 through the present. Mora Decl. ¶ 4; Ewing Decl. ¶ 3. Mr. Mora worked on this case and was paid for the vast majority of his time at $250/hour, an amount below his normal billable rate of $350/hour that he routinely charges his clients. Mora Decl. ¶ 3. Because the vast majority of the work through summary judgment was performed by Mr. Ewing, which Plaintiffs are not seeking, Mr. Mora only billed and was paid no less than $60,000, or 240 hours, on this case. Mora Decl. ¶ 4; Ewing Decl. ¶ 3. This included the motions on the pleadings, discovery motions, depositions, settlement talks, discovery coordination, summary judgment briefs, defeating Defendant's motions, trial preparation, trial, and post-trial motions. Mora Decl. ¶ 5.

Defendant agrees that if fees are awarded, the amount requested on behalf of Mr. Mora is reasonable and should be awarded, ECF 295 at 2 ("Defendant's position"), thus eliminating the need to submit time records or for Plaintiffs to prove the reasonableness of Mr. Mora's hourly rates.[1]

**B. Mr. Cortazar and Ms. O'Keefe Should be Awarded Their Reasonable Attorneys' Fees.**

Mr. Cortazar and Ms. O'Keefe agreed to represent Plaintiffs on terms such that they were not entitled to any fees unless awarded through fee-shifting. Cortazar Decl. ¶ 2; O'Keefe Decl. ¶ 2.

---

[1] Had Defendant disputed the reasonableness of Mr. Kelly's $240 hourly rate, Mr. Mora's $250 hourly rate, or the reasonableness of their expended hours, that Plaintiffs actually paid these amounts at the rates and hours expended despite no guarantee of success renders these fees presumptively reasonable and eliminates the need to scrutinize time records. *See Balcor Real Estate Holdings, Inc. v. Walentas-Pheonix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996) ("Courts award fees at the market rate, and the best evidence of the market value of legal services is what people pay for it. Indeed, this is not 'evidence' about market value; it is market value. Although courts interpolate the word 'reasonable' into clauses of this kind, the best guarantee of reasonableness is willingness to pay."); *Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069, 1075-76 (7th Cir. 2004) ("Because of the resulting uncertainty about reimbursement, Taco Bell had an incentive to minimize its legal expenses (for it might not be able to shift them); and where there are market incentives to economize, there is no occasion for a painstaking judicial review.").

Defendant now argues that Mr. Cortazar and Ms. O'Keefe are not entitled to any fees unless Plaintiffs first paid fees to Mr. Cortazar and Ms. O'Keefe, but that argument has been rejected many times over. In particular, in *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 988 N.E.2d 75 (Ill. 2013), the Illinois Supreme Court held that statutes permitting an award of "reasonable attorneys' fees" do "not indicate that recoverable attorney fees are limited to those actually incurred or paid by the plaintiff in the litigation. Rather, use of the phrase 'reasonable attorney fees' indicates an intent to allow recovery based on the prevailing market rate for the attorney's services." *Id.* at 86. As the court noted, any concern about a plaintiff's double-recovery can be eliminated when any fees awarded that were not paid out-of-pocket go to the attorneys and not the plaintiff. *Id.* The Supreme Court also rejected a cost-limited approach for a statute that uses identical language as the ICFA in *Blum v. Stenson*, 465 U.S. 886 (1984) (adopting reasonable market rate standard instead of cost-based standard).[2] To address this concern, Mr. Ewing is submitting a declaration under penalty of perjury stating that he will not receive any compensation whatsoever from any fees ultimately collected by Mr. Cortazar, Ms. O'Keefe, and/or the law firm Korein Tillery LLC. Ewing Decl. ¶ 2.

Defendant has not proffered any cases that support its alternative argument that Mr. Cortazar and Ms. O'Keefe should not be awarded fees because they are employees of the same law firm as Mr. Ewing. Defendant relies on *State of Illinois ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 115 N.E.3d 923 (Ill. 2018), which sets forth the general rule that an attorney representing himself *pro se* is not entitled to fees. *Diamond* held that this principal applies when the plaintiff is a law firm, and the attorneys representing the plaintiff are members of the law firm, because in such cases the attorneys and the plaintiff are the same person and thus are in effect engaged in a pro se representation. In this case, however, Korein Tillery LLC was not a plaintiff. Mr. Cortazar and Ms. O'Keefe were not

---

[2] While the statutes at issue in *Blum* and *Palm* were different than the Illinois Consumer Fraud Act, the both decisions rested on the use of the language "reasonable attorneys' fees," which is the same languages used in the Illinois Consumer Fraud Act in 815 ILCS 505/10a(c).

representing their own law firm pro se, they were representing Plaintiffs in relation to a transaction that had nothing to do with the business of the firm.

Similarly, the court in *Stein v. Kaun*, 91 N.E. 77 (Ill. 1910), held that no "allowance will be made to a firm of which the trustee or mortgagee is a member or to a partner of the trustee or mortgagee, if the amount is allowed to be shared in by the firm." (internal citations omitted). The court noted that, while fees could have been awarded had the plaintiff established that they would not share in any award of fees as a member of the firm, the plaintiff in that case did not do so. But here, Mr. Ewing is declaring that he will not receive any compensation whatsoever as a result of any fees awarded to Mr. Cortazar, Ms. O'Keefe, or Korein Tillery. Ewing Decl. ¶ 2. There simply is no authority to suggest that Mr. Cortazar and Ms. O'Keefe should not be awarded their reasonable attorneys' fees because they are employees of the same law firm as a plaintiff when the plaintiff has foresworn any financial interest whatsoever in the award.

Mr. Cortazar and Ms. O'Keefe have submitted declarations and time entries setting forth in precise detail the amount of time expended and stating that all time spent was reasonable and necessary to the prosecution of this case. Cortazar Decl. ¶¶ 5-6 and Ex. A; O'Keefe Decl. ¶¶ 5-6 and Ex. A. If Defendant now attempts to dispute the reasonableness of the amount of hours expended by Mr. Cortazar and Ms. O'Keefe, it waived that argument by not doing so in the Joint Statement with the specificity required by LR 54.3. Defendant did not describe a "specific dispute" about time expended in the Joint Statement, LR 54.3(e)(3), nor did it provide "respondent's position as to the … compensable hours, appropriate rates, and totals for each biller listed by movant," LR 54.3(e)(2); ECF 295 at 2 ("Defendant's position"). Having taken no position on the proper amount of "compensable hours" for Mr. Cortazar and Ms. O'Keefe in the Joint Statement, Defendant has forfeited any argument that specific entries by Mr. Cortazar or Ms. O'Keefe were not reasonably and necessarily expended.

To the extent Defendant's objection to "the reasonableness of attorneys' fees" for Mr. Cortazar and Ms. O'Keefe "for work performed for less than five months," ECF 295 at 3, could be construed as disputing the reasonableness of the time expended despite having taken no position on the amount of compensable hours under LR 54.3, it should not be credited. Mr. Cortazar and Ms. O'Keefe spent a combined total of 552.6 hours in preparing for trial, during trial, and after trial. Cortazar Decl., Ex. A; O'Keefe Decl., Ex. A. Yet, Defendant's attorneys Ms. Grogan and Ms. Gerding, who began their representation after the motions for summary judgment, themselves spent 671.05 hours. Ex. 5 at 28. Ms. Grogan and Ms. Gerding began preparing for trial as early as February 2020. Ex. 5 at 4. Mr. Cortazar's and Ms. O'Keefe's shorter timeframe to prepare for trial in no way undercuts the reasonableness of the hours expended, especially when they spent significantly less total hours than Ms. Gerding and Ms. Grogan preparing for the same trial, just in a shorter timeframe.

With respect to Mr. Cortazar's and Ms. O'Keefe's hourly rates, Defendant once again failed to provide its "position as to … the appropriate rates" as required by LR 54.3(e)(2), thus waiving any challenge to their claimed hourly rate. Nevertheless, had Defendant properly disputed the rates sought by Mr. Cortazar and Ms. O'Keefe, they are eminently reasonable. Mr. Cortazar graduated from Harvard Law School in 2016 and has been a practicing attorney for 6 years, including a year spent as a clerk to the Honorable David F. Hamilton of the United States Court of Appeals for the Seventh Circuit. Cortazar Decl. ¶ 3. Mr. Cortazar regularly works on some of the most sophisticated and complex cases in the country on contingency, with a standard requested rate of $650/hour. Nevertheless, recognizing that rates are to be awarded comparable to the market rates for this specific type of litigation, a matter less complex and with less risk than he normally handles, Mr. Cortazar seeks to be awarded fees based on an hourly rate that is only half of his normal hourly rate, or $325/hour. The reasonableness of this market rate for this type of case is self-evident in that other attorneys on

the exact same case regularly bill at $350/hour (Mr. Mora), $365/hour (Ms. Grogan), and $265/hour (Ms. Gerding). Mora Decl. ¶ 3; Ex. 5.

The reasonableness of Mr. Cortazar's $325 requested hourly rate is further supported by market surveys such as the Laffey Matrix, a commonly used benchmark for courts in this district. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011) ("We do not question that [the Laffey Matrix] can assist the district court with the challenging task of determining a reasonable hourly rate.").[3] The Laffey Matrix for this timeframe for an attorney 4-7 years out of law school reflects an hourly rate of $468. *See* www.laffeymatrix.com. Mr. Cortazar requests a rate in this case that is approximately 33% less than set forth in the Laffey Matrix.[4] Courts in this district have routinely awarded $325 or more for attorneys with comparable experience to Mr. Cortazar. *See, e.g., Mouloki v. Epee*, 2017 WL 2791215, at *4-5 (N.D. Ill. June 27, 2017) (awarding $400/hour for Ms. Jacob, with 4-7 years of experience); *Blackwell v. Kalinowski*, 2012 WL 469962, at *5 (N.D. Ill. Feb. 13, 2012) (awarding $295/hour for an attorney with six years of experience based on **market rates 10 years ago**); *Demitro v. General Motors Acceptance Corp.*, 388 Ill.App.3d 15, 23 (1st Dist. 2009) (noting market rates more than 13 years ago in consumer fraud actions ranging from $285/hour for 3-year associates up to $550/hour).

Had Defendant properly disputed Ms. O'Keefe's requested hourly rate or proffered an alternative as it was required to do, her requested rate of $400/hour would nonetheless still be

---

[3] While the 7th Circuit reversed the district court in *Pickett* based on its reliance on the Laffey Matrix, it did so because the court reduced the requested rate based on the Laffey Matrix without giving the parties an opportunity to address it. Here, however, Plaintiffs are relying on the Laffey Matrix and are requesting a rate dramatically lower than the Laffey Matrix.

[4] While the Laffey Matrix has received some criticism for being imprecise and for overly weighting years of experience relative to other factors that can determine a reasonable hourly rate such as prior success, education, and specialization, that criticism only applies to the sharp increase in rates for attorneys more than 8 years out of law school, and not attorneys such as Mr. Cortazar. *See, e.g., Mouloki v. Epee*, 2017 WL 2791215, at *4 (N.D. Ill. June 27, 2017).

reasonable. Ms. O'Keefe is a graduate of Harvard Law School with more than 15 years of experience, currently as a partner who works on some of the most sophisticated and complex cases in the country on contingency, with a standard requested rate of $800-900/hour. Nevertheless, recognizing that rates are to be awarded comparable to the market rates for this specific type of litigation, a matter less complex and with less risk than she normally handles, Ms. O'Keefe seeks to be awarded fees based on an hourly rate that is only half of her normal hourly rate, or $400/hour. This rate is comparable to the $365/hour rate charged by Defendant's lead counsel, Ms. Grogan. This rate is further supported by the Laffey Matrix, which establishes a market rate of $764/hour for an attorney with 11-19 years of experience. *See* www.laffeymatrix.com. While the Laffey Matrix has sometimes been criticized for overemphasizing the years of experience of an attorney and setting high rates for attorneys with more than eight years of experience, this criticism cannot apply here when Ms. O'Keefe is seeking an award at a rate of only $400/hour, less than that set forth for an attorney with only 4-7 years of experience. *See, e.g., Mouloki v. Epee*, 2017 WL 2791215, at *4 (N.D. Ill. June 27, 2017) (awarding $400/hour for Ms. Jacob, with 4-7 years of experience). Ms. O'Keefe's requested rate of $400/hour is more than reasonable and justified in this case.

## CONCLUSION

For the aforementioned reasons, Plaintiffs respectfully request an order awarding them $70,000 for their out-of-pocket attorneys' fees, and awarding Mr. Cortazar and Ms. O'Keefe $196,177.50 in attorneys' fees.


Dated: March 4, 2022                                    /s Steven H. Mora

                                                        Steven H. Mora
                                                        2801 Lakeside Drive
                                                        Suite 207
                                                        Bannockburn, Illinois 60015
                                                        IL Bar No: 1953842
                                                        *Attorney for Plaintiffs*