**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

RANDALL EWING, AND YASMANY GOMEZ,

Plaintiffs/Counter-Defendants,

v.

1645 WEST FARRAGUT, LLC,

Defendant/Counter-Plaintiff.

Case No. 16-cv-9930

Judge Sharon Johnson Coleman

**MEMORANDUM OPINION AND ORDER**

On November 10, 2021, a jury returned a verdict in favor of plaintiffs Randall Ewing and Yasmany Gomez in the amount of $905,000 in relation to their breach of contract, fraud, and Illinois Consumer Fraud Act ("ICFA") claims against defendant 1645 W. Farragut, LLC. Before the Court is defendant's renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). For the following reasons, the Court denies defendant's Rule 50(b) motion. The Court will address defendant's Rule 59(a) motion for a new trial in a separate order.

**Background**

The Court ruled on multiple issues before trial and presumes familiarity with its earlier rulings.[1] Plaintiffs, citizens of Florida, brought this diversity jurisdiction lawsuit against defendant limited liability company, whose members are Erik Carrier, and his father, Gregory F. Carrier, both citizens of Illinois. Erik Carrier was also defendant's real estate agent. The parties entered into two real estate agreements on April 16, 2016 and May 2, 2016 in relation to plaintiffs' attempted purchase of a single-family residence in Chicago that was being gutted and renovated. The licensed

[1] In the words of William Shakespeare, if there ever was a modern day situation that fit the phrase of "a pox on both your houses," this case fits the bill. In the end, however, plaintiffs presented evidence and testimony that the jury accepted and found credible.

general contractor for the gut rehab project was Erik Carrier. After things went awry, plaintiffs brought breach of contract, common law fraud, and ICFA claims against defendant. Defendant then filed a breach of contract counterclaim against plaintiffs. After the parties filed cross-motions for summary judgment, the Court granted plaintiffs' partial summary judgment motion as to liability (but not damages) on their fraud and ICFA claims based on defendant's failure to disclose a stop work order concerning a lack of permit to work on the property's basement.

After trial, the jury found defendant liable in relation to its fraudulent representation about enclosing the second-floor balcony on the property and that defendant breached the parties' real estate agreements, but that plaintiffs had not. The jury awarded a total of $905,000 in fraud damages, but did not award breach of contract damages to plaintiffs because the jury was instructed about Illinois' prohibition of double recovery for the same injury. *See Narkiewicz-Laine v. Doyle*, 930 F.3d 897, 903 (7th Cir. 2019); *Thornton v. Garcini*, 928 N.E.2d 804, 811, 340 Ill.Dec. 557, 564, 237 Ill.2d 100, 111 (Ill. 2010).

**Legal Standard**

After a jury verdict, a district court may "direct the entry of judgment as a matter of law" if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed.R.Civ.P. 50(a), (b). Rule 50(b) imposes a high bar because courts give the nonmovant the benefit of every inference while refraining from weighing witness credibility and trial evidence. *Bowers v. Dart*, 1 F.4th 513, 519 (7th Cir. 2021). Moreover, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods. Inc.,* 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Under this standard, the Court will only disturb the jury's verdict if no rational jury could have found for plaintiffs. *Bowers*, 1 F.4th at 519.

**Discussion**

In its motion, defendant argues plaintiffs failed to prove damages as a result of any fraudulent representations. The first basis of defendant's argument is that plaintiffs could not obtain a mortgage to purchase the real property in the first instance, therefore, defendant did not cause any injury. To give context, Matthew Hoppe, a mortgage loan originator, testified at trial that plaintiffs would qualify for a mortgage if plaintiff Ewing, alone, was on the mortgage, but allowed for both Ewing and Gomez to be on the real property's title. At trial, plaintiffs testified they would have proceeded with this option had defendant not committed fraud prior to the mortgage commitment deadline in August 2016. Giving plaintiffs the benefit of every factual inference, defendant has failed to meet its Rule 50(b) burden that plaintiffs could not obtain a mortgage.

Next, defendant contends plaintiffs failed to prove damages in relation to defendant's failure to enclose the second-story balcony because plaintiffs agreed not to enclose the balcony in a June 20, 2016 email. The relevant June 20 email, however, discusses the front porch and side entrance of the property, including whether the front porch would be enclosed, not the second-story balcony. The email chain continued on June 21 with no mention of plaintiffs agreeing to not having the second-floor balcony enclosed. In fact, Erik Carrier testified at trial that there had not been a final decision on the second-floor balcony on June 21, 2016, which directly contradicts defendant's post-trial argument. Looking at the record as a whole, in a June 28, 2016 email, defendant informed plaintiffs that it could not "perform major structural work to the front façade" of the house. Moreover, under Federal Rule of Civil Procedure 56(g), the Court treated as "established in the case" the fact that defendant refused to enclose the second-floor balcony on June 28, 2016, and the Court instructed the jury about the Rule 56(g) established facts prior to Carrier's trial testimony. Viewing all reasonable inferences in plaintiffs' favor, it was defendant's decision not to enclose the second-floor balcony, not plaintiffs' decision. Consequently, defendant's second argument as to

fraud damages is without merit.

Defendant further claims plaintiffs did not establish fraud damages because it was plaintiffs' failure in agreeing to final plans that caused the delay in completion of the property. By way of background, the estimated date of substantial completion of the property was October 3, 2016. The parties' contract provided that if substantial completion was delayed by governmental authorities or any other cause beyond defendant's reasonable control, the substantial completion date could be extended. At trial, plaintiffs presented evidence that defendant had reasonable control over the proper permitting and compliance with the building code in relation to the City of Chicago's stop work order because Carrier not only executed the real estate contracts, but was the general contractor in charge of ensuring compliance with building codes. To explain, Carrier, a member of defendant limited liability company, was aware that zoning permit approval was needed to work on the property's basement prior to the parties entering into the first real estate contract in April 2016, pursuant to which plaintiffs paid $117,500 in earnest money (10% of the purchase price). As such, Carrier had reasonable control to remedy the stop work order and obtain the proper zoning permit prior to the October 2016 substantial completion date. In short, trial evidence established that defendant caused the delay, not plaintiffs.

Defendant's last argument as to fraud damages is that its failure to notify plaintiffs about the stop work order did not cause them any damages because defendant had until closing to rectify the situation. Under the contract, however, defendant had the separate duties of disclosing the stop work order and performing on the contract. Thus, even if defendant had corrected the work by the time of closing, defendant still failed to disclose the stop work order in a timely fashion. And, as plaintiffs testified at trial, they relied on defendant's misrepresentations and would not have entered into the contracts and paid $117,500 in earnest money had they known about the stop work order and the unpermitted basement work. In this context, plaintiffs' testimony provided a sufficient

evidentiary basis underlying the jury's award of fraud damages.

In its Rule 50(b) motion, defendant further contends that judgment as a matter of law should be entered as to plaintiffs' breach of contract claim due to the lack of a legally sufficient evidentiary basis. Contrary to defendant's assertion, there was abundant trial evidence that defendant breached the parties' real estate agreements. To begin, evidence in the trial record includes that defendant was aware of the need for a proper zoning permit in relation to working on the property's basement on April 13, 2016, yet affirmatively represented in the parties' April 16, 2016 and May 2, 2016 agreements that there were no "zoning, building, fire or health code violations that have not been corrected" and that there were no "improvements to the property for which the required initial and final permits were not obtained." Additional trial evidence revealed that the waterproofing company, defendant's subcontractor, performed unpermitted structural underpinning work on the basement in February 2016.

Nevertheless, defendant argues that Carrier relied on an April 25, 2016 email from the waterproofing company that the permit had been approved. That email, however, did not state that the permit was approved, but explained "[w]e are looking all good for the permit finally, however they requested a copy of your approve plans" to which defendant followed-up with a May 5, 2016 email stating "[a]ny news on this?" Again, defendant's argument that it believed the permit was approved is belied by Carrier's own May 5, 2016 email, which was after the parties had executed their second real estate agreement on May 2, 2016.

Defendant also maintains that it did not breach the parties' agreements because plaintiffs' nonperformance prevented it from performing the contract. Defendant specifically argues that plaintiffs breached the contract first when they did not obtain a mortgage by August 2016 as set forth in the May 2016 contract. The evidence shows, however, that defendant immediately breached the April and May 2016 contracts by affirmatively asserting that there were no pending

permit issues. Simply put, defendant materially breached the parties' contracts first, which excused any such nonperformance. *See Rohr Burg Motors, Inc. v. Kulbarsh*, 17 N.E.3d 822, 839, 384 Ill.Dec. 840, 857, 2014 IL App (1st) 131664, ¶ 57 (1st Dist. 2014).

In addition, defendant contends the parties' agreements did not require it to enclose the second-floor balcony, and thus defendant could not have breached the agreements in relation to this amenity. Despite defendant's argument, the April 2016 agreement unequivocally states: "In all cases, where the amenities and/or the level of finishes are not set forth herein, the parties shall look to the property at 1651 West Farragut avenue as a model for such amenities and finishes." Trial evidence reveals that the property at 1651 West Farragut had an enclosed second-floor balcony, defendant testified at trial that the enclosed balcony could be an amenity, and that the property was marketed through the Multiple Listing Service ("MLS") as having an enclosed balcony. Defendant's insufficient evidence argument as to the second-floor balcony rings hollow.

Further, defendant asserts that it did not breach the contract by placing the $117,500 earnest money in escrow. Defendant, however, did not release the earnest money held in escrow after plaintiffs' performance on the contract or the Court's November 29, 2017 ruling that the May 2016 contract's liquidated damages provision was unenforceable. In the end, the jury concluded that plaintiffs performed the contract, which is supported by the trial evidence. Defendant had no legal basis to refuse returning the earnest money.

As to damages, which is an element of an Illinois breach of contract claim, defendant claims plaintiffs did not suffer any such damages because they terminated the contract pursuant to the mortgage contingency. As discussed, plaintiffs testified that they would have purchased the home under Hoppe's suggestion of Ewing being on the mortgage if defendant had not already breached the contract and committed fraud prior to the mortgage contingency deadline in August 2016. Defendant's damages argument is thus unavailing.

Likewise, although the jury did not award plaintiffs breach of contract damages, defendant maintains plaintiffs asked for damages in relation to loss home appreciation and interest on the earnest money held in escrow. By doing so, defendant argues plaintiffs were asking for double recovery. The question of prejudgment interest in a breach of contract lawsuit is a question for the Court, not the jury. *Ameritech Info. Sys. Inc. v. Bar Code Resources, Inc.*, 331 F.3d 571, 574 (7th Cir. 2003). Here, plaintiffs never moved the Court for prejudgment interest, therefore, defendant's argument is factually baseless. Also, defendant's argument that plaintiffs' $2,000 request for travel expenses had no evidentiary basis is without merit because Ewing testified at trial those damages were incurred in relation to the attempted real estate purchase.

**Conclusion**

For these reasons, the Court denies defendant's Rule 50(b) motion for judgment as a matter of law [264]. The Court will address defendant's Rule 59(a) motion for a new trial in a separate order.

IT IS SO ORDERED.

Date: 5/4/2022

Entered: ______________________
SHARON JOHNSON COLEMAN
United States District Court Judge