UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RANDALL EWING, AND YASMANY GOMEZ, | ) ) ) |
| Plaintiffs/Counter-Defendants, | ) ) ) |
| v. | ) ) |
| 1645 WEST FARRAGUT, LLC, | ) ) |
| Defendant/Counter-Plaintiff. | ) |

Case No. 16-cv-9930

Judge Sharon Johnson Coleman

**MEMORANDUM OPINION AND ORDER**

On November 10, 2021, a jury returned a verdict in favor of plaintiffs Randall Ewing and Yasmany Gomez in the amount of $905,000 in relation to their fraud and Illinois Consumer Fraud Act ("ICFA") claim against defendant 1645 W. Farragut, LLC. Before the Court is defendant's motion for a new trial brought pursuant to Federal Rule of Civil Procedure 59(a). For the following reasons, the Court, in its discretion, denies defendant's motion.

**Background**

The Court ruled on multiple issues before trial and presumes familiarity with its earlier rulings, including its May 4, 2022 order denying defendant's posttrial motion for judgment as a matter of law under Rule 50(b). Plaintiffs, citizens of Florida, brought this diversity jurisdiction lawsuit against defendant limited liability company, whose members are Erik Carrier and his father Gregory F. Carrier, both citizens of Illinois. Erik Carrier was also defendant's real estate agent. The parties entered into two real estate agreements on April 16, 2016 and May 2, 2016 in relation to plaintiffs' attempted purchase of a single-family residence in Chicago that was being gutted and renovated. The licensed general contractor for the gut rehab project was Erik Carrier.

After things went awry, plaintiffs brought breach of contract, common law fraud, and ICFA claims against defendant. Defendant then filed a breach of contract counterclaim against plaintiffs.

After the parties filed cross-motions for summary judgment, the Court granted plaintiffs' partial summary judgment motion as to liability (but not damages) on their fraud and ICFA claim based on defendant's failure to disclose a stop work order concerning a lack of permit to work on the property's basement. The Court denied the remainder of the summary judgment motions.

After trial, the jury found defendant liable in relation to its fraudulent representation about enclosing the second-floor balcony on the property and that defendant breached the parties' real estate agreements, but that plaintiffs had not. The jury awarded a total of $905,000 in fraud damages, but did not award breach of contract damages because the jury was instructed about Illinois' prohibition of double recovery for the same injury. *See Narkiewicz-Laine v. Doyle*, 930 F.3d 897, 903 (7th Cir. 2019); *Thornton v. Garcini*, 928 N.E.2d 804, 811, 340 Ill.Dec. 557, 564, 237 Ill.2d 100, 111 (Ill. 2010).

**Legal Standard**

Courts will grant new trials under Rule 59(a) only if "the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Burton v. E.I. du Pont de Nemours & Co., Inc.*, 994 F.3d 791, 812 (7th Cir. 2021) (citation omitted). A verdict will be set aside only if no rational jury could have rendered it . *See Bowers v. Dart*, 1 F.4th 513, 521 (7th Cir. 2021). District courts have considerable discretion in ruling on Rule 59(a) motions. *See Lewis v. McLean*, 941 F.3d 886, 891 (7th Cir. 2019).

**Discussion**

*Damages Award*

Defendant first argues the Court should grant a new trial because the damages award was "monstrously excessive" and that there was no rational connection between the damages evidence and the verdict, especially in the context of emotional distress damages. When a federal jury awards compensatory damages in the context of state law claims, state law controls whether the award is

excessive. *Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1019 (7th Cir. 2020). "Under Illinois law it's neither necessary nor appropriate to evaluate a jury's compensatory award against awards in similar cases; a comparative analysis is not part of the state framework." *Rainey v. Taylor*, 941 F.3d 243, 253 (7th Cir. 2019). Instead, in Illinois, "remittitur should be employed only when the damages award (1) falls outside the range of fair and reasonable compensation, (2) appears to be the result of passion or prejudice, or (3) is so large that it shocks the judicial conscience." *Miyagi v. Dean Transp., Inc.,* 143 N.E.3d 717, 722, 436 Ill.Dec. 888, 893, 2019 IL App (1st) 172933, ¶ 20 (1st Dist. 2019). "Remittitur should not be employed when the award falls within the flexible range of conclusions that can be reasonably supported by the facts." *Id.*

Plaintiffs' ICFA/fraud claim was based on defendant's deception in relation to its false representations concerning building permits, building code compliance, and the enclosure of the second-floor balcony. Although actual pecuniary (economic) damages are an element of an ICFA claim, *see Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019), a plaintiff may also recover damages for emotional distress after first establishing the element of economic damages. *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 830 (7th Cir. 2018).

Here, the jury's award of $905,000 represents fair and reasonable compensation for plaintiffs' ICFA/fraud claim and finds adequate support in the evidence presented at trial. First, there was evidence of actual economic damages because trial testimony shows plaintiffs suffered $350,000 in rental value (loss of use damages) due to their inability to use the property. *See Nisbet v. Yelnick*, 464 N.E.2d 781, 784, 79 Ill.Dec. 877, 880, 124 Ill.App.3d 466, 471 (1st Dist. 1984). They further incurred travel expenses to and from Florida because Ewing had started his new job in Chicago during this time period. Other trial evidence of economic damages includes the appreciation in value of the home plaintiffs were attempting to buy in the amount of $200,000. The

$905,000 award also includes the economic loss of the $117,500 representing the earnest money defendant withheld.

Defendant next argues that there was "no" evidence of emotional harm to warrant any such damages. As the Seventh Circuit explains, "[e]valuating issues as subjective and elusive as emotional damages is a task we leave in the first instance to the common sense and collective judgment of juries." *Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 388 (7th Cir. 2011). Meanwhile, damages for nonpecuniary losses can be supported solely by witness testimony. *Vega v. Chicago Park Dist.*, 954 F.3d 996, 1008 (7th Cir. 2020).

At trial, plaintiffs testified how they turned over a large part of their life savings to buy their dream home and that they could not buy a home when defendant did not return the earnest money. Other testimony indicates that defendant's conduct and push back during and after this failed real estate transaction took its toll on plaintiffs' ability to move on with their lives. As stated, it is within the jury's province to evaluate witness credibility in relation to emotional distress, and here, the jury observed the witnesses and found plaintiffs' testimony convincing enough to awarding emotional distress damages. *Gracia v. SigmaTron Int'l Inc.,* 842 F.3d 1010, 1022 (7th Cir. 2016). The jury also considered plaintiffs' testimony in the context of other evidence presented at trial. *See id.* For example, the jury observed Erik Carrier's testimony and determined his veracity and credibility in contrast to plaintiffs' testimony about their emotional reactions to his conduct. In sum, plaintiffs' emotional distress damages are substantiated by the trial record.

Also, defendant argues plaintiffs were awarded the same damages three times asserting the jury awarded plaintiffs damages for both actual rental costs and comparable rental costs, although the Court instructed the jurors that they could not award both. Because courts presume juries follow instructions on the law, *Burton v. City of Zion*, 901 F.3d 772, 784 (7th Cir. 2018), this argument falls flat. Moreover, the award of actual rental costs/comparable rental costs and the increased cost

of purchasing are distinct damages for two different types of harm resulting from defendant's fraud and refusal to return plaintiffs' earnest money. Meanwhile, defendant's related argument that the Court's jury instruction about these damages was in error fails because the instruction correctly stated the law. *See Brooks v. City of Kankakee, Illinois*, 7 F.4th 649, 663 (7th Cir. 2021).

In the end, the jury's award of $905,000 is not so large that it "shocks judicial conscience" nor is there evidence that the award was the "result of passion or prejudice." Instead, the award was the result of "the collective wisdom of the jury," to which the Court owes respect. *See Rainey*, 941 F.3d at 253.

*Summary Judgment Ruling*

Defendant also takes issue with the Court's summary judgment ruling. By way of background, on July 31, 2019, the Court granted plaintiffs' motion for summary judgment as to liability on their fraud and ICFA claim based on defendant's failure to disclose a stop work order concerning a lack of permit to work on the property's basement. The Court's use of the term "stop work order" throughout this lawsuit is shorthand for the absence of a work permit for the property's basement, namely, that the underpinning of the basement had not been properly permitted and that work on the property could not continue until a permit was issued. Although the City of Chicago did not issue the "stop work order" resulting from the unpermitted excavation and underpinning work until June 6, 2016, defendant was aware of the permit problem before the parties entered into the relevant contracts.

In the July 2019 summary judgment ruling, the Court concluded it was undisputed that defendant knew about the absence of a work permit in advance of contracting with plaintiffs in April and May 2016 and defendant understood plaintiffs would rely on the misrepresentations regarding the work permits. On the other hand, the Court concluded that there were genuine disputes of material facts as to both the existence of a potentially false statement and reliance on that

5

statement concerning whether there would be an enclosed second-floor balcony on the renovated residential property.

Key to the Court's summary judgment ruling was defendant's failure to file a separate statement of material facts as required by Northern District of Illinois Local Rule 56.1(a)(3), as well as a separate response to plaintiffs' statement of material facts under Local Rule 56.1(b)(3). Based on well-established precedent, the Court thus accepted plaintiffs' Rule 56.1(a)(3) statement of facts as true. *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 528 (7th Cir. 2020) ("district courts may require strict compliance with their local rules—a point we have recognized time and again.").

In the present motion, defendant argues the July 2019 summary judgment ruling was inconsistent because the Court granted liability on the ICFA/fraud claim as it related to defendant's failure to disclose the lack of permit embodied by the stop work order, yet concluded that the jury should decide damages. Defendant's specific argument is that because "damages" is an element of both fraud and ICFA claims, the Court's decision is in error. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 296 Ill.Dec. 448, 835 N.E.2d 801, 850 (Ill. 2005); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591, 221 Ill.Dec. 389, 396, 174 Ill.2d 482, 496 (Ill. 1996). However, Defendant overlooks the fact that the Court left the details of the compensatory damages to the jury, not whether there were any damages in the first instance, where the withheld $117,500 in earnest money established the element of damages as discussed in the Court's July 2019 ruling.

Defendant also argues the summary judgment ruling was inconsistent because in February 2021, the Court denied plaintiffs' motion to turn over the $117,500 in earnest money. At that time, defendant's counterclaim for breach of contract was pending, and thus any such turnover was imprudent before the jury decided the parties' claims and damages.

Further, Defendant contends plaintiffs were not deceived because they did not know the stop work order existed until after they entered into the contracts. As discussed above, the stop

6

work order was based on the absence of a work permit for the property's basement, namely, that the underpinning of the basement had not been properly permitted and that work on the property could not continue until a permit was issued. Defendant was well aware of the lack of permit for the property's basement before entering into the April and May 2016 contracts. Meanwhile, at the time plaintiffs entered into the contracts in April and May 2016, plaintiffs relied on defendant's unequivocal representations in the contracts that there were no "zoning, building, fire or health code violations that have not been corrected" and that there were no "improvements to the property for which the required initial and final permits were not obtained." The Court denies defendant's motion for a new trial in this respect.

*Other Pretrial Rulings*

Defendant additionally asserts the Court erred in permitting plaintiffs to raise a new claim at trial that was not contained in their pleadings. In particular, defendant argues that for the first time at trial, plaintiffs brought a breach of contract claim based on the lack of permit for the basement. Assuming the Court erred in permitting plaintiffs to raise a new claim at trial, because the jury did not award damages for plaintiffs' breach of contract claim, any such error was harmless. *See Ruiz v. United States*, 990 F.3d 1025, 1030 (7th Cir. 2021) ("the doctrine of harmless error owes its existence to the concept that a legal error having no consequential effect on a judgment does not necessarily need to be rectified."). Simply put, defendant was not prejudiced by any alleged error.

Prior to trial, in June 2021, the Court granted plaintiffs' Federal Rule of Civil Procedure 56(g) motion concluding that certain material facts were not genuinely disputed for trial based on the July 2019 summary judgment ruling. *See Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019) ("Rule 56(g) is 'ancillary' to the ultimate summary-judgment analysis, operating to 'salvage some results' from the time and resources spent in deciding unsuccessful summary-judgment motions."). At trial, the Court instructed the jury on these established facts.

In its motion for a new trial, defendant argues that the Court erred in instructing the jury about these established facts. It argues that these facts were not undisputed because trial witness testimony contradicted them. The Court, however, also instructed the jury to consider all of the evidence, and, as discussed, the jury determined the veracity and credibility of witness testimony, including Erik Carrier's testimony. Thus, in the context of the jury instructions as a whole, defendant has not established that the Court incorrectly informed the jury. Moreover, defendant does not sufficiently explain how this jury instruction was prejudicial, namely, when considering the evidence as a whole, the jury could have "reached a different outcome had the instructions been correct." *Lange v. City of Oconto*, 28 F.4th 825, 841 (7th Cir. 2022) (citation omitted).

*Evidentiary Rulings*

Defendant also challenges certain evidentiary rulings. Evidentiary errors warrant a new trial if the errors had a substantial and injurious effect on the jury and the resulting verdict is inconsistent with substantial justice. *See Burton*, 994 F.3d at 812; *Fields v. City of Chicago*, 981 F.3d 534, 544 (7th Cir. 2020). "[A] party seeking to overturn the district court's evidentiary ruling 'bears a heavy burden' because a 'trial court's balancing of probative value and unfair prejudice is highly discretionary.'" *Henderson v. Wilkie*, 966 F.3d 530, 534 (7th Cir. 2020) (citations omitted).

In the present motion, defendant asserts the Court erred in admitting evidence of Erik Carrier's homophobic slurs into evidence. By way of background, the Court denied defendant's motion in limine #2 as follows:

> Defendant seeks to bar evidence that Erik Carrier, defendant's primary owner, described Ewing and Gomez as "fruit cups," "crazy," or other similarly vague comments implying that Carrier is homophobic as unfairly prejudicial under Federal Rule of Evidence 403. Specifically, defendant asserts that this evidence invites the jury to decide the case on an improper basis, such as an emotional one, instead of the evidence the parties will present at trial. *See Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 634 (7th Cir. 2018). Plaintiffs respond that they seek admission of these statements to establish punitive damages in relation to their ICFA claim. *See Geske v. PNY Tech., Inc.*, 503 F.Supp.3d 687, 710 (N.D. Ill. 2020) ("Under Illinois law, punitive damages 'may be awarded only if the defendant's tortious conduct evinces a

8

>high degree of moral culpability, that is, when the tort is committed with fraud, actual malice ... or when the defendant acts willfully.'") (citation omitted). Because plaintiffs can seek punitive damages, Carrier's comments have significant probative value as to whether he acted with malice or willfulness in relation to the parties' contractual interaction. The Court thus denies defendant's motion because the high probative value of this evidence is not substantially outweighed by any unfair prejudice. Plaintiffs must submit a limiting jury instruction to the Court regarding the admission of this evidence by no later than October 29, 2021.

(R. 217, 10/5/21, MIL Order, at 3.)

The Court requested a limiting instruction to ameliorate any unfair prejudice. *See Whitehead v. Bond*, 680 F.3d 919, 931 (7th Cir. 2012). Indeed, plaintiffs provided a limiting instruction per the Court's request, but defendant objected stating it "no longer believes it is necessary and is asking to withdraw that instruction." (R. 236, Proposed Jury Instructions, at 19.) Because defendant waived the limiting instruction, it cannot now claim unfair prejudice as a basis for a new trial. *See Common v. City of Chicago*, 661 F.3d 940, 946 (7th Cir. 2011) ("A party who declines the opportunity to have a limiting instruction, waives the right to claim that he has been prejudiced by evidence that is otherwise relevant and admissible.").

In addition, defendant argues the Court erred in allowing witness Timothy Zielonka to testify about specialized knowledge without being qualified as an expert or disclosed as an expert. Zielonka was plaintiffs' realtor for the purchase of the relevant property. He testified that he had been a realtor for approximately sixteen years during which time he had experience working with developers, buyers, and sellers.

Under Federal Rule of Evidence 602, a lay witness may testify about his own observations and matters of personal knowledge. *See United States v. Mendiola*, 707 F.3d 735, 741 (7th Cir. 2013). Also, under Rule 701, a witness may offer his lay opinion if the testimony is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge

9

within the scope of Rule 702." Fed.R.Evid. 701; *see also United States v. Bowling*, 952 F.3d 861, 868 (7th Cir. 2020).

Zielonka testified that Erik Carrier was the seller, real estate agent, and developer on the listing—facts that are undisputed. He then stated that acting as a real estate agent in this situation was concerning because "you're basically putting yourself at a bigger liability." He also testified that it was a conflict of interest under this scenario, after which defendant objected twice based on foundation. The Court sustained the objections because although Zielonka knew real estate, he was not a real estate ethics expert. Thereafter, plaintiffs' counsel explained to Zielonka that he was asking him questions based on his own personal knowledge. Defendant does not articulate how the Court erred in sustaining its objections under these circumstances.

Also, defendant contends Zielonka's testimony as to the property's structural work was specialized knowledge under Rule 702. To the contrary, based on his experience in the real estate industry, including understanding the Chicago building codes, Zielonka testified that when he visited the property site, the structural work that was required for the basement was the type of work that would require a permit. Zielonka's testimony was lay opinion testimony based on his knowledge acquired throughout his career working with developers, buyers, and sellers. Because Zielonka's testimony was based on his personal knowledge and observations, the Court did not abuse its discretion in allowing this testimony. *See Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460 (7th Cir. 2014) ("Personal knowledge can include reasonable inferences."). Similarly, Zielonka's testimony regarding mortgage loans and qualifications for loans was based on his experience as a real estate agent. *See Compania Administradora v. Titan Int'l*, 533 F.3d 555, 560 (7th Cir. 2008) ("The advisory committee notes to Rule 701 explain" that "a business owner or officer is allowed to testify without being qualified as an expert only because that testimony is tied to his or her personal knowledge.").

Defendant's argument that the Court allowed Zielonka to testify about legal conclusions in the context of the parties' contracts is misplaced because the Court sustained defendant's objections. Plaintiffs' counsel then asked Zielonka questions about the contracts at issue and how he explained them to his clients, which was admissible due to Zielonka's first-hand experience with the relevant contracts and his interactions with plaintiffs and other clients. As to Zielonka's testimony concerning his perception of the housing costs of homes in the property's neighborhood, he has significant experience in representing clients buying and selling homes in the Andersonville neighborhood of Chicago during the relevant time period to make this assessment.

Furthermore, defendant maintains the Court erred in restricting Ewing's testimony regarding the contract's liquidated damages clause. By way of background, in a November 29, 2017 ruling on plaintiffs' motion to dismiss defendant's breach of contract counterclaim, the Court concluded the contract's liquidated damages provision was an unenforceable penalty clause under Illinois law. *See River East Plaza, L.L.C. v. Variable Annuity Life Ins. Co.*, 498 F.3d 718, 722 (7th Cir. 2007) ("Illinois recognizes that some liquidated damages clauses cross the line and become penalty clauses in disguise."). In defendant's motion in limine #8, it sought to admit evidence regarding the liquidated damages provision to rebut any inference as to bad faith in its withholding of the $117,500 earnest money. The Court denied defendant's motion because, in essence, it was seeking reconsideration of the November 2017 ruling, and defendant admitted that it brought the motion "primarily for purposes of preserving the issues for a potential appeal."

Here, defendant contends the Court erred in restricting defendant from cross-examining Ewing on the liquidated damages provision. After plaintiffs objected to defense counsel's questions about the provision, the Court took a break to discuss this issue outside of the presence of the jury. After hearing the parties' arguments, the Court decided that because the parties had not come to an agreement concerning limited evidence about the liquidated damages provision—as they had

11

informed the Court they would do a few days before the trial started—the Court would instruct the jury in accordance with the motion in limine ruling. Later at trial, when Erik Carrier was testifying and mentioned this provision, the Court instructed the jury that it had previously found this provision unenforceable and that the jury could not use evidence of the provision to excuse Erik Carrier's actions towards plaintiffs.

Defendant does not articulate how it was prejudiced by the Court's ruling or its instruction to the jury. *Lange*, 28 F.4th at 840. In addition, defendant does not clarify what it sought to elicit by cross-examining Ewing on this provision. Without a sufficient argument as to prejudice, the Court denies this aspect of defendant's motion.

Next, defendant attempted to present Erik Carrier's testimony about work that was done on the property after the stop work order was lifted. Plaintiffs' counsel objected to this line of questioning because it contradicted the July summary judgment 2019 ruling and Rule 56(g) statement of established facts. Defendant countered that plaintiff had opened the door to this testimony due to an exhibit already admitted into evidence. After hearing the parties' arguments at sidebar, the Court allowed plaintiffs to withdraw the relevant exhibit and instructed the jury about the withdrawal. Later during Carrier's testimony, counsel on both sides realized this line of questioning about work on the property was not prohibited by the Rule 56(g) ruling. Defendant thus argues the Court's earlier statements and rulings made in the presence of the jury raised the jury's suspicion that Carrier or defense counsel were disobeying the Court's orders. Assuming the Court erred, defendant's speculation as to the jurors' alleged suspicion fails to show that any such error had a substantial and injurious effect on the jury's determination. *See Fields*, 981 F.3d at 544.

Defendant further maintains the Court erred by permitting a witness to testify, who was not disclosed under Rule 26, specifically Chris Steponaitis. Plaintiffs called Steponaitis as an impeachment witness, and thus plaintiffs did not have a duty to disclose him under Rule

26(a)(1)(A)(i). Similarly, defendant argues plaintiffs failed to disclose Exhibit 80, which was an email between Ewing, Carrier, and Carrier's prior counsel. At trial, defendant objected to the exhibit and the Court sustained the objection based on the exhibit's potential to confuse the jury. Therefore, there was no error. Likewise, defendant contends plaintiffs failed to disclose Exhibit 81 prior to trial, which was a rental agreement between the defendant and the property's eventual buyers. This document was not admitted into evidence, but used to refresh Erik Carrier's recollection. Thus, there was no requirement to disclose this rental agreement.

*Jury Instructions*

Defendant additionally argues the Court erred in relation to certain jury instructions. District courts are afforded considerable discretion when crafting jury instructions and will only be reversed if the instruction failed to correctly state the law and that failure caused prejudice. *See Brooks*, 7 F.4th at 663; *Kuberski v. Rev Recreation Group, Inc.,* 5 F.4th 775, 779 (7th Cir. 2021). When evaluating prejudice, courts consider the evidence as a whole to determine if the jury would have reached a different outcome had the instructions been legally correct. *Kuberski*, 5 F.4th at 780.

In its motion, defendant contends the Court erred in instructing the jury by incorporating plaintiffs' subjective contract terms into the jury instructions. Setting aside that defendant proposed or agreed to these jury instructions, the jury did not award any contract damages based on Illinois' prohibition of double recovery for the same injury. And, it is well-settled law that even when a jury instruction is patently incorrect, a new trial is appropriate only if the instruction prejudiced the moving party. *Lange*, 28 F.4th at 840. Defendant has failed to explain how these instructions were prejudicial, except for the bare-boned statement that "such action was a grave error that greatly prejudiced [it] at trial." *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived.").

Also, defendant argues the Court failed to instruct the jury after plaintiffs' counsel made improper remarks at closing. In particular, defendant maintains that counsel asked the jury to imagine itself in plaintiffs' position. *See Joan W. v. City of Chicago*, 771 F.2d 1020, 1022 (7th Cir. 1985) ("An appeal to the jury to imagine itself in the plaintiff's position is impermissible because it encourages the jury to depart from its neutral role."). The exact language at closing arguments was: "I'm sure that every one of you, if you were in the process of buying your dream home, would want to know if all physical work on the premises had ground to a halt for months because structural underpinning work had been done without a permit and a stop-work order was issued." (R. 259, 11/10 Trial Tr., at 935). After defendant objected to this statement, the Court concluded that it did not want to draw attention to this statement, and thus did not give a limiting instruction.

Although the Court did not give a limiting instruction as defendant requested, defendant does not explain how it was prejudiced. *Kuberski*, 5 F.4th at 780 ("when evaluating prejudice" court must "determine whether jury could have reached a different outcome had the instructions been correct"). Instead, defendant states: "Not only were Plaintiff's remarks highly prejudice to [defendant], but the Court's failure to cure Plaintiffs' indiscretion with an instruction further prejudice [defendant]." It is not the Court's obligation to make defendant' s prejudice argument. *See United States v. McClellan,* 165 F.3d 535, 550 (7th Cir. 1999) (courts "are not in the business of formulating arguments for the parties.").

*Manifest Weight of the Evidence*

Last, defendant contends the jury verdict was against the manifest weight of the evidence warranting a new trial. Jury verdicts are accorded great respect and federal courts will not overturn a jury's verdict if there is a reasonable basis to support it. *See Fields*, 981 F.3d at 562; *Morris v. BNSF Railway Co.*, 969 F.3d 753, 764 (7th Cir. 2020). Put differently, courts will set aside a verdict only if no rational jury could have rendered it. *Bowers*, 1 F.4th at 521.

Defendant argues the manifest weight of the trial evidence supports a different verdict on plaintiffs' breach of contract claim. In denying defendant's Rule 50(b) motion, the Court rejected defendant's argument that plaintiffs' breach of contract claim lacked a legally sufficient evidentiary basis. In doing so, the Court discussed the trial evidence supporting the breach of contract verdict:

> Contrary to defendant's assertion, there was abundant trial evidence that defendant breached the parties' real estate agreements. To begin, evidence in the trial record includes that defendant was aware of the need for a proper zoning permit in relation to working on the property's basement on April 13, 2016, yet affirmatively represented in the parties' April 16, 2016 and May 2, 2016 agreements that there were no "zoning, building, fire or health code violations that have not been corrected" and that there were no "improvements to the property for which the required initial and final permits were not obtained." Additional trial evidence revealed that the waterproofing company, defendant's subcontractor, performed unpermitted structural underpinning work on the basement in February 2016.

(R. 304, 5/4/22, Rule 50(b) Order, at 5.)

Despite this evidence, defendant once again argues that plaintiffs' nonperformance prevented it from performing the contracts. Trial evidence, however, shows defendant breached the contracts first by affirmatively asserting there were no pending permit issues. As such, defendant's material breach excused plaintiffs' nonperformance. *See Rohr Burg Motors, Inc. v. Kulbarsh*, 17 N.E.3d 822, 839, 384 Ill.Dec. 840, 857, 2014 IL App (1st) 131664, ¶ 57 (1st Dist. 2014).

The Court also rejected defendant's argument that it was not required to enclose the second-floor balcony, and thus it did not breach the parties' contracts:

> Despite defendant's argument, the April 2016 agreement unequivocally states: "In all cases where the amenities and/or the level of finishes are not set forth herein, the parties shall look to the property at 1651 West Farragut avenue as a model for such amenities and finishes." Trial evidence reveals that the property at 1651 West Farragut had an enclosed second-floor balcony, defendant testified at trial that the enclosed balcony could be an amenity, and that the property was marketed through the Multiple Listing Service ("MLS") as having an enclosed balcony. Defendant's insufficient evidence argument as to the second-floor balcony rings hollow.

(5/4/22, Rule 50(b) Order, at 6.) Defendant's rehashed argument as to the second-floor balcony does little to establish that no rational jury could have found it breached the parties' contracts.

As to the jury's verdict on plaintiffs' ICFA/fraud claim, defendant contends that it did not commit a deceptive practice in relation to the permits because it was unaware of any such issues when it entered into the April and May 2016 contracts with plaintiffs. As discussed above, the Court's use of the term "stop work order" is shorthand for the basement permit issues, and trial evidence establishes defendant was aware of the basement permit issue on at least April 13, 2016. Defendant's similar argument that plaintiffs could not have been deceived because they were unaware of the stop work order at the time they entered into the contracts also fails. If plaintiffs had known about the lack of permit for the property's basement, there is a real chance they would not have been deceived. As such, defendant's argument is nonsensical.

Because there was a reasonable basis that supports the jury's verdict, defendant has failed to establish the jury's verdict was against the manifest weight of the evidence. Defendant's cursory argument that the trial was unfair is equally unavailing.

On a final note, not only is defendant's cursory argument that cumulative errors warrant a new trial unpersuasive, "the cumulative effect of various non-errors does not, and cannot, amount to error warranting a new trial." *Farnik v. City of Chicago*, 1 F.4th 535, 542 (7th Cir. 2021).

**Conclusion**

For these reasons, the Court, in its discretion, denies defendant's Rule 59(a) motion for a new trial [265].

IT IS SO ORDERED.

Date: 6/2/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge